**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CHRISTIN P. PEARSON, individually and as Guardian of the Estate of CORBAN PEARSON; and LISA A. PEARSON, individually and as co-Guardian of the Estate of CORBAN PEARSON, | ) | |
| | ) | Case No. 1:20-CV-05096 |
| Plaintiffs, | ) | |
| v. | ) | Honorable John Robert Blakey |
| | ) | |
| COMMUNITY UNIT SCHOOL DISTRICT 303, ANTOINETTE L. GREEN, PAM KARNICK, TERRY PRIMDAHL, and UNITED SEATING AND MOBILITY, L.L.C., a Missouri limited liability company, d/b/a NUMOTION | ) | |
| | ) | |
| Defendants. | ) | |

**COMMUNITY UNIT SCHOOL DISTRICT 303 DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR JOINT MOTION FOR SUMMARY JUDGMENT**

Charles A. LeMoine
Richard Capra
TRESSLER LLP
233 South Wacker Drive, 61st Floor
Chicago, Illinois 60606-6399
Tel: (312) 627-4000
clemoine@tresslerllp.com
rcapra@tresslerllp.com
***Attorneys for Community Unit School District 300 Board of Education and Terry Primdahl***

Margaret Firnstein Gebhardt (#6269742)
Amundsen Davis LLC
150 N. Michigan Ave., Suite 3300
Chicago, IL 60601
Tel: 312.894.3200
mfirnstein@amundsendavislaw.com
***Attorneys for Pamela Karnick***

Vincent M. Rizzo
Hinshaw & Culbertson LLP
150 N. Franklin Street, Suite 2500
Chicago, IL 60606
Tel: 312.704.3234
VRizzo@hinshawlaw.com
***Attorneys for Antoinette Green***

# TABLE OF CONTENTS


I. **INTRODUCTION** .......... 1

II. **FACTS** .......... 3

III. **ARGUMENT** .......... 5

A. Plaintiffs' Negligence Claim in Count I is Barred by Tort Immunity. .......... 5

1. All of the Negligence Allegations are Barred by Immunity Pursuant to the School Code. .......... 6

2. Discretionary Immunity Bars the Negligence Allegations against District 303 and Primdahl. .......... 7

3. Supervisory Immunity Bars Plaintiffs' Allegations of Failure to Supervise or Train. .......... 9

B. Plaintiffs' Willful and Wanton Claim in Count II is Barred, in Part, by Tort Immunity and Fails in its Entirety Based on the Lack of Evidence to Support It. .......... 10

1. Discretionary Immunity Bars Plaintiffs' Allegations of Willful and Wanton Conduct against District 303 and Primdahl. .......... 10

2. Plaintiffs Have Failed to Adduce Evidence of Willful and Wanton Conduct By any of the District Defendants. .......... 11

C. Plaintiffs' ADA, IDEA, and Rehabilitation Act Claims in Counts IV and V are Legally and Factually Deficient. .......... 13

1. This Court Dismissed Plaintiffs' Claims Against the Individual Defendants Under the ADA and Rehabilitation Act. .......... 13

2. Plaintiffs' IDEA Claim in Count IV Fails Because a Plaintiff Cannot Seek Compensatory Damages under the IDEA. .......... 14

3. Individuals such as Primdahl, Green, and Karnick Cannot be Liable Under the IDEA. .......... 14

4. Primdahl, Green, and Karnick Are Entitled to Qualified Immunity As to the IDEA. .......... 16

5. Plaintiffs' ADA and Rehabilitation Act Claims Against District 303 are Not Based on a Viable Legal Theory and Do Not Have Facts to Support Them. .......... 17

a. The ADA and Rehabilitation Act Claims Fail Because Plaintiffs Cannot Show Actual Knowledge or Deliberate Indifference. .......... 19

b. Plaintiffs' "Failure to Train" Theory is Legally Insufficient and Not Supported by Facts. .......... 22

i. Plaintiffs' "Failure to Train" Claim is Not Cognizable Under the ADA or Rehabilitation Act. .......... 22

ii. Plaintiffs Have Failed to Allege Facts Demonstrating a "Failure to Train." .......... 23

D. Judgment Should Be Entered on the Family Expense Act Claim in Count III. .......... 24

E. If Judgment is Entered on Counts IV and V, the Court Should Decline to Exercise Jurisdiction over any Remaining State Law Claims. .......... 25

**IV. CONCLUSION** .......... 25

# TABLE OF AUTHORITIES

**Cases**

*Arbaugh v. Y & H Corp.*,
546 U.S. 500, 126 S. Ct. 1235, 163 L. Ed. 2d 1097 (2006) .......... 25

*Archie v. City of Racine*,
847 F. 2d 1211 (7th Cir. 1988) (en banc) .......... 19

*Barr v. Cunningham*,
2017 IL 120751 .......... 11, 12

*Bradley v. Arkansas Dep't of Educ.*,
301 F.3d 952 (8th Cir. 2002) .......... 15

*Buchanan v. Maine*,
469 F.3d 158 (1st Cir. 2006) .......... 23

*C.B. v. Bd. of Educ.*
(N.D. Ill. 2022) 624 F. Supp. 3d 898 .......... 15

*C.B. v. Bd. of Educ. of City of Chicago, Dist. 299*,
624 F. Supp. 3d 898, 912 (N.D. Ill. 2022) (Valderrama, J.) .......... 14

*C.B. v. Bd. of Educ.,*
No. 20-cv-00586, 2022 U.S. Dist. LEXIS 153974 (N.D. Ill. Aug. 26, 2022) .......... 15

*Campbell v. Greer*,
831 F.2d 700 (7th Cir. 1987) .......... 19

*Carmona-Rivera v. Puerto Rico*,
464 F.3d 14 (1st Cir. 2006) .......... 18

*Castillo v. Board of Education of City of Chicago*,
103 N.E.3d 596 (2018), *appeal denied* 108 N.E.3d 800 .......... 7

*Charlie F. by Neil F. v. Bd. of Educ. of Skokie Sch. Dist. 68*,
98 F.3d 989 (7th Cir. 1996) .......... 14

*City of Canton v. Harris*,
489 U.S. 378 (1989) .......... 24

*Courson ex rel. Courson v. Danville Sch. Dist. No. 118*,
301 Ill.App.3d 752, 704 N.E.2d 447 (4th Dist. 1998) .......... 6

*Diaz-Fonseca v. Puerto Rico*,
451 F.3d 13 (1st Cir. 2006) .......... 15

*Dillery v. City of Sandusky*,
398 F.3d 562 (6th Cir. 2005) .......... 22, 23

*Dixon v. Chi. Bd. of Educ.*,
304 Ill. App. 3d 744, 710 N.E.2d 112 (1st Dist. 1999)............................................................ 9

*Doe v. Bd. of Educ. of City of Chicago*,
611 F. Supp. 3d 516 (N.D. Ill. 2020) ....................................................................................... 18

*Doe v. Bridgeforth*,
2018 IL App. (1st) 170182 .............................................................................................. 11, 12

*Doe v. Chi. Bd. of Educ.*,
339 Ill. App. 3d 848, 791 N.E.2d 1283 (1st Dist. 2003)........................................................... 9

*Farmer v. Brennan*,
511 U.S. 825, 831, 114 S. Ct 1970 (1994)................................................................................ 19

*Flores v. Palmer Marketing*,
361 Ill. App. 3d 172 (1st Dist. 2005) ......................................................................................... 9

*Floyd*,
355 Ill. App. 3d at 702 ............................................................................................................. 11

*Foley v. City of Lafayette*,
359 F.3d 925 (7th Cir. 2004) ........................................................................................ 18, 19, 21

*Fry v. Napoleon Cmty. Sch.,*
580 U.S. 154, 137 S.Ct. 743, 197 L.Ed.2d 46 ........................................................................ 14

*Gebser v. Lago Vista Indep. Sch. Dist.*,
524 U.S. 274, 118 S. Ct. 1989, 1999, 141 L. Ed. 2d 277 (1998)............................................. 20

*Hainze v. Richards*,
207 F.3d 795 (5th Cir. 2000) ................................................................................................... 22

*Holmes v. Godinez*,
311 F.R.D. 177 (N.D. Ill. 2015)............................................................................................... 17

*In re Chi. Flood Litig.*,
176 Ill. 2d 179 (1997) .............................................................................................................. 10

*In Re Chicago Flood Litigation*,
176 Ill. 2d 179 (1997) ................................................................................................................ 8

*Jaros v. Ill. Dep't of Corr.*,
684 F.3d 667 (7th Cir. 2012) ................................................................................................... 18

*Kemp v. Liebel*,
877 F.3d 346 (7th Cir. 2017) ................................................................................................... 16

*Khuans v. School Dist. 110*,
123 F.3d 1010 (7th Cir. 1997) ................................................................................................. 16

*Kobylanski v. Chicago Board of Education*,
63 Ill.2d 165, 347 N.E.2d 705 (Ill. 1976) ........................................................................ 6

*Lacy v. Cook County*,
897 F.3d 847 (7th Cir. 2018) ........................................................................................ 18, 19

*LaPorta v. City of Chicago*,
277 F.Supp.3d 969 (N.D. Ill. 2017) ........................................................................................ 7

*Leja v. Cmty. Unit Sch. Dist. 300*,
2012 IL App (2d) 120156 ........................................................................................................ 12

*Levin v. Madigan*,
692 F.3d 607 (7th Cir. 2012) .................................................................................................. 16

*Lewis v. Lead Indus. Ass'n*,
2020 IL 124107 ...................................................................................................................... 25

*Lynch v. Board of Education of Collinsville Community Unit District No. 10*,
82 Ill. 2d 415 (1980) .............................................................................................................. 11

*McDaniel v. Syed*,
115 F.4th 805 (7th Cir. 2024) ................................................................................................ 18

*McIntyre v. Eugene Sch. Dist. 4J*,
976 F.3d 902 (9th Cir. 2020) .................................................................................................. 14

*Moore v. Hamilton Southeastern Sch. Dist.*,
Case No. 11-cv-01548-SEB-DML, 2013 U.S. Dist. LEXIS 123507 (S.D. Ind. Aug. 29, 2013)
.......................................................................................................................................... 14, 15

*Nichols v. Chicago Heights,*
2015 IL App (1st) 122994 ...................................................................................................... 10

*Ozlowski v. Henderson*,
237 F.3d 837 (7th Cir. 2001) .................................................................................................. 18

*Ozuk v. River Grove Bd. of Educ.*,
281 Ill. App. 3d 239 (1st Dist. 1996) ...................................................................................... 12

*Paine v. City of Chicago*,
No. 06 C 3173, 2009 WL 10687409 (N.D. Ill. May 21, 2009) .......................................... 22, 23

*Perez v. Fenoglio*,
792 F.3d 776 (7th Cir. 2015) .................................................................................................. 20

*Pittman ex rel. Hamilton v. County of Madison*,
746 F.3d 766 (7th Cir. 2014) .................................................................................................. 11

*Ravenna v. Vill. of Skokie*,
388 F. Supp. 3d 999 (N.D. Ill. 2019) ...................................................................................... 18

*Reed v. City of Chi.*,
2002 WL 406983 (N.D. Ill. March 14, 2002) ........ 7, 8

*Riccardo v. Rausch*,
359 F.3d 510 (7th Cir. 2004) ........ 19

*Riley v. Board of Commissioners*,
2015 U.S. Dist. LEXIS 73656 (N.D. Ind. 2015) (aff'd in pert. part. 2015 U.S. Dist. LEXIS 75463) ........ 19

*S.B. ex rel W.B. v. Hamos*,
No. 12-CV-3077, 2012 U.S. Dist. LEXIS 142851, 2012 WL 4740291 (C.D. Ill. Oct. 3, 2012) ........ 19

*S.H. ex rel. Durrell v. Lower Merion Sch. Dist.*,
729 F.3d 248, 262-63 (3d Cir. 2013) ........ 18, 19

*Scozzari v. City of Clare*,
723 F. Supp. 2d 945 (E.D. Mich. 2010) ........ 23

*Sears v. Bradley County Gov't*,
821 F.Supp.2d 987 (E.D. Tenn. 2011) ........ 23

S*huhaiber v. Illinois Dep't of Corr.*,
980 F.3d 1167 (7th Cir. 2020) ........ 22

*Smith v. Robinson*,
468 U.S. 992 (1984) ........ 15

*Stanek v. St. Charles Cmty. Unit Sch. Dist. #303*,
783 F.3d 634 (7th Cir. 2015) ........ 15

*Strominger v. Brock*,
592 Fed. Appx. 508 (7th Cir. 2014) ........ 18

*Taylor v. City of Chicago*,
1997 U.S. Dist. LEXIS 1020 (N.D. Ill. January 31, 1997) ........ 8, 15

*Tennessee v. Lane*,
541 U.S. 509 (2004) ........ 17

*Thao v. City of St. Paul*,
No.03-5306, 2006 WL 1004379 (D. Minn. Apr. 13, 2006), aff'd, 481 F.3d 565 (8th Cir. 2007) ........ 22

*Trotter v. School Dist. 218*,
315 Ill. App. 3d 1, 18 (1st Dist. 2000) ........ 9

*Vilardo v. Barrington Cmty. Sch. Dist. 220*,
406 Ill. App. 3d 713, 941 N.E.2d 257 (2d Dist. 2010) ........ 11

*Wagoner v. Lemmon*,
778 F.3d 586 (7th Cir. 2015) .......... 17, 22

*Waller v. City of Danville, Va.*,
515 F. Supp. 2d 659 (W.D. Va. 2007), aff'd, 556 F.3d 171 (4th Cir. 2009).......... 22

*Washington v. Ind. High Sch. Athletic Ass'n, Inc.*,
181 F.3d 840 (7th Cir. 1999) .......... 17

*Wis. Cmty. Servs., Inc. v. City of Milwaukee*,
465 F.3d 737 (7th Cir. 2006) .......... 18

*Young v. Forgas*,
308 Ill. App. 3d 553, 720 N.E.2d 360 (4th Dist. 1999) .......... 11, 13

**Other Authorities**

20 U.S.C. § 1401(19) .......... 14, 15, 16

20 U.S.C. § 1401(5) .......... 16

20 U.S.C. § 141 .......... 14

20 U.S.C. § 1412 .......... 15

28 U.S.C. § 1367 (c)(3) .......... 25

42 U.S.C. § 12132 .......... 17

745 ILCS 10/2-109 .......... 7, 8

745 ILCS 10/2-201 .......... 7

745 ILCS 10/3-108(a) .......... 9

Americans with Disabilities Act,
42 U.S.C. § 12131 *et seq.* (“ADA”).......... 1

Individuals with Disabilities Education Act,
20 U.S.C § 1400 *et seq.* (“IDEA”).......... 1

Section 504 of the Rehabilitation Act,
29 U.S.C. § 701 *et seq.* .......... 1, 17, 18

## I. INTRODUCTION

Plaintiffs assert claims of negligence, willful and wanton conduct, and violations of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 *et seq.* ("ADA"), the Individuals with Disabilities Education Act, 20 U.S.C § 1400 *et seq.* ("IDEA"), and Section 504 of the Rehabilitation Act, 29 U.S.C. § 701 *et seq.*, arising from alleged injuries suffered by Corban Pearson while on a school bus on the first day of school, during the afternoon of August 14, 2019.

Video surveillance from the school bus documents the occurrence alleged in Plaintiffs' Third Amended Complaint (Dkt. 182) ("TAC"), as well as the preceding steps taken by Defendants Antoinette Green (bus driver) and Pam Karnick (bus monitor) to secure Corban's motorized wheelchair to the rear of the bus. The sworn testimony of Green and Karnick, experienced and trained transportation employees of Community Unit District 303 ("District 303"), is that the wheelchair was secured with all four tie-down straps before the bus moved to start the afternoon trip. Their testimony is uncontroverted by other sworn testimony and the video of the bus. Unbeknownst to Green and Karnick, Corban engaged his power wheelchair and moved it from its original position. Shortly after that, the bus came to a stop and his wheelchair tipped forward.

After his wheelchair tipped, with Corban still secured in it, Karnick and Green attempted to push the wheelchair back but were unable to do so. Karnick stayed close to Corban until male emergency responders arrived and managed to reposition the wheelchair into an upright position. The only injury visible to the emergency responders was a scratch on Corban's knee that did not require medical attention.

Green and Karnick used their training to make their best effort to secure Corban's wheelchair and keep him safe during the trip. Corban's wheelchair tipped due to a combination of factors that were beyond Green and Karnick's control or, at worst, due also to inadvertence or unskillfulness on their part. Such conduct is far from sufficient for Plaintiffs to meet their burden on any of their claims against the District Defendants.

First, based on the evidence in the record, Plaintiffs cannot overcome the immunities the District Defendants are afforded on Plaintiffs' negligence claim, and Plaintiffs cannot meet their burden of proof in establishing willful and wanton conduct. District 303 and its Transportation Director, Terry Primdahl, are also immune to Plaintiffs' willful and wanton claim under the doctrine of discretionary immunity.

Second, Plaintiffs' claims against Primdahl, Green, and Karnick under the ADA and Rehabilitation Act were already properly dismissed by the Court because such claims cannot stand against individuals. Plaintiffs' attempt to re-plead these claims again should be rejected.

Third, the law precludes Plaintiffs' claim for compensatory damages under the IDEA. Plaintiffs' attempt to bring an IDEA claim against individuals is also contrary to the law. Even if such claims were legally viable, they are barred here by qualified immunity.

Fourth, Plaintiffs' claims against District 303 under the ADA and Rehabilitation Act are fatally lacking in a viable theory of liability and in facts.

For all the above reasons and as further discussed below, summary judgment should be entered against Plaintiffs and in favor of the District Defendants. In the alternative, if the Court enters summary judgment on Plaintiffs' federal claims but state-law claims remain, the state-law claims should be dismissed for lack of jurisdiction.

## II. FACTS

Lisa and Christen Pearson are the parents and co-guardians of Corban, who was 13 years old and in eighth grade at Wredling Middle School at the time of the incident in this case on August 14, 2019. SOF ¶¶2,3.[1] Corban is paraplegic due to muscular dystrophy and has high-functioning autism. *Id.* at ¶21. On the first day of school in 2018, Lisa had inadvertently dropped Corban due to his weight gain, which fractured his femur and that injury was unhealed, unbeknownst to Green and Karnick, when Corban was picked up for his first day of school in 2019. *Id.*

On the date of the subject incident, Corban weighed 176 pounds, which was a fifty-pound weight gain from two years prior. *Id.* at ¶¶23, 24. He had the same wheelchair since June 28, 2016. *Id.* at ¶22. When his wheelchair evaluation for any adjustments in October 2017, Lisa Pearson marked on a form that she refused Numotion's recommended anti-tip devices. *Id.* at ¶ 23. After the incident, Corban got a new wheelchair, which had anti-tip wheels, which were not on the wheelchair Corban had at the time of the incident. *Id.* at ¶ 25.

At the time of the incident, Karnick had been employed with District 303 as a bus monitor for 4 years. *Id.* at ¶7. Her duties in this role included making sure that special needs students were in their seats, and District 303 trained her to successfully perform her duties, including how to properly secure wheelchairs to the bus floor by using a four tie-down process. *Id.* at ¶¶11-17. Karnick employed that process when she secured Corban's wheelchair. *Id.* at ¶¶ 20, 31. In addition to her training, District 303 provided Karnick with policies and procedures on how to secure wheelchairs to a school bus. *Id.* at ¶15.

---

[1] Community Unit School District 303 Defendants' Statement of Facts in Support of their Motion for Summary Judgment is referred to herein as "SOF."

At the time of the incident, Green had been employed by District 303 for almost nine years. *Id.* at ¶6. Green completed mandated State of Illinois training to receive her school bus endorsement, and she also received an annual two-hour training certification, as mandated by the State of Illinois. *Id.* at ¶9.

District 303 provides bus drivers with training relating to special education students, which follows the State's curriculum. *Id.* at ¶¶14-17. District 303's training includes instruction on wheelchair transportation safety. *Id.* at ¶¶14-17. The driver and bus monitor serve as double checks of each other, which ensures an additional safety check. *Id.* at ¶10.

On the morning of August 14, 2019, Karnick secured Corban's wheelchair without incident and Green checked to ensure that the wheelchair was secure before starting her route. *Id.* at ¶30. That morning, Lisa instructed Karnick that Corban was in charge of operating his wheelchair. *Id.* at ¶28. Corban testified that there were no issues during the morning trip. *Id.* at *Id.* at ¶ 30.

On that day's trip home from school, Pam took steps to secure Corban's wheelchair, which are not easily visible from the bus video. *Id.* at ¶ 31. Specifically, Pam pulled the two retractable front straps from the bus floor and latched them to the bottom front of the wheelchair, then repeated the process by latching the two straps to the back of the wheelchair without any trouble. *Id.* She then asked Antoinette Green to come to the back of the bus to check that all four floor straps were securely fastened to the wheelchair, which she did, and they were. *Id.* at ¶ 32. Karnick testified that, based on her training, the shoulder strap was to be fastened, and she would have gotten up to secure it if she had known that it was not. *Id.* at ¶ 43. The shoulder strap is part of a restraint system that limits movement but does not prevent the movement of the person in the wheelchair. *Id.* at ¶ 50. The lap belt portion of that system was secured on Corban. *Id.* at ¶ 38.

During a stop in preparation for a left-hand turn, Corban's wheelchair tipped forward. *Id.* at ¶ 35. Within seconds, Karnick got up from where she was seated and, with Green's assistance, attempted to pull Corban's wheelchair back up, but they were unable to do so. *Id.* at ¶¶37-39. Corban was still strapped in the wheelchair and the four tie-downs still connected the wheelchair to the bus, but the wheelchair itself had tipped forward. *Id.* at ¶38. Karnick stayed with Corban until EMS arrived to assist. *Id.* at ¶¶40-41. She did not believe he was injured. *Id.* at ¶41. Unbeknownst to Karnick. Corban had powered on his chair and moved it forward before his wheelchair tipped. *Id.* at ¶36.

During her time working as a bus monitor for District 303 and prior to the occurrence involving Corban, Karnick never experienced any other occasion where a wheelchaired student became unsecured. *Id.* at ¶42.

Terry Primdahl served as the Director of Transportation at District 303 during the relevant time period. *Id.* at ¶5. At the time of her retirement in June 2023, she had served as the Director of Transportation for ten years and had been employed by District 303 for a total of 28 years. Primdahl Dep. *Id.* District 303's buses are inspected by the State of Illinois at the required mileage intervals and are also inspected daily by the respective bus driver. *Id.* at ¶44. There is no evidence that District 303 has had a tie-down system malfunction on any bus or any prior incidents similar to what happened to Corban. *See id.* at ¶ 47.

## III. ARGUMENT

### A. Plaintiffs' Negligence Claim in Count I is Barred by Tort Immunity.

Count I rests on Plaintiffs' allegations that District 303 and Primdahl, its Director of Transportation, failed to adequately train, instruct, and supervise bus transport personnel, failed to properly oversee transportation operations, and failed to maintain the bus in a safe operating condition. *See* TAC ¶ 46(a)-(p). As to Green and Karnick, Plaintiffs allege they were negligent in

failing to properly lock and secure the wheelchair, failing to perform a safety check of the wheelchair, failing to exercise reasonable care in driving the bus (Green only), failing to render reasonable assistance to Corban, failing to properly notify emergency assistance, and failing to properly follow training and instruction. *See id.* at ¶ 46(q)-(ll). These common law negligence allegations are barred because District 303 and its agents and representatives are immune from liability under the Tort Immunity Act and the School Code. Summary judgment should, therefore, be entered in the Defendants' favor on Count I.

**1. All of the Negligence Allegations are Barred by Immunity Pursuant to the School Code.**

Section 24-24 of the Illinois School Code acknowledges the unique role played by school officials in the supervision and safety of students under the doctrine of *in loco parentis*. 105 ILCS 5/24-24. Under the School Code, teachers are placed "in the relation of parents and guardians" to students to oversee the activities. 105 ILCS 5/24–24. Because a parent is not liable for injuries to his child absent willful and wanton misconduct, Illinois courts apply the same immunity to school officials for ordinary negligence. *Courson ex rel. Courson v. Danville Sch. Dist. No. 118*, 301 Ill.App.3d 752, 704 N.E.2d 447 (4th Dist. 1998). Accordingly, school officials acting in connection with the school program for the safety and supervision of students are immune from liability, unless their conduct is willful and wanton. *Kobylanski v. Chicago Board of Education*, 63 Ill.2d 165, 173, 347 N.E.2d 705 (Ill. 1976). Count I relies on allegations that the Defendants were negligent. *See* TAC ¶ 46. The claim, as asserted against all Defendants, is, therefore, barred, and summary judgment should be entered in favor of the Defendants on Count I.

### 2. Discretionary Immunity Bars the Negligence Allegations against District 303 and Primdahl.

Plaintiffs claim District 303 and Primdahl failed to develop, adopt, employ, or provide policies and preventative maintenance programs that were adequate to train transport personnel, ensure transport personnel's proficiency, and maintain the buses in safe operating condition. *See*, *e.g.*, TAC ¶ 46(a)-(p). Plaintiffs' allegations in Count I also rest, in part, on District 303's and Primdahl's personnel decisions relating to the supervision of staff. *See*, *e.g.*, Compl. ¶46(a)-(e), (h)-(m), (p).

The Tort Immunity Act immunizes local public entities and their employees from certain discretionary acts and policy decisions, referred to as "discretionary immunity," in the following provision:

> Except as otherwise provided by Statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused.

745 ILCS 10/2-201; *see also LaPorta v. City of Chicago*, 277 F.Supp.3d 969 (N.D. Ill. 2017). *See also* 745 ILCS 10/2-109 ("A local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable."). The acts of developing and implementing policies and procedures are policy decisions under the Tort Immunity Act. *Castillo v. Board of Education of City of Chicago*, 103 N.E.3d 596, 598 (2018), *appeal denied* 108 N.E.3d 800. Illinois courts have also held that the supervision of employees requires the exercise of discretion and determination of policy under section 2-201. *See Reed v. City of Chi.*, 2002 WL 406983, at *3 (N.D. Ill. March 14, 2002) ("While there are most likely guidelines in hiring, training and supervising employees, all three acts still require discretion, balancing of interests, and judgment calls.").

District 303 and Primdahl were exercising discretion or determining policy (or both) when they were administering training programs, deciding whether to provide a bus operator with student emergency contact information, devising preventative maintenance programs, and assessing the level of supervision that was appropriate. *See*, *e.g.*, TAC ¶ 46(a)-(p); *see also, e.g.,* SOF ¶¶ 8, 18, 45. Primdahl's duty as Director of Transportation is to oversee transportation employees in all aspects. SOF ¶ 8. Policies such as the bus driver's daily inspection of her bus (SOF ¶ 18) or the decision to include the emergency number for the office, but not the emergency number for the parent or guardian of each student on the bus, (*see*, *e.g.*, SOF ¶ 18) would be subject to the discretionary decisions of the determination of policy and execution of discretion by Primdahl or other administrative employees of District 303.

To be clear, while the training is in part guided by Illinois policies and curriculum (SOF ¶ 14), District 303 retains discretion as to the execution of the training. The State of Illinois does not "prescribe[] and define[] the time, mode and occasion of its performance with such certainty, that nothing remains for judgment or discretion." *See In Re Chicago Flood Litigation*, 176 Ill. 2d 179, 195 (1997) (because the city retained discretion in the execution of construction plans it was immune pursuant to section 2-201 for its supervision of the construction process).

Primdahl and other District 303 employees in a discretionary position handle the training and oversight of transportation operations and staff, and those roles require the balancing of competing interests and the exercise of discretion. Primdahl and District 303 (*see* 745 ILCS 10/2-109) are immune from liability for how they allegedly supervised and trained transportation staff and the policies they implemented relating thereto. *See*, *e.g.*, *Reed*, 2002 WL 406983, at *3; *Taylor v. City of Chicago*, 1997 U.S. Dist. LEXIS 1020, *16 (N.D. Ill. January 31, 1997) (granting motion to dismiss because section 2-201 immunized claims "regarding the discretionary training, supervision, and control of police officers"). Because the alleged conduct

of District 303 and Primdahl in Count I is entitled to discretionary immunity, on this additional basis, judgment should be entered in favor of District 303 and Primdahl on Count I.

**3. Supervisory Immunity Bars Plaintiffs' Allegations of Failure to Supervise or Train.**

Plaintiffs allege that District 303 and Primdahl failed to "oversee pupil transportation operations" in various ways. TAC ¶46(h); *See also*, *id.* at ¶46(a)-(e), (g)-(m), (o), and (p). Plaintiffs allege Corban was harmed by District 303 and Primdahl's alleged failure to supervise the conduct that occurred on the bus. Section 3-108 of the Tort Immunity Act provides in relevant part that:

> Except as otherwise provided in this Act, neither a local public entity nor a public employee who undertake to supervise an activity on or the use of any public property is liable for an injury unless the public employee is guilty of willful and wanton conduct in its supervision proximately causing the injury.

745 ILCS 10/3-108(a). Courts broadly interpret the word "supervision" to include "coordination, direction, oversight, implementation, management, superintendence, and regulation." *Dixon v. Chi. Bd. of Educ.*, 304 Ill. App. 3d 744, 748, 710 N.E.2d 112 (1st Dist. 1999). Courts interpreting section 3-108 have applied it broadly to encompass supervision of students inside and outside of the classroom. *See*, *e.g.*, *Doe v. Chi. Bd. of Educ.*, 339 Ill. App. 3d 848, 856, 791 N.E.2d 1283 (1st Dist. 2003) (affirming dismissal under section 3-108 for alleged improper supervision of students on school bus). Further, section 3-108 does not only relate to the supervision of students—it also serves to immunize public entities for failing to properly supervise and train employees. *See Flores v. Palmer Marketing*, 361 Ill. App. 3d 172, 175 (1st Dist. 2005) (finding section 3-108 immunized the park district for failing to train its employees); *Trotter v. School Dist. 218*, 315 Ill. App. 3d 1, 18 (1st Dist. 2000) (finding section 3-108 immunized "a failure to provide trained instructors with such degree and skill necessary to respond to emergency situations.").

Plaintiffs' allegations arising from a negligent failure to supervise and train (TAC ¶46(a)-(e), (g)-(m), (o), and (p)) are, therefore, barred under section 3-108 and judgment should be entered in favor of District 303 and Primdahl on those claims for this additional reason.

### B. Plaintiffs' Willful and Wanton Claim in Count II is Barred, in Part, by Tort Immunity and Fails in its Entirety Based on the Lack of Evidence to Support It.

#### 1. Discretionary Immunity Bars Plaintiffs' Allegations of Willful and Wanton Conduct against District 303 and Primdahl.

In support of their willful and wanton claim against Primdahl and District 303 in Count II, Plaintiffs allege, they "willfully and wantonly failed to provide bus operators with parent contact information to be used in the event of an emergency, in a careless and reckless disregard for Corban's safety" and District 303, through its agents, "otherwise willfully and wantonly operated the school bus in a reckless manner" TAC ¶ 51(m), (n). Discretionary immunity under section 2-201 offers immunity for both negligence and willful and wanton conduct. *See In re Chi. Flood Litig.*, 176 Ill. 2d 179, 196 (1997); *Nichols v. Chicago Heights,* 2015 IL App (1st) 122994, ¶28. Thus, for the reasons further described above in Part III.A.2, Count II is barred as to District 303 and Primdahl.

First, choosing not to provide the contact information of every parent to the bus driver and monitor (TAC ¶ 51(m)) does not meet the standard of willful and wanton conduct in the first instance, but, also, it is premised on a discretionary policy decision, as further discussed in Part III.A.2., *supra*.

Second, as to the allegation relating to District 303's willful and wanton "operation" of the bus (TAC ¶ 51(n)), that allegation seemingly refers to the conduct of Green and Karnick (which is further addressed below) and not District 303 itself. To the extent the allegation intends to mean "operation" in the sense of District 303's oversight and implementation of policy relating to the school bus, that claim is entitled to discretionary immunity as discussed above.

Thus, even if Plaintiffs could meet the standard of willful and wanton conduct, which they cannot, District 303 and Primdahl are immune to the allegations in Count II, and judgment should be entered in their favor.

**2. Plaintiffs Have Failed to Adduce Evidence of Willful and Wanton Conduct By any of the District Defendants.**

Plaintiffs bear the burden of proving that the Defendants engaged in "highly unreasonable conduct," which involves "an extreme departure from ordinary care, in a situation where a high degree of danger is apparent." *Young v. Forgas*, 308 Ill. App. 3d 553, 563, 720 N.E.2d 360 (4th Dist. 1999). The critical component of this burden is notice. *Vilardo v. Barrington Cmty. Sch. Dist. 220*, 406 Ill. App. 3d 713, 724, 941 N.E.2d 257 (2d Dist. 2010). Plaintiffs have wholly failed to demonstrate that the District Defendants showed utter indifference or conscious disregard for Corban's well-being. Willful and wanton conduct goes beyond mere negligence in that it requires a conscious choice by a defendant to either cause harm or to engage in a course of action with knowledge that it involves a risk of serious danger to another." *Doe v. Bridgeforth*, 2018 IL App. (1st) 170182, ¶ 46. The Illinois Supreme Court has held that "school employees who exercised some precautions to protect students from injury, even if those precautions were insufficient, were not guilty of willful and wanton conduct." *Barr v. Cunningham*, 2017 IL 120751, ¶ 18 (citing *Lynch v. Board of Education of Collinsville Community Unit District No. 10*, 82 Ill. 2d 415, 430-31 (1980)). The Seventh Circuit has held that the "willful and wanton standard is remarkably similar to the deliberate indifference standard." *Pittman ex rel. Hamilton v. County of Madison*, 746 F.3d 766, 781 (7th Cir. 2014).

A plaintiff can only establish a "course of action" to support a claim for willful and wanton misconduct, if the plaintiff either demonstrates that the defendant had prior knowledge of incidents similar to the one that injured the plaintiff, *see*, *e.g.*, *Floyd*, 355 Ill. App. 3d at 702

(“Prior knowledge of similar acts is required to establish a ‘course of action.’”), or provides evidence that the activity is “generally associated with a risk of serious injuries,” *Doe v. Bridgeforth*, 2018 IL App (1st) 170182, ¶ 46, *quoting Barr*, 2017 IL 120751, ¶ 20. Willful and wanton conduct requires “more than mere inadvertence, incompetence, or unskillfulness.” *See Leja v. Cmty. Unit Sch. Dist. 300*, 2012 IL App (2d) 120156, ¶11; *cf. Ozuk v. River Grove Bd. of Educ.*, 281 Ill. App. 3d 239, 245 (1st Dist. 1996).

As the undisputed evidence shows, Green and Karnick secured the wheelchair with four tie-down straps before starting the afternoon bus route. SOF ¶¶31, 32. Karnick pulled the retractable straps from the bus floor and latched them to the bottom front of the wheelchair, then repeated the process by latching the straps to the back of the wheelchair without any trouble. SOF ¶31. She then asked Antoinette Green to come to the back of the bus to check that all four-floor straps were securely fastened to the wheelchair, which she did. SOF ¶32.

Lisa Pearson had told Green that Corban was very independent and liked to do things on his own, and she had instructed Karnick that Corban was in charge of operating his own wheelchair. SOF ¶28. Unbeknownst to Green and Karnick, Plaintiff engaged the power wheelchair and moved it from its original position shortly before his wheelchair tipped forward. SOF ¶36.

Karnick and Green then attempted to push the wheelchair back but were unable to do so. SOF ¶¶37-40. Karnick did not observe any injuries and stayed close to Corban until male emergency responders arrived and managed to reposition the wheelchair into an upright position. SOF ¶41.

The undisputed evidence is that Green and Karnick took their time to ensure Corban was secured and to check the straps. All four straps were properly tied down when the trip began and

were still tied down to the bus and extended after Corban's wheelchair tipped. SOF ¶38. The video shows that the shoulder strap was not properly secured, which Karnick said she had not been aware of until seeing the video. SOF ¶43. Even if the shoulder strap was negligently secured or even if Green and Karnick, on the first day of school, did not secure the straps in a manner that was entirely consistent with their training, that incompetence or unskillfulness does not and cannot amount to willful and wanton conduct. The video shows they were taking their time, using each other as double checks, and looking out for Corban and his safety during the route. SOF ¶¶31-41. There is also no course of conduct or prior notice to any of the Defendants that Green and Karnick could not properly secure a wheelchair or had failed to do so in the past. *See*, *e.g.*, SOF ¶42. Even Plaintiffs' own expert determined only that District 303, Karnick, and Green were "negligent" in not properly securing Corban, and he could not determine whether any such negligence arose from the equipment or a failure to secure by Karnick or Green. SOF ¶¶48, 49.

Plaintiffs cannot meet their burden of proving that the District Defendants engaged in "highly unreasonable conduct," involving "an extreme departure from ordinary care." *Young*, 308 Ill. App. 3d at 563. Summary judgment on Plaintiffs' willful and wanton claim is proper and should be granted.

### C. Plaintiffs' ADA, IDEA, and Rehabilitation Act Claims in Counts IV and V are Legally and Factually Deficient.

#### 1. This Court Dismissed Plaintiffs' Claims Against the Individual Defendants Under the ADA and Rehabilitation Act.

On September 11, 2023, this Court properly dismissed Plaintiffs' claims under the ADA and Section 504 of the Rehabilitation Act in Counts IV and V as pled against Green, Karnick, and Primdahl in the First Amended Complaint because those statutes preclude individual liability (Dkt. 110.) To the extent Plaintiffs attempt to re-assert these claims against Green, Karnick, and

Primdahl in their Third Amended Complaint, Green, Karnick and Primdahl refer to and adopt the arguments contained in Green's Motion to Dismiss and corresponding reply as well as to Plaintiffs' concession in their response brief. (Dkt. 91, 93, 96.)

**2. Plaintiffs' IDEA Claim in Count IV Fails Because a Plaintiff Cannot Seek Compensatory Damages under the IDEA.**

In Count IV, Plaintiffs claim damages against all Defendants arising from an alleged violation of the IDEA. *See* TAC, Count IV, at ¶ 64 and prayer for relief. Because compensatory damages are not available under the IDEA, and Plaintiffs do not seek injunctive or prospective relief, judgment should be entered in Defendants' favor on the IDEA claim in Count IV. *C.B. v. Bd. of Educ. of City of Chicago, Dist. 299*, 624 F. Supp. 3d 898, 912 (N.D. Ill. 2022) (Valderrama, J.), *citing Charlie F. by Neil F. v. Bd. of Educ. of Skokie Sch. Dist. 68*, 98 F.3d 989, 991 (7th Cir. 1996), *abrogated in part on other grounds by Fry v. Napoleon Cmty. Sch.,* 580 U.S. 154, 137 S.Ct. 743, 197 L.Ed.2d 46 ("Charlie says that he wants compensatory money damages, which the IDEA does not authorize."); *McIntyre v. Eugene Sch. Dist. 4J*, 976 F.3d 902, 910-11 (9th Cir. 2020) (citations omitted) ("[IDEA plaintiffs] can pursue injunctive or other prospective relief, including reimbursement for the cost of private education, but not ordinarily monetary damages.").

**3. Individuals such as Primdahl, Green, and Karnick Cannot be Liable Under the IDEA.**

There is an additional basis on which Court should grant summary judgment as to Plaintiffs' claim against Green, Primdahl, and Karnick under the IDEA. *Moore v. Hamilton Southeastern Sch. Dist.*, Case No. 11-cv-01548-SEB-DML, 2013 U.S. Dist. LEXIS 123507, at *71 (S.D. Ind. Aug. 29, 2013) (finding individuals are not proper defendants under the IDEA); *see also* 20 U.S.C. § 1401(19); 20 U.S.C. § 141. As the law stands now, there is no statutory basis or legal decision in the Seventh Circuit allowing individuals to be personally liable under

the IDEA.[2] The *Moore* court noted "[t]he commands and funding conditions of the IDEA—including the central FAPE requirement—are directed at states and 'local educational agencies,' as defined by statute . . . . [and] [i]n determining whether a federal right furnishes a cause of action under Section 1983, the crucial consideration is what Congress intended.'" 2013 U.S. Dist. LEXIS at *70-72 (citing 20 U.S.C. § 1401(19) (defining "local educational agency"); 20 U.S.C. § 1412 (outlining procedural requirements imposed on states and their subdivisions); *Smith v. Robinson*, 468 U.S. 992, 1012 (1984)).

However, since *Stanek*[3] was decided in 2015, "courts across the country have since held that the IDEA does not provide for individual liability." *C.B. v. Bd. of Educ.,* No. 20-cv-00586, 2022 U.S. Dist. LEXIS 153974, at *19 (N.D. Ill. Aug. 26, 2022) (collecting cases). Moreover, "the IDEA is devoid of any textual support of individual liability." *Id.* For instance, the fact that "only the public agency is liable for reimbursement follows naturally from the fact that Congress assigned to the agency the ultimate responsibility for ensuring FAPE." *Id.; see also Taylor v. Altoona Area Sch. Dist.*, 513 F. Supp. 2d 540, 553 (W.D. Pa. 2007) ("Congress does not normally seek to impose liability on individuals when it places conditions on the receipt of federal funds by entities that employ such individuals.")

The IDEA's definitions of "local educational agency" and "educational service agency" provide further clarity on the issue, as "the IDEA tasks those entities with providing each eligible

[2] In *Stanek v. St. Charles Cmty. Unit Sch. Dist. #303*, 783 F.3d 634, 644 (7th Cir. 2015), the Seventh Circuit allowed an IDEA claim against the individual defendants to move forward but declined to offer an opinion on whether the IDEA authorizes individual liability. It specifically stated: "[w]e offer no opinion on the issue now, because it is relatively undeveloped." *Id.*

[3] Notably, "[a]t least two Circuits appeared to have addressed this issue before *Stanek." C.B. v. Bd. of Educ.* (N.D. Ill. 2022) 624 F. Supp. 3d 898, 910, fn. 5 (citing *Bradley v. Arkansas Dep't of Educ.*, 301 F.3d 952, 957 n.6 (8th Cir. 2002) (recovery from state defendants in their individual capacities not available for IDEA claim, observing "the IDEA is devoid of textual support for such an award"); *Diaz-Fonseca v. Puerto Rico*, 451 F.3d 13, 35 (1st Cir. 2006) (interpreting the plain text of the IDEA and holding "no claim for monetary relief can . . . be stated against individual defendants under IDEA.")).

child with a FAPE, and neither definition—either explicitly or implicitly—refers to individuals." *Id.* (citing 20 U.S.C. § 1401(5), 1401(19)); see also id. ("Section 1415 of the IDEA . . . explicitly applies to '[a]ny State educational agency, State agency, or local educational agency that receives assistance under this subchapter.'").

For these additional reasons, summary judgment should be entered on Plaintiffs' claim under the IDEA against the individual defendants.

**4. Primdahl, Green, and Karnick Are Entitled to Qualified Immunity As to the IDEA.**

Even further, at a minimum, the constitutional right was not clearly established at the time of the alleged violation. State actors such as Primdahl, Green, and Karnick are entitled to qualified immunity unless (1) the facts, taken in a light most favorable to a plaintiff, show that a defendant violated a constitutional right, and (2) the constitutional right was clearly established at the time of the alleged violation. *Khuans v. School Dist. 110*, 123 F.3d 1010, 1013 (7th Cir. 1997) (awarding qualified immunity to a school employee). A right is clearly established when "at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood what [she] is doing violates that right." *Levin v. Madigan*, 692 F.3d 607, 622 (7th Cir. 2012). (cleaned up). Existing precedent "must have placed the statutory or constitutional question beyond debate." *Kemp v. Liebel*, 877 F.3d 346, 351 (7th Cir. 2017). Here, as noted above, Primdahl, Green, and Karnick have neither violated a constitutional right nor violated a constitutional right that was *clearly established* on August 14, 2019. There is no authority that would have put Primdahl, Green, and Karnick on notice that their actions violated clearly established law. For these additional reasons, summary judgment should be entered on Plaintiffs' IDEA claim.

### 5. Plaintiffs' ADA and Rehabilitation Act Claims Against District 303 are Not Based on a Viable Legal Theory and Do Not Have Facts to Support Them.

In Counts IV and V, Plaintiffs allege District 303 denied Corban access to safe and appropriate transportation and was deliberately indifferent to Corban's safety when it failed to properly train and instruct its bus transportation operators and failed to establish and implement policies and procedures regarding safe and appropriate transportation of students with disabilities. TAC, Count IV, at ¶¶ 66-68 and Count V, at ¶¶ 70-72.

The fundamental purpose of ADA's Title II is to address "a pattern of unequal treatment in the administration of a wide range of public services, programs, and activities." *Tennessee v. Lane*, 541 U.S. 509, 516-17, 522-26 (2004). To accomplish this goal, Title II mandates that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

To prove a claim under Title II of the ADA, a plaintiff must prove the following elements: (1) he is a qualified individual with a disability; (2) he was denied the benefits of the services, programs, or activities of a public entity or otherwise subjected to discrimination by such an entity; and (3) the denial or discrimination was by reason of his disability. *Wagoner v. Lemmon,* 778 F.3d 586, 592 (7th Cir. 2015). As such, "an ADA violation exists only if the defendant's action or inaction prevents the plaintiff from participating in a program, activity or service." *Holmes v. Godinez*, 311 F.R.D. 177, 226 (N.D. Ill. 2015). Because "Title II of the ADA was modeled after § 504 of the Rehabilitation Act[,]" and because "the elements of claims under the two provisions are nearly identical," the Seventh Circuit has held "that the standards applicable to one act are applicable to the other." *Washington v. Ind. High Sch. Athletic Ass'n, Inc.*, 181 F.3d 840, 845 n.6 (7th Cir. 1999); *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th

Cir. 2004) (citing *Ozlowski v. Henderson*, 237 F.3d 837, 842 (7th Cir. 2001)). The only distinguishing factor is that claims under the Rehabilitation Act require that the defendant receive federal funds. *See Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 671 (7th Cir. 2012).

The parties agree that Corban is a qualified individual with a disability for purposes of the ADA and Section 504. The dispute, therefore, centers around whether District 303 discriminated against Corban.

To obtain a judgment for damages for discrimination under Title II, the plaintiff must show the defendant intentionally acted on the basis of the disability, the defendant refused to provide a reasonable modification, or the defendant's rule disproportionally impacts disabled people. *Wis. Cmty. Servs., Inc. v. City of Milwaukee*, 465 F.3d 737, 753 (7th Cir. 2006). "Intentional" action by the defendant includes, at a minimum,[4] "deliberate indifference," which requires "knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that likelihood." *See Lacy v. Cook County*, 897 F.3d 847, 863 (7th Cir. 2018). *See also McDaniel v. Syed*, 115 F.4th 805, 829 (7th Cir. 2024) (an award of compensatory damages under the ADA and Rehabilitation Act requires a finding that District 303 was at least deliberately indifferent to the plaintiff's lack of access), *citing Lacy*, 897 F.3d at 863 (7th Cir. 2018). The deliberate indifference must be on the part of District 303 and not based on District 303's vicarious liability for the actions of an employee, such as Green or Karnick. *See Doe v. Bd. of Educ. of City of Chicago*, 611 F. Supp. 3d 516, 531 (N.D. Ill. 2020), *citing Ravenna v. Vill. of Skokie*, 388 F. Supp. 3d 999, 1004-1006 (N.D. Ill. 2019).

---

[4] The Seventh Circuit Court of Appeals has not yet decided whether discriminatory animus or deliberate indifference is required to show intentional discrimination. *Strominger v. Brock*, 592 Fed. Appx. 508, at 511 (7th Cir. 2014) (comparing *S.H. ex rel. Durrell v. Lower Merion Sch. Dist.*, 729 F.3d 248, 262-63 (3d Cir. 2013) (deliberate indifference), *with Carmona-Rivera v. Puerto Rico*, 464 F.3d 14, 18 (1st Cir. 2006) (discriminatory animus). Thus, the standard that would be easier to meet—deliberative indifference—is addressed here.

**a. The ADA and Rehabilitation Act Claims Fail Because Plaintiffs Cannot Show Actual Knowledge or Deliberate Indifference.**

For purposes of Title II, deliberate indifference means, "both (1) knowledge that a harm to a federally protected right is substantially likely, and (2) a failure to act upon that likelihood." *Lacy*, 897 F.3d at 863. Under the deliberate indifference standard, a plaintiff must show knowledge (*i.e.*, notice that an accommodation is required) and deliberate conduct by the defendant (as opposed to mere negligence)." *S.B. ex rel W.B. v. Hamos*, No. 12-CV-3077, 2012 U.S. Dist. LEXIS 142851, 2012 WL 4740291, at *7 (C.D. Ill. Oct. 3, 2012); *Riley v. Board of Commissioners*, 2015 U.S. Dist. LEXIS 73656 *25 (N.D. Ind. 2015) (aff'd in pert. part. 2015 U.S. Dist. LEXIS 75463 *5). Under this standard, bureaucratic inaction is not sufficient to establish liability under Title II, *S.H. ex rel. Durrell v. Lower Merion Sch. Dist.*, 729 F.3d 248, 262-63 (3d Cir. 2013), and Title II is not violated by an isolated incident of alleged negligence, *Foley v. City of Lafayette, Ind.*, 359 F. 3d 925, 930-31 (7th Cir. 2004). Here, Plaintiffs have no evidence of discriminatory animus and cannot meet the standard to establish deliberate indifference.

Specifically, Plaintiffs cannot show that District 303 realized that there was a serious harm and knowingly refused to do anything to alleviate it. *See Campbell v. Greer*, 831 F.2d 700, 702 (7th Cir. 1987). Deliberate indifference means "subjective awareness" and it is "not enough that the defendant ought to have recognized the risk." *Riccardo v. Rausch*, 359 F.3d 510 (7th Cir. 2004). In *Farmer v. Brennan*, the Supreme Court analogized deliberate indifference to criminal recklessness, further explaining that "the official must be both aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference." *Farmer*, 511 U.S. 825, 831, 837, 114 S. Ct 1970 (1994); *see also Archie v. City of Racine*, 847 F. 2d 1211, 1219 (7th Cir. 1988) (en banc) ("An act is reckless in the pertinent

sense when it reflects complete indifference to risk—when the actor does not care whether the other person lives or dies, despite knowing that there is a significant risk of death."). To establish deliberate indifference, Plaintiffs must show that District 303 realized that a substantial risk of serious harm to plaintiff existed, and then it disregarded that risk. *See Perez v. Fenoglio*, 792 F.3d 776, 768 (7th Cir. 2015). Further, in case Plaintiffs attempt to argue that Green and Karnick had notice of the risk of harm, their notice is not pertinent to the liability of District 303 itself. *See Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 291, 118 S. Ct. 1989, 1999, 141 L. Ed. 2d 277 (1998) ("Where a school district's liability rests on actual notice principles, however, the knowledge of the wrongdoer himself is not pertinent to the analysis.").

Here, the subject incident occurred in the course of District 303 providing transportation tailored to Corban's needs. The undisputed evidence is that, despite District 303's training (SOF ¶¶9-20), its inspection and maintenance of the buses (SOF ¶¶44-47), and Green and Karnick's efforts to secure the wheelchair as best they could on the first day of the school year (SOF ¶¶ 31-36), this accident occurred. The training provided to Green and Karnick specifically instructed them how to properly strap a wheelchair into the bus, and the busses were properly equipped for such. SOF ¶¶9-20, 38, 44-47). Even if Green and Karnick could be found negligent in the way they strapped in Corban on the first day of school, there is no evidence that District 303 had an opportunity to review the way in which Corban was secured before his wheelchair tipped or that District 303 otherwise had any notice of danger to Corban that it deliberately ignored. There is also no evidence that District 303 had notice of prior incidents in which Green, Karnick, or any other District transportation employee did not properly secure a wheelchair into the bus. Further, other factors surrounding the incident, which were outside of District 303's control should also be taken into account, including: that Corban had gained over fifty pounds in the two years prior

to the incident, but was still using the same wheelchair (SOF ¶¶23, 24); his wheelchair did not have anti-tip wheels (as his current one does) (SOF ¶¶23, 25); and Corban had turned his wheelchair on and moved it prior to it tipping (SOF ¶36).

In *Foley*, the Seventh Circuit affirmed the dismissal of the plaintiffs' ADA complaint where the plaintiff had complained of "individual, isolated instances of employee negligence" as opposed to "a systemic problem with the policies of the [defendant] regarding the structure and operation of the train station." *Foley*, 359 F. 3d 925, 930-31. *Foley* involved a claim by a wheelchair-bound train passenger who encountered complications at the train station when the station's elevators malfunctioned due to the cold weather. *Id.* at 927. The only other wheelchair-accessible means of exit consisted of an un-shoveled, snow-covered, ramp, which plaintiff decided to walk up, leaving his wheelchair behind, with the assistance of an employee, which resulted in an alleged injury. *Id.* at 928. The plaintiff contended that the defendant violated Title II of the ADA by failing to maintain the elevators in operating condition and by failing to take reasonable steps to accommodate him by clearing the ramp of snow. *Id.* at 930. First, the court found that there was no evidence of a "frequent denial of access to disabled persons" or that the defendant had a policy of neglecting elevator maintenance. *Id.* The court further held that elevator malfunctions unaccompanied by systemic problems of poor maintenance did not constitute violations. *Id.* In rejecting the plaintiff's claim, the court stated that, "[i]solated acts of negligence by a city employee do not come within the ambit of discrimination against disabled persons proscribed by the ADA," and that the conduct "was neither a willful nor systematic effort" by the defendant to deprive the plaintiff of accommodation. *Id.* at 930-31. Here, too, the accident on the first day of school (in a wheelchair that may not have been a proper fit for Corban) was not part of a string of failures or a systematic effort by District 303 to deprive Corban of access.

Further, while Corban alleges his physical injuries resulted from the incident, he has not shown that the incident itself has deprived him of access to benefits and services. *See*, *e.g.*, *Wagoner v. Lemmon*, 778 F.3d 586, 593 (7th Cir. 2015) (summary judgment appropriate because IDOC did not violate a paraplegic inmate's rights under Title II or the Rehabilitation Act when it failed to provide him with a wheelchair-accessible van and he forced to crawl on a non-compliant van's floor because it did not deny him access to programs and activities); *see also* S*huhaiber v. Illinois Dep't of Corr.*, 980 F.3d 1167, 1168-70 (7th Cir. 2020) (insufficient to show denial of services where the wheelchair-bound incarcerated plaintiff alleged difficulties with showers, getting in the bunk and using the table).

**b. Plaintiffs' "Failure to Train" Theory is Legally Insufficient and Not Supported by Facts.**

**i. Plaintiffs' "Failure to Train" Claim is Not Cognizable Under the ADA or Rehabilitation Act.**

Plaintiffs' ADA and Rehabilitation claims against District 303 rely in substantial part on a "failure to train" theory. *See* TAC, Count IV, at ¶¶ 66, 67 and Count V, at ¶¶ 70, 71. An alleged "failure to train" is not a valid basis for a Title II or Rehabilitation Act claim. *See Paine v. City of Chicago*, No. 06 C 3173, 2009 WL 10687409, at *3 (N.D. Ill. May 21, 2009) (rejecting failure to train claim under the ADA and citing *Waller v. City of Danville, Va.*, 515 F. Supp. 2d 659, 665 (W.D. Va. 2007), aff'd, 556 F.3d 171 (4th Cir. 2009)); *Thao v. City of St. Paul*, No.03-5306, 2006 WL 1004379, at *8 (D. Minn. Apr. 13, 2006), aff'd, 481 F.3d 565 (8th Cir. 2007); *Dillery v. City of Sandusky*, 398 F.3d 562, 568 (6th Cir. 2005); *Hainze v. Richards*, 207 F.3d 795, 801 (5th Cir. 2000). As the court in *Paine* explained in the context of an alleged failure to train police officers:

> Under the ADA's plain language, a violation occurs at the point in time that a public entity denies a disabled individual the benefits of a service, program or activity. However, a failure to train officers

> does not exclude an individual from the benefits of a service, program, or activity; the exclusion, if any, occurs at a later time. At the time that the officers received allegedly inadequate training, no exclusion occurred. Without an exclusion, there cannot be a violation of Title II of the ADA.

*Paine*, at *3 (citing 42 U.S.C. § 12132).

Adhering to this accepted understanding of the ADA, other courts have refused to allow Title II claims based on a "failure to train" or supervise under Title II because the acts alleged did not constitute intentional acts of discrimination against the plaintiff. *See Buchanan v. Maine*, 469 F.3d 158, 177 (1st Cir. 2006); *Sears v. Bradley County Gov't*, 821 F.Supp.2d 987, 991 (E.D. Tenn. 2011) ("[f]ailure to supervise is not a viable theory for recovery of compensatory damages in a Title II ADA claim, since such failure is necessarily not directed at a particular disabled individual"), *citing Dillery v. City of Sandusky*, 398 F.3d 562, 568 (6th Cir. 2005) ("Acts and omissions which have a disparate impact on disabled persons in general are not specific acts of intentional discrimination against the plaintiff in particular.") (internal quotation marks omitted)); *see also Scozzari v. City of Clare*, 723 F. Supp. 2d 945, 973 (E.D. Mich. 2010) (noting that the court earlier "denied Plaintiff leave to amend the complaint to allege a claim based on the City's failure to train its officers under the ADA because pursuing such a claim would be futile"). Plaintiffs' theory cannot work here because, even if there were evidence of training deficiencies (which there is not), such deficiencies cannot establish the requisite discriminatory animus or deliberate indifference toward Corban and would not have been sufficient to exclude Corban from access to services or benefits.

**ii. Plaintiffs Have Failed to Allege Facts Demonstrating a "Failure to Train."**

Even if this Court were to find Plaintiffs' "failure to train" claim legally viable, Plaintiffs cannot adduce facts sufficient to prove such a claim. There is no body of case law setting forth the standard to state a "failure to train" claim under the ADA because such claims have so rarely

been entertained. Of some guidance, however, may be the body of case law governing the deliberate indifference standard for Section 1983 "failure to train" claims against municipalities. *See City of Canton v. Harris*, 489 U.S. 378, 388 (1989). At a minimum, a plaintiff must allege facts demonstrating that the alleged inadequate training "actually caused" the violation. *Id.* at 390-91. As the Supreme Court found in *City of Canton*,

> [n]either will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct. Such a claim could be made about almost any encounter resulting in injury, yet not condemn the adequacy of the program to enable officers to respond properly to the usual and recurring situation with which they must deal.

*Id.* at 391. Further, under a Section 1983 framework, a "failure to train" can provide the basis for liability only if it can be shown that policymakers were aware of, and acquiesced in, a pattern of constitutional violations. *Id.* at 397. Plaintiffs fail to show that the alleged lack of instruction was the result of an affirmative, conscious decision. Instead, the evidence shows that District 303 provided training that was aligned with State guidelines and requirements, as well as other guidelines and training that addressed wheelchair transportation safety. SOF ¶¶9-18. Karnick was tested as to how to secure a wheelchair, including through the use of the 5-point safety strap (which includes the shoulder strap), and she met the requisite safety steps. SOF ¶13. Further, Plaintiffs have pointed only to the single incident that allegedly caused his injury and not a pattern or longstanding failure that is required to demonstrate deliberate indifference. For the above reasons, there is no genuine issue of material fact, and Plaintiffs have far from sufficient evidence to support a claim against District 303 under the ADA and Rehabilitation Act.

**D. Judgment Should Be Entered on the Family Expense Act Claim in Count III.**

Plaintiffs Christin and Lisa Pearson make claims under the Family Expense Act (750 ILCS 65/15) for medical expenses associated with the subject incident. The Family Expense Act

itself cannot be used to create liability or recover damages if there is no underlying personal injury claim. *See Lewis v. Lead Indus. Ass'n*, 2020 IL 124107, ¶¶ 42, 43. Since Defendants are not liable for the alleged subject incident, they are also not liable for any claims made by Plaintiffs Christin and Lisa Pearson pursuant to the Family Expense Act.

### E. If Judgment is Entered on Counts IV and V, the Court Should Decline to Exercise Jurisdiction over any Remaining State Law Claims.

If summary judgment is entered on Plaintiffs' federal claims in Counts IV and V and any state law claims survive, this Court should decline to exercise supplemental jurisdiction on those claims based on 28 U.S.C. § 1367 (c)(3). *See Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514, 126 S. Ct. 1235, 163 L. Ed. 2d 1097 (2006) ("[W]hen a federal court concludes it lacks subject matter jurisdiction, the court must dismiss the complaint in its entirety.")

## IV. CONCLUSION

For all the reasons set forth above, judgment should be entered in favor of the District Defendants and against Plaintiffs.

Respectfully submitted,

**Community Unit School District 300**
**Board of Education and Terry Primdahl**

By: */s/ Richard Capra*

Charles A. LeMoine
Richard Capra
TRESSLER LLP
233 South Wacker Drive, 61st Floor
Chicago, Illinois 60606-6399
Telephone: (312) 627-4000
clemoine@tresslerllp.com
rcapra@tresslerllp.com
***Attorneys for Community Unit School District 300 Board of Education and Terry Primdahl***

**Pamela Karnick**

By: _/s/ Pamela Karnick_

Margaret Firnstein Gebhardt (#6269742)
Amundsen Davis LLC
150 N. Michigan Ave., Suite 3300
Chicago, IL 60601
312.894.3200
mfirnstein@amundsendavislaw.com
***Attorneys for Pamela Karnick***

**Antoinette Green**

By: _/s/ Antoinette Green_

Vincent M. Rizzo
Hinshaw & Culbertson LLP
150 N. Franklin Street, Suite 2500
Chicago, IL 60606
312.704.3234
VRizzo@hinshawlaw.com
***Attorneys for Antoinette Green***

## CERTIFICATE OF SERVICE

I hereby certify that on January 28, 2025, I electronically filed the foregoing **COMMUNITY UNIT SCHOOL DISTRICT 303 DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR JOINT MOTION FOR SUMMARY JUDGMENT** with the Clerk of the Court using the ECF system, which sent electronic notification of the filing on the same day and was served upon all counsel of record via the Court's CM/ECF system

By: */s/ Richard Capra*

4930-0139-1888, v. 2