**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CHRISTIN P. PEARSON, on his own and on behalf of his minor child, CORBAN PEARSON; and LISA PEARSON on her own and on behalf of her minor child, CORBAN PEARSON, | ) | |
| Plaintiffs, | ) | |
| v. | ) | Case No. 1:20-CV-05096 |
| COMMUNITY UNIT SCHOOL DISTRICT 303, ANTOINETTE L. GREEN, PAM KARNICK, TERRY PRIMDAHL, and UNITED SEATING AND MOBILITY, LLC, a Missouri Limited Liability Company d/b/a NUMOTION | ) | Honorable John Robert Blakey |
| Defendants. | ) | |

**DISTRICT DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTIONS FOR SUMMARY JUDGMENT**

NOW COME Defendants, Community Unit School District 303, Terry Primdahl, Antoinette Green and Pam Karnick ("District Defendants"), by and through their respective Counsel and in Response to Plaintiffs' motions for summary judgment on certain affirmative defenses (Dkt Nos. 196, 197, 198), state as follows:

## INTRODUCTION

Plaintiffs filed three separate motions for summary judgment against the District Defendants. Common to all three motions is Plaintiffs' argument that there are no disputed facts that Christin and Lisa Pearson were contributorily negligent. In their motions, Plaintiffs argue that Illinois does not follow a straight contributory negligence standard and instead follows a modified comparative negligence standard. District Defendants agree. Notwithstanding, the language of the statute on which each of the District Defendants premised their affirmative defenses states,

> (c) In all actions on account of death, bodily injury or physical damage to property in which recovery is predicated upon fault, the ***contributory*** fault chargeable to the

> plaintiff shall be compared with the fault of all tortfeasors whose fault was a proximate cause of the death, injury, loss, or damage for which recovery is sought. The plaintiff shall be barred from recovering damages if the trier of fact finds that the contributory fault on the part of the plaintiff is more than 50% of the proximate cause of the injury or damage for which recovery is sought. The plaintiff shall not be barred from recovering damages if the trier of fact finds that the contributory fault on the part of the plaintiff is not more than 50% of the proximate cause of the injury or damage for which recovery is sought, but any economic or non-economic damages allowed shall be diminished in the proportion to the amount of fault attributable to the plaintiff."

*See* 735 ILCS 5/2-1116(c).

Accordingly, where, as here, there exist genuine disputes as to material facts such that a reasonable jury could find some percentage of contributory fault against Christin and/or Lisa Pearson, Plaintiffs' motions for summary judgment should be denied.

Plaintiffs' motion for summary judgment as to Defendant Primdahl's defense under section 2-204 likewise fails because Defendant Primdahl is entitled to immunity if plaintiff seeks to hold her vicariously liable (even if not explicitly stated as such) for the actions of other District employees, including those whom she supervises.

Plaintiffs have also moved for summary judgment on the District Defendants' affirmative defenses under section 2-103. Conditioned on Plaintiffs' representation in their motion as to certain arguments that they do not intend to make, District Defendants agree to withdraw this defense.

Further, Plaintiffs move for summary judgment as to Green's[1] first affirmative defense, arguing qualified immunity. However, there is no authority that would have put Green on notice

[1] Plaintiffs also move for summary judgment on a number of Green's other affirmative defenses. As for her second affirmative defense (statute of limitations), Green agrees to withdraw. As for her sixth affirmative defense (execution of enforcement of a law), conditioned on plaintiffs' representation that they are not arguing that Green failed to execute or enforce any law, and conditioned on plaintiffs' agreement that they will not attempt to make any such argument at trial, Green agrees to withdraw this affirmative defense. As for her seventh affirmative defense (vicarious liability), conditioned on plaintiffs' representation that they are not arguing that Green can be held or otherwise is vicariously liable for the conduct of others and conditioned on plaintiffs' agreement that they will not attempt to make any such argument at trial, Green agrees to withdraw this affirmative defense. As for her eighth affirmative defense (participation in

that her actions violated clearly established law, particularly because no case has affirmatively ruled that the IDEA allows for individual liability. As such, she is entitled to qualified immunity. Plaintiffs are also not entitled to summary judgment as to Green's fifth affirmative defense (a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused), as this is a fact question for the jury.

For all these reasons, and those stated below, Plaintiffs' motions should be denied.

## <u>LEGAL STANDARD</u>

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, (1986). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the

legislative process), conditioned on plaintiffs' representation that they are not arguing that any injury was caused by Green's adoption of, or failure to adopt, an enactment, or by her failure to enforce any law; and conditioned on plaintiffs' agreement that they will not attempt to make any such argument at trial, Green agrees to withdraw this affirmative defense. As for her ninth affirmative defense (inspection), conditioned on plaintiffs' representation that they are not arguing that Green is liable for an injury caused by her failure to make an inspection, or by reason of making an inadequate or negligent inspection, of any property, other than that of the local public entity employing her, for the purpose of determining whether the property complies with or violates any enactment or contains or constitutes a hazard to health or safety; and conditioned on plaintiffs' agreement that they will not attempt to make any such argument at trial, Green agrees to withdraw this affirmative defense. As for her tenth affirmative defense (negligent misrepresentation or defamation), conditioned on plaintiffs' representation that they are not arguing that Green liable for an injury caused by negligent misrepresentation or the provision of information either orally, in writing, by computer or any other electronic transmission, or in a book or other form of library material; and conditioned on plaintiffs' agreement that they will not attempt to make any such argument at trial, Green agrees to withdraw this affirmative defense. As for her eleventh affirmative defense (school safety patrol), conditioned on plaintiffs' representation that they are not arguing that Green liable for an injury caused by the organization, maintenance or operation of a school safety patrol as authorized by Section 10-22.28 of the School Code; and conditioned on plaintiffs' agreement that they will not attempt to make any such argument at trial, Green agrees to withdraw this affirmative defense. Finally, as for her twelfth affirmative defense (performance of any legislative, quasi-legislative or quasi-judicial function), Green agrees to withdraw.

nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When determining whether a genuine issue of material fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Id.* at 255; *Hackett v. City of South Bend*, 956 F.3d 504, 507 (7th Cir. 2020). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Id.* Here, there are genuine disputes as to the material facts Plaintiffs argue support their motions for summary judgment. Plaintiffs' motions should be denied accordingly.

## ARGUMENT

### I. A Genuine Issue of Material Fact Prevents Entry of Summary Judgment as to Defendants' Contributory Negligence Affirmative Defenses.

As an initial matter, Plaintiffs' motions for summary judgment as to the District Defendants' affirmative defenses of contributory fault do not seem to dispute that Lisa and Christin Pearson owed a duty of care to Corban. Rather, their motions suggest that they should be granted summary judgment because there is no evidence that they ***breached*** their duty to Corban. Illinois law is clear that while the question of whether a duty is owed is a question of law, breach of duty and proximate cause are factual matters for a jury to decide. *Iseberg v. Gross*, 227 Ill.2d 78, 87 (2007).

To support their motions seeking summary judgment on each of the District Defendants' affirmative defenses alleging contributory fault against Lisa and Christin Pearson, Plaintiffs generally make three points:

1. The Pearsons followed all recommendations regarding wheelchair features and opinions based on the advice of NuMotion personnel. Pltfs. Stmt. of Facts ¶¶ 10, 11, 12, 33, 34.

2. The District Defendants have admitted that Christin and Lisa Pearson justifiably relied on the District Defendants to properly transport and care for Corban. Pltfs. Stmt. of Facts ¶ 14.

3. There was a clear duty on the District Defendants to provide safe transport to Corban on August 14, 2019.

Boldly, Plaintiffs' Statement of Facts assert that the Pearsons did not know about anti-tip wheels prior to the August 2019 occurrence. There is abundant evidence to the contrary. As indicated in the District Defendants' Response to Plaintiffs' Statement of Undisputed Facts, Lisa Pearson admitted in her deposition that in October of 2017, she signed a document stating, in relevant part,

> "***NuMotion recommends*** and provides anti-tippers on all wheelchairs. ***Your signature means that you understand and accept responsibility for refusing anti-tippers on your wheelchair….***"

*See* Resp. to Facts ¶¶ 10-14.

In addition, Lisa Pearson admitted that when Corban's Permobil F3 chair was delivered, she probably received an Owner's Manual and remembered reading parts of it while sitting around at the hospital when originally considering what model wheelchair to purchase. *See*, *e.g.*, Resp. To Facts ¶ 11. Included within the Owner's Manual are pages discussing the "anti-tippers" or "support wheels" (or "anti'tippers"), which state, in relevant part,

## Driving Rules

### Support Wheels

Your wheelchair may be fitted with front support wheels to reduce the risk of tipping when driving over obstacles, etc. They must always be fitted when you drive.

**⚠ WARNING!**

If you wheelchair is fitted with support wheels they must remain installed to reduce the risk of the chair tipping forward due to speed or environmental influences. It is important to maneuver/steer the chair at a safe speed to reduce the need for sudden stops that could cause the chair to tip forward. Reference the pages in the manual regarding use of the chair on different angles and slopes. Always be aware of the seat position and how it could affect the stability of the chair on different surfaces even with support wheels.



*Figure 162. Support Wheels*



EXHIBIT # 7
WIT: Roehl
DATE: 3/10/2023
Katie K. Elliott, CSR, RPR

**EXHIBIT 13**



## TECHNICAL SPECIFICATIONS



Base length 40" w/ support wheels 36" w/out
Base height 38"-46"



Base width 24"



Smallest transportation size
Base length 31" (35" w/ support wheels
Base width 24" (up to 31" incl. armrest)
Base height 32.5"



EXHIBIT # 11
WIT: Roehl
DATE: 3/10/2023
Katie K. Elliott, CSR, RPR

**EXHIBIT 13**

User's Manual Permobil F3 Corpus — Restrictions and Limitations

**RESTRICTIONS AND LIMITATIONS**

**Support wheels**

The F3 Corpus wheelchair is available in certain configurations with and without support wheels. The purpose of these wheels is to reduce the risk of tipping forward when travelling at higher speeds. Below is information on weight, speed and stability that will help get the right configuration for the customer.

**NOTE!**
If it is determined that the client will require support wheels, they must remain installed at all times. The proper position for the support wheel is in the top position for user below 200 lbs and in the bottom position for users above 200 lbs.

215
Numotion 001286

EXHIBIT # 12
WIT: Roehl
DATE: 3/10/2023
Katie K. Elliott, CSR, RPR

**EXHIBIT 13**

*See Id.*

Further, David Cignano testified as follows:

> Q: … As you sit here today on May 17, 2023, do you have a recollection of having a discussion with Lisa Pearson on April 7, 2016 regarding front anti-tippers?
>
> A: looking at the documentation [Lisa Pearson deposition Exhibit 1] and knowing the way the way we do evaluations and the way he was doing a stand and pivot transfer, I would say I probably would have but I'm not 100 precent sure….. ***but that's something that's definitely a high possibility that I did talk to her about it***.

*See* Resp. to Facts ¶¶ 10,11, 12. David Cingano also clarified that the decision to select Corban's wheelchair was not solely based on his recommendation, but rather based on "a team effort" or "discussion with the family" with himself and Dr. Shah, where if there were certain things Lisa Pearson wanted on the chair, she would have said so and if there were certain things that she didn't want, Numotion would have taken that into consideration as well. *Id.*; *see also* Resp. to Facts ¶ 33. Notably, when they had this discussion, Corban weighed 80 pounds, and at the time of the incident three years later, he weighed approximately 178 pounds. *Id.* at ¶ 33.

Plaintiffs' purported fact that the Pearsons "reasonably relied" on the District and its agents to properly transport and care for Corban in a safe manner also does not defeat the defense of

contributory negligence. *See* Resp. to Facts ¶ 14. First, this “fact” is not properly supported by the record. Specifically, Pam Karnick’s Answer to Plaintiffs’ Complaint did ***not*** admit this allegation insofar as she did not have the requisite knowledge to opine on the state of mind of Lisa and Christin Corban. *Id.* Even if all Defendants agreed with this allegation, it is irrelevant to whether Lisa and Christin Pearson bear any comparative fault for causing Corban’s alleged injuries.

Further, the Defendant’s ability to safely transport a student can be affected by the information disclosed or not disclosed by the student’s family. For example, and as additional evidence in support of the affirmative defense, when Corban boarded the bus on the first day of school, Lisa Pearson did not share with Karnick or Green that Corban already had two injured and unhealed fractured femurs, which were from an incident at home in August 2018. Stmt. of Add’l Facts ¶¶ 7,8. It was not until after the subject incident in this case that Lisa Pearson reported this information to the emergency responders. *Id.* at ¶ 7.

What Lisa Pearson did tell Karnick that morning was that Corban was independent and liked to do things on his own, and he was in charge of operating his wheelchair. *Id* at ¶ 15. Lisa Pearson claimed she had prior conversations with Corban about turning off his wheelchair before being transported. *Id.* Just prior to the wheelchair tipping over that afternoon, unbeknownst to Karnick, Corban used the joystick to move his chair forward. *Id.* at ¶ 23.

Moreover, Plaintiffs’ argument that there was a clear duty on the part of the District Defendants and that these Defendants did not provide safe transport to Corban is irrelevant to the analysis of whether Lisa and Christin Corban are entitled to summary judgment in their favor. Indeed, the underlying premise of 735 ILCS 5/2-1116(c) is that a jury can contemplate Plaintiffs’ percentage of fault ***in conjunction with*** the proven percentage of fault of all other tortfeasors.

To obtain summary judgment on this defense, plaintiffs must show that no reasonable jury could find that Plaintiffs were even as low as one percent contributorily negligent, which they have not come close to showing here. Disputed evidence and issues of material fact preclude this Court from granting Plaintiffs' motions for summary judgment as to the affirmative defenses of Lisa and/or Christin Pearson's contributory fault.

## II. Defendants Agree to Withdraw Their Affirmative Defense under Section 2-103 of the Tort Immunity Act.

The District Defendants asserted an affirmative defense arising from immunity under section 2-103 of the Local Governmental and Governmental Employees Tort Immunity Act, which states, "A local public entity is not liable for an injury caused by adopting or failing to adopt an enactment or by failing to enforce any law." 745 ILCS 10/2-103. In their motions for summary judgment, Plaintiffs argue they are not contending that the District Defendants failed to adopt or enact law, but that they violated existing law. Based on that representation, the District Defendants agree to withdraw their defense under section 2-103, with leave to reinstate it should Plaintiffs attempt to make any argument at trial that is contrary to their representation.

## III. Plaintiffs Fail to Show Summary Judgment Should be Entered on Defendant Primdahl's Affirmative Defense under Section 2-204 of the Tort Immunity Act.

Defendant Primdahl asserts an affirmative defense arising from immunity under section 2-204 of the Local Governmental and Governmental Employees Tort Immunity Act, which states, "[e]xcept as otherwise provided by statute, a public employee, as such and acting within the scope of his employment, is not liable for an injury caused by the act or omission of another person." 745 ILCS 10/2–204 (West 2010). Contrary to Plaintiffs' argument in their motion for summary judgment (Dkt. 196, at 7-9), this provision does not relate to the alleged contributory negligence of the Plaintiffs, but, instead, protects Primdahl from any attempt to hold her vicariously liable for

the actions of employees under her supervision. Section 2–204 provides immunity from vicarious liability claims. *See*, *e.g.*, *Payne for Hicks v. Churchich*, 161 F.3d 1030 (7th Cir.1998) (holding that a sheriff could not be vicariously liable for the conduct of a deputy under section 2–204); *Clark v. City of Chicago*, 595 F.Supp. 482 (N.D.Ill.1984) (holding that supervisors named only on respondeat superior grounds were immunized from liability under section 2–204); *see also Toney v. Mazariegos*, 166 Ill.App.3d 399, 404, 116 Ill.Dec. 820, 519 N.E.2d 1035 (1988) (noting, in dicta, that section 2–204 "has been construed as being intended to bar liability based on *respondeat superior*"). Plaintiffs, therefore, cannot seek to hold Primdahl liable solely on account of her position as a supervisor, but must show that she in fact engaged in willful and wanton conduct herself. Plaintiffs have not come forth with any evidence that Primdahl, herself, engaged in willful and wanton conduct, and they fail to show that Primdahl is not entitled to rely on the protections of section 2-204.

**IV. Defendant Green Is Entitled to Qualified Immunity As to the IDEA.**

Plaintiffs claim that the doctrine of qualified immunity does not apply to Defendant Green; however, as more fully discussed and adopted herein in her own motion for summary judgment (and her forthcoming reply brief), state actors such as Green are entitled to qualified immunity unless (1) the facts, taken in a light most favorable to a plaintiff, show that a defendant violated a constitutional right, and (2) the constitutional right was clearly established at the time of the alleged violation. *Khuans v. School* Dist. 110, 123 F.3d 1010, 1013 (7th Cir. 1997) (awarding qualified immunity to a school employee). A right is clearly established when "at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood what [she] is doing violates that right." *Levin v. Madigan*, 692 F.3d 607, 622 (7th Cir. 2012). (cleaned up). Existing precedent "must have placed the statutory or constitutional question beyond debate." *Kemp v. Liebel*, 877 F.3d 346, 351 (7th Cir. 2017). Here, as noted in her summary

judgment motion, Green has neither violated a constitutional right nor violated a constitutional right that was clearly established on August 14, 2019. There is no authority that would have put Green on notice that her actions violated clearly established law, particularly because no case has affirmatively ruled that the IDEA allows for individual liability. In fact, although the Seventh Circuit in *Stanek v. St. Charles Cmty. Unit Sch. Dist. #303*, 783 F.3d 634, 644 (7th Cir. 2015) allowed an IDEA claim against the individual defendants to move forward, it specifically declined to offer an opinion on whether the IDEA authorizes individual liability. It specifically stated: "[w]e offer no opinion on the issue now, because it is relatively undeveloped." *Id.*

However, since *Stanek* was decided in 2015, "courts across the country have since held that the IDEA does not provide for individual liability." *C.B. v. Bd. of Educ.*, No. 20-cv-00586, 2022 U.S. Dist. LEXIS 153974, at *19 (N.D. Ill. Aug. 26, 2022).[2] Moreover, "the IDEA is devoid of any textual support of individual liability." *Id.* "For instance, the IDEA authorizes reimbursement of educational expenses 'only against the agency, not against any of its officials.'" *Id.* (citing *Diaz-Fonseca v. Puerto Rico*, 451 F.3d 13, 35 (1st Cir. 2006) (citing 20 U.S.C. § 1412(a)(10)(C)(ii))." "That only the public agency is liable for reimbursement follows naturally

[2] *See, e.g., Hernandez v. Grisham*, 508 F. Supp. 3d 893, 1009-10 (D.N.M. 2020); *Patrick v. Success Acad. Charter Sch., Inc.*, 354 F. Supp. 3d 185, 206 n.18 (E.D.N.Y. 2018); *Killoran on behalf of Killoran v. Westhampton Beach Sch. Dist.*, 2022 U.S. Dist. LEXIS 52169, 2022 WL 866816, at *6 n.8 (E.D.N.Y. Mar. 22, 2022), cert. denied, 2022 U.S. Dist. LEXIS 83481, 2022 WL 1451384 (E.D.N.Y. May 9, 2022); *A. A. P. v. Sierra Plumas Joint Unified Sch. Dist.*, 2021 U.S. Dist. LEXIS 41979, 2021 WL 847812, at *8 (E.D. Cal. Mar. 5, 2021); *A.K. v. Westhampton Beach Sch. Dist.*, 2019 U.S. Dist. LEXIS 167085, 2019 WL 4736969, at *13 (E.D.N.Y. Sept. 27, 2019); *Driessen v. Univ. of Miami Sch. of L. Child. & Youth L. Clinic*, 2019 U.S. Dist. LEXIS 164475, 2019 WL 8895219, at *1 (S.D. Fla. Sept. 24, 2019); *Mueller v. Henrico Cnty. Sch. Bd.*, 2019 U.S. Dist. LEXIS 139315, 2019 WL 3860199, at *4 (E.D. Va. Aug. 16, 2019); *Rutherford v. Fla. Union Free Sch. Dist.*, 2019 U.S. Dist. LEXIS 55971, 2019 WL 1437823, at *41 (S.D.N.Y. Mar. 29, 2019); *D.W. by & through Williams v. Chesterfield Cnty. Sch.*, 2019 U.S. Dist. LEXIS 139315, 2018 WL 3098121, at *8 n.8 (E.D. Va. June 5, 2018), report and recommendation adopted, 2018 U.S. Dist. LEXIS 105158, 2018 WL 3097017 (E.D. Va. June 22, 2018); *Crofts v. Issaquah Sch. Dist.*, 2018 U.S. Dist. LEXIS 52174, 2018 WL 1517671 (W.D. Wash. Mar. 28, 2018); *Henry v. Lane*, 2017 U.S. Dist. LEXIS 59109, 2017 WL 1383356, at *6 (W.D. Pa. Apr. 18, 2017).

from the fact that Congress assigned to the agency the ultimate responsibility for ensuring FAPE." *Id.*

The IDEA's definitions of "local educational agency" and "educational service agency" provide further clarity on the issue, as "the IDEA tasks those entities with providing each eligible child with a FAPE, and neither definition—either explicitly or implicitly—refers to individuals." *Id.* (citing 20 U.S.C. § 1401(5), 1401(19)). In addition, "Section 1415 of the IDEA, which enables dissatisfied students or parents to participate in an administrative hearing and judicial process explicitly applies to '[a]ny State educational agency, State agency, or local educational agency that receives assistance under this subchapter.'" *Id.* (citing 20 U.S.C. § § 1415(a)).

Plaintiffs' motion should be denied, and summary judgment should be entered on Plaintiffs' IDEA claim.

## V. Plaintiff Is Not Entitled to Summary Judgment as to Green's Fifth Affirmative Defense (Section 2-201 of the ITIA).

Finally, Plaintiffs incorrectly claim in their motion that the record is devoid of any evidence to support that at the time of the occurrence Green was both determining policy and exercising her discretion of said policy. For example, in *Harinek*, the Illinois Supreme Court held that the Fire Marshal for the defendant city determined policy and exercised discretion when he decided how to direct a fire drill. *Harinek v. 161 N. Clark St. Ltd. P'ship*, 181 Ill. 2d 335, 341-43 (Ill. 1998) (abrogated on other grounds). Just as the fire marshal, Green had to balance competing interests and make judgment calls when driving the bus on the subject date. Even so, this is a question of fact that should be resolved by the trier of fact. As a result, Plaintiffs' motion should be denied.

## CONCLUSION

For all the above reasons, Plaintiffs' motions for summary judgment as to the above affirmative defenses should be denied.

Respectfully submitted,

**Community Unit School District 300**
**Board of Education and Terry Primdahl**

By: */s/ Richard Capra*

Charles A. LeMoine
Richard Capra
TRESSLER LLP
233 South Wacker Drive, 61st Floor
Chicago, Illinois 60606-6399
Telephone: (312) 627-4000
clemoine@tresslerllp.com
rcapra@tresslerllp.com
***Attorneys for Community Unit School District 300 Board of Education and Terry Primdahl***

**Pamela Karnick**

By: */s/ Margaret Firnstein Gebhardt*

Margaret Firnstein Gebhardt (#6269742)
Amundsen Davis LLC
150 N. Michigan Ave., Suite 3300
Chicago, IL 60601
312.894.3200
mfirnstein@amundsendavislaw.com
***Attorneys for Pamela Karnick***

**Antoinette Green**

By: */s/ Vincent M. Rizzo*

Vincent M. Rizzo
Hinshaw & Culbertson LLP
150 N. Franklin Street, Suite 2500
Chicago, IL 60606
312.704.3234
VRizzo@hinshawlaw.com
***Attorneys for Antoinette Green***

## CERTIFICATE OF SERVICE

I hereby certify that on March 4, 2025, I electronically filed the foregoing**, DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTIONS FOR SUMMARY JUDGMENT**, with the Clerk of the Court using the ECF system, which sent electronic notification of the filing on the same day and was served upon all counsel of record via the Court's CM/ECF system.

*/s/ Richard Capra*