**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CHRISTIN P. PEARSON, individually and as Guardian of the Estate of CORBAN PEARSON; and LISA A. PEARSON, individually and as co-Guardian of the Estate of CORBAN PEARSON, | ) | |
| Plaintiffs, | ) | |
| v. | ) | CASE NO. 1:20-CV-05096 |
| | ) | Honorable John Robert Blakey |
| COMMUNITY UNIT SCHOOL DISTRICT 303, ANTOINETTE L. GREEN, PAM KARNICK, TERRY PRIMDAHL, and United Seating and Mobility, L.L.C., a Missouri limited liability company, d/b/a NUMOTION | ) | |
| Defendants. | ) | |
| COMMUNITY UNIT SCHOOL DISTRICT 303 and TERRY PRIMDAHL, | ) | |
| Third-Party Plaintiffs, | ) | |
| v. | ) | |
| United Seating and Mobility, L.L.C., a Missouri limited liability company, d/b/a NUMOTION, | ) | |
| Third-Party Defendant | ) | |

**PLAINTIFFS' RESPONSE TO COMMUNITY UNIT SCHOOL DISTRICT 303 DEFENDANTS' JOINT MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS


INTRODUCTION ........................................................................................................ 1

THE DISTRICT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT IGNORES INCONVENIENT EVIDENCE.......................................................................................... 1

LEGAL STANDARD.................................................................................................. 2

ARGUMENT ............................................................................................................. 3

I. Count I Is Not Barred By Tort Immunity. ............................................................. 3

a. Defendants Forfeited Their Defenses By Failing To Raise Them In Their Answer To Plaintiffs' Complaint.......................................................................... 3

b. Plaintiffs' Negligence Allegations Are Not Barred By Section 24-24 of the Illinois School Code. ................................................................................... 5

i. Even If Section 24-24 Applied, Defendants' Conduct Is Willful and Wanton. 7

c. Section 2-201 Does Not Immunize District 303 and Primdahl from Plaintiffs' Negligence Action. ................................................................................ 8

d. Section 3-108(a) Does Not Immunize District 303 and Primdahl from Plaintiffs' Negligence Action. ................................................................................ 10

i. Even if Section 3-108 applies, there is evidence of Primdahl's willful and wanton conduct with respect to supervision. ............................................. 11

II. Plaintiffs' Willful and Wanton Count II Is Not Barred by Discretionary Tort Immunity and Has Sufficient Evidence to Support it. ................................................ 12

a. Discretionary Immunity Does Not Bar Willful and Wanton Claims Against Defendant District 303 and Defendant Terry Primdahl.............................................. 12

b. Sufficient Evidence Has Been Provided to Support a Willful and Wanton Claim Against District Defendants. .................................................................... 14

III. Summary Judgment Should Not Be Entered As to Plaintiffs' IDEA Claim. ................ 17

a. Defendants' Qualified Immunity Argument As To the IDEA Claim Fails. ............... 17

IV. The ADA and Rehabilitation Act Claims Under Counts IV and V Are Viable and Supported by the Facts in the Record. .......................................................... 18

a. The Facts Establish that Corban was constructively denied the benefits of CUSD 303's Bus Transportation Services. ........................................................ 19

b. The Facts Establish That Corban was denied the benefits of CUSD 303's Bus Transportation Services Because of His Disability. ................................................ 19

c. The Facts Establish Deliberate Indifference. .......................................................... 20

i. Defendants' Failure To Train Argument Fails............................................... 21

V. Motion For Summary Judgment Is Not Warranted For Family Expense Act Claim In Count III. .......... 24

VI. As Defendants Removed This Case To Federal Court, This Court Should Exercise Jurisdiction Over Any Remaining Claims. .......... 24

CONCLUSION .......... 24

# TABLE OF AUTHORITIES

Cases

*Board of Education of School District U-46 v. Illinois Educational Labor Relations Board,* 576 N.E.2d 471 (Ill. App. Ct. 4th Dist. 1991) .... 6

*Brad K. v. Bd. of Educ.*, 787 F. Supp. 2d 734 (N.D. Ill. 2011) .... 19

*C.B. v. Bd. of Educ.*, 624 F. Supp. 3d 898 (N.D. Ill. 2022) .... 17

*Callaway v. Kinkelaar*, 659 N.E.2d 1322 (Ill. 1995) .... 14

*Campbell v. Kallas*, 936 F.3d 536 (7th Cir. 2019) .... 20

*Carter v. City of Chi.*, 520 F. Supp. 3d 1024 (N.D. Ill. 2021) .... 18

*Charlie F. v. Bd. of Educ. of Skokie School Dist. 68*, 98 F.3d 989 (7th Cir. 1996) .... 17

*City of Canton v. Harris*, 489 U.S. 378 (1989) .... 22

*Clemons v. Dart*, 168 F. Supp. 3d 1060 (N.D. Ill. 2016) .... 20

*Courson v. Danville Sch. Dist.*, 775 N.E.2d 1022 (Ill. App. Ct. 4th Dist. 2002) .... 8

*Doe v. Bd. of Educ.*, 611 F. Supp. 3d 516 (N.D. Ill. 2020) .... 20

*Doe v. Chi. Bd. of Educ.*, 791 N.E.2d 1283 (Ill. App. Ct. 1st Dist. 2003) .... 10

*Flores v. Palmer Marketing* .... 10

*Flores v. Palmer Mktg.*, 836 N.E.2d 792 (Ill. App. Ct. 1st Dist. 2005) .... 10

*Foley v. City of Lafayette*, 359 F.3d 925, (7th Cir. 2004) .... 2, 21

*Gerrity v. Beatty*,
373 N.E.2d 1323 (Ill. 1978) ........ 6

*Green v. Carlinville Cmty. Unit Sch. Dist. No. 1*,
887 N.E.2d 451 (Ill. App. Ct. 4th Dist. 2008) ........ 11

*Harinek v. 161 V. Clark St. Ltd. Pshp.*,
692 N.E.2d 1177 (Ill. 1998). ........ 13

*Harlow v. Fitzgerald*,
457 U.S. 800 (1982) ........ 17

*Illinois v. Davis,*
410 N.E.2d 673 (Ill. App. Ct. 2d Dist. 1980) ........ 5

*Jackson v. Chi. Bd. of Educ.*,
549 N.E.2d 829 (Ill. App. Ct. 1st Dist. 1989) ........ 6

*Kuhner v. Highland Cmty. Unit Sch. Dist. No. 5*,
2015 U.S. Dist. LEXIS 130170, *6 (S.D. Ill. Sep. 28, 2015) ........ 17

*Lacy v. Cook Cty.*,
897 F.3d 847 (7th Cir. 2018) ........ 18, 20, 21

*Lockett v. Board of Educ. for School Dist. No. 189*,
555 N.E.2d 1055 (Ill. App. Ct. 5th Dist. 1990) ........ 6

*Nielsen v. Community Unit School Dist.*,
412 N.E.2d 1177 (Ill. App. Ct. 4th Dist. 1980) ........ 5

*Pomrehn v. Crete-Monee High School Dist.*,
427 N.E.2d 1387 (Ill. App. Ct. 3d Dist. 1981) ........ 14

*Reed v. Columbia St. Mary's Hosp.*,
915 F. 3d 473 (7th Cir. 2019) ........ 3, 4

*Reyes v. Bd. of Educ.*,
139 N.E.3d 123 (Ill. App. Ct. 1st Dist. 2019) ........ 4, 8

*Richardson v. Bonds*,
1987 U.S. Dist. LEXIS 10515 at *8 ........ 17

*Rogers v. Cook*,
2008 U.S. Dist. LEXIS 103702, *13 (N.D. Ill. 2008) ........ 10

*Rosales v. Unifund CCR*,
2008 U.S. Dist. LEXIS 98464, * 8 (N.D. Ill. 2008) ........ 24

*S.J. v. Perspectives Charter Sch.*,
685 F. Supp. 2d 847 (N.D. Ill. 2010). ..... 22

*Shaw v. Kemper*,
52 F.4th 331 (7th Cir. 2022) ..... 19

*Sidwell v. Griggsville Community Unit School Dist. No. 4*,
588 N.E. 2d 1185 (Ill. 1992) ..... 6

*Thomas v. Garner*,
672 N.E.2d 52 (Ill. App. Ct. 5th Dist. 1996) ..... 6

*Timm v. Mead Corp.*,
32 F.3d 273 (7th Cir. 1994) ..... 24

*Trivedi v. Wells Fargo Bank, N.A.*,
609 F. Supp. 3d 628 (N.D. Ill. 2022) ..... 11

*Trotter v. School Dist. 218*,
733 N.E.2d 363 (Ill. App. Ct. 1st Dist. 2000) ..... 8, 9, 11

*Venters v. City of Delphi*,
123 F. 3d 956 (7th Cir. 1997) ..... 3

*Ward v. Community Unit Sch. Dist. No. 220*,
614 N.E.2d 102 (Ill. App. Ct. 4th Dist. 2009) ..... 6

*Westmoreland v. Dart*,
2023 U.S. Dist. LEXIS 193196 at *18. (N.D. Ill. October 27, 2023) ..... 21

*Young v. Forgas*,
720 N.E.2d 360 (Ill. App. Ct. 4th Dist. 1999) ..... 14

*Ziarko v. Soo Line R.R. Co.*,
641 N.E.2d 402 (Ill. 1994) ..... 14

<u>Other Authorities</u>

105 ILCS 5/24-24 ..... 3, 5, 7, 9

23 Ill. Adm. Code 226.750 ..... 11

745 ILCS 10/2-201 ..... passim

745 ILCS 10/3-108(a) ..... passim

Americans with Disabilities Act,
42 U.S.C. § 12131 *et seq.* ..... passim

Section 504 of the Rehabilitation Act, 29,
U.S.C. § 701 *et seq.* .......... passim

NOW COME Plaintiffs, Christin P. Pearson, individually and as Guardian of the Estate of Corban Pearson and Lisa A. Pearson, individually and as co-Guardian of the Estate of Corban Pearson, and for their Response to Community Unit School District 303 Defendants' ("District Defendants" or "Defendants") Joint Motion for Summary Judgment, states as follows:

## INTRODUCTION

The District Defendants' Motion for Summary Judgment simply overlooks or ignores pertinent facts to argue that they are entitled to either immunity or summary judgment. The facts are that in this case, ample evidence has been proffered to demonstrate that the District Defendants acted both negligently and with willful and wanton disregard for their duties and obligations under state and federal law to provide Corban Pearson with safe transport to and from school. The District Defendants have sought to minimize the facts of the occurrence and their response to the occurrence. The evidence in this matter, most notably the audio and video of the occurrence, clearly demonstrates that Corban Pearson was treated with utter disregard by the District Defendants.

Sufficient evidence has been proffered to support Plaintiffs' allegations of negligence and willful and wanton conduct. In addition, the District Defendants attempt to invoke certain immunities for the first time as this stage of litigation, which is improper. The statutory claims filed by Plaintiffs are valid and sufficient evidence exists to create a question of fact regarding the violation of said statutes. For these reasons, as fully developed below, the District Defendants' Motion for Summary Judgment should be denied in full.

## THE DISTRICT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT IGNORES INCONVENIENT EVIDENCE

In reviewing the District Defendants' Motion for Summary Judgment, it would be easy to infer that Plaintiffs had not proffered any expert testimony regarding the duties owed by the

District while transporting students. In fact, Plaintiffs disclosed Timothy Schoolmaster who provided a report and deposition testimony on this issue.

Mr. Schoolmaster opined to the following relevant facts and standards. First, Mr. Schoolmaster testified that the school district failed to properly train its employees for a variety of reasons. Specifically, Green claimed that she had never been trained in transporting special needs students, that the most recent ride-along observation form from April 5, 2016 has the lines for special education crossed out, that the ride-along observation on August 17, 2013 has special education crossed out and "NA" written over the lines, and that the ride-along observation from 2011 is also crossed out and marked "NA." (SOF, ¶ 15). In addition, Mr. Schoolmaster testified that the one-page pre-ride checklist for the transporting of special needs students was insufficient to accomplish the safe transportation goal of special needs students. (SOF, ¶ 16). Moreover, Mr. Schoolmaster testified that there is no evidence that the District followed all industry standards of training. (SOF, ¶ 17). The District Defendants did not offer any expert testimony in rebuttal of that offered by Mr. Schoolmaster, and thus his testimony and opinions remain uncontested.

## **LEGAL STANDARD**

"Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is **no** genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."" *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004) (emphasis added). The court must construe the facts and draw all reasonable inference in the light most favorable to the nonmoving party. *Id.*

# ARGUMENT

## I. Count I Is Not Barred By Tort Immunity.

### a. Defendants Forfeited Their Defenses By Failing To Raise Them In Their Answer To Plaintiffs' Complaint.

Defendants attempt to raise the immunity defenses under Illinois School Code Section 24-24 and Sections 2-201[1] and 3-108 of the Tort Immunity Act for the first time through their Motion for Summary Judgment. This is improper and the Court should deny Defendants' Motion with respect to the negligence count for this reason. "A defendant's failure to plead an affirmative defense may result in a waiver of the defense if the defendant has relinquished it knowingly and intelligently, or forfeiture if the defendant merely failed to preserve the defense by pleading it." *Reed v. Columbia St. Mary's Hosp.*, 915 F. 3d 473, 478 (7th Cir. 2019). The purpose of Rule 8(c) "is to avoid surprise and undue prejudice to the plaintiff by providing her notice and the opportunity to demonstrate why the defense should not prevail." *Venters v. City of Delphi*, 123 F. 3d 956, 967 (7th Cir. 1997) (Defendants waived their statute of limitations defense after they did not include that defense in their answers and first mentioned it in their reply memorandum in support of their motion for summary judgment). "Once the availability of an affirmative defense is reasonably apparent, the defendant must alert the parties and the court to his intent to pursue that defense. "A defendant should not be permitted to 'lie behind a log' and ambush a plaintiff with an unexpected defense."" *Id.* at 968 (internal citation omitted). In Illinois, "[g]overnmental tort immunity under the Act must be raised and pled as an affirmative defense or it is forfeited, even if

---

[1] The exception is with respect to Defendant Green, as she attempted to raise a defense under Section 2-201 in her Affirmative Defenses. Plaintiffs attacked this defense through their Motion for Summary Judgment, which is currently being briefed.

the evidence supports the existence or appropriateness of the defense." *Reyes v. Bd. of Educ.*, 139 N.E.3d 123, 139-40 (Ill. App. Ct. 1st Dist. 2019).

In *Reed v. Columbia St. Mary's Hosp.*, the Seventh Circuit, in pertinent part, reversed the district court's grant of the defendant's motion for summary judgment as the defendant raised its religious exemption affirmative defense to the plaintiff's ADA claims for the first time in its motion for summary judgment. *Reed*, 915 F.3d at 475. The court, in coming to its decision, explained that the defendant offered no excuse or explanation for failing to plead the defense so late (and that in doing so, invocation of the defense "looks like a straight ambush of the plaintiff"), that the exemption defense should not ordinarily depend on discovery ordinarily depends on facts within the knowledge and control of the defendant itself, that the defendant did not deploy the defense until after discovery closed, and that plaintiff was not actually put on fair notice that the defendant would assert the defense, which resulted in prejudice. *Id.* at 482-483.

The reasoning and holding from *Reed***Error! Bookmark not defined.** apply directly to this case. It is clear that Defendants knew that they could raise immunity defenses in their answer to Plaintiffs' complaint, as they do attempt to raise certain ones. However, Defendants did not raise in their affirmative defenses (or even mention in the entire course of this litigation) the immunities afforded under Sections 24-24, 2-201, and 3-108. With the exception of Defendant Green raising section 2-201 as an affirmative defense, Defendants raising these defenses for the first time in their Motion for Summary Judgment, after discovery has closed, greatly prejudices Plaintiffs. It is clear that by doing so, invoking these defenses at summary judgment serves to "ambush" Plaintiffs.

### b. Plaintiffs' Negligence Allegations Are Not Barred By Section 24-24 of the Illinois School Code.

Even if the Court does not deny Defendants' Motion for Summary Judgment for Defendants' failure to raise these defenses in a timely fashion, Defendants' argument that Count I is barred by Section 24-24 of the Illinois School Code fails. Section 24-24 states:

> Subject to the limitations of all policies established or adopted under Section 14-8.05 [105 ILCS 5/14-8.05], teachers, other licensed educational employees, and any other person, whether or not a licensed employee, providing a related service for or with respect to a student shall maintain discipline in the schools, including school grounds which are owned or leased by the board and used for school purposes and activities. In all matters relating to the discipline in and conduct of the schools and the school children, they stand in the relation of parents and guardians to the pupils. This relationship shall extend to all activities connected with the school program, including all athletic and extracurricular programs, and may be exercised at any time for the safety and supervision of the pupils in the absence of their parents or guardians. 105 ILCS 5/24-24.

Section 24-24 confers upon educators the status of a parent or guardian to students, and the status extends to disciplinary and non-disciplinary matters. *Nielsen v. Community Unit School Dist.*, 412 N.E.2d 1177, 1178 (Ill. App. Ct. 4th Dist. 1980). "[I]n suits against educators involving improper supervision, to impose liability a plaintiff must prove willful and wanton misconduct." *Id.* (Stating that the Supreme Court has distinguished the separate function of providing equipment from that of supervision and control of the students and a school district is held to a duty of ordinary care in providing equipment for its students and thus may be held liable in ordinary negligence).

However, Illinois Courts have held that school bus drivers are required to transport children safely and that this duty is not unique to defendant's public employment but is independent of that employment. "School bus drivers are required to transport children safely between the school and home[.]" *Illinois v. Davis,* 410 N.E.2d 673, 676 (Ill. App. Ct. 2d Dist. 1980). As a general rule, bus drivers, whether they are employed by the State, a local school district, a private school, or a private company, are under a duty to operate their buses "in a safe and reasonable manner to protect the

safety of the children on the bus as well as the general public on the road." *Board of Education of School District U-46 v. Illinois Educational Labor Relations Board,* 576 N.E.2d 471, 479-80 (Ill. App. Ct. 4th Dist. 1991); *Thomas v. Garner*, 672 N.E.2d 52, 55 (Ill. App. Ct. 5th Dist. 1996). As a result, it has been held that *in loco parentis* protection for discipline afforded teachers does not apply to school bus drivers. *Lockett v. Board of Educ. for School Dist. No. 189*, 555 N.E.2d 1055, 1058 (Ill. App. Ct. 5th Dist. 1990).

Furthermore, this Section clearly does not apply to CUSD 303. The Illinois Supreme Court has stated that section 24-24 provides immunity to teachers and other certificated educational employees and not to school districts. *Sidwell v. Griggsville Community Unit School Dist. No. 4*, 588 N.E. 2d 1185, 1188 (Ill. 1992). Moreover, "[a]lthough school districts may vicariously benefit from [Section 24-24] immunity, our supreme court has explained that when a "complaint alleges the independent negligence of the school district rather than liability through the acts of a teacher, the defendant school district is not entitled to vicarious immunity." *Ward v. Community Unit Sch. Dist. No. 220*, 614 N.E.2d 102, 105 (Ill. App. Ct. 4th Dist. 2009). Here, Plaintiffs allege that District 303 itself, **and** through its agents and employees, breached the duty of care owed to Plaintiffs. Thus, the Third Amended Complaint clearly alleges independent negligence of CUSD 303 and thus, CUSD cannot claim total vicarious immunity through Green, Karnick, and Primdahl.

Moreover, the negligent conduct alleged involves conduct separate from the teacher-student relationship. In *Jackson v. Chicago Board of Education*, the court cited to the case *Gerrity v. Beatty*, which stated that "the immunity extends only to matters arising out of the 'teacher-student relationship in matters relating to the teacher's personal supervision and control of the conduct or physical movement of a student.'" *Jackson v. Chi. Bd. of Educ.*, 549 N.E.2d 829, 831-32 (Ill. App. Ct. 1st Dist. 1989); quoting *Gerrity v. Beatty*, 373 N.E.2d 1323, 1326 (Ill. 1978).

Here, that does not apply. Plaintiffs allege, in part, that Green and Karnick failed to properly fasten the wheelchair restraints, failed to perform a safety check, failed to properly lock Corban's wheelchair into the securement equipment, failed to operate the school bus safely (as to Green), failed to perform a pre-trip inspection (as to Green), failed to render assistance to Corban, failed to promptly request emergency assistance and provide information to paramedics and responders, failed to immediately notify Corban's parents of the accident, failed to properly follow the training and instruction they should have been given, and failed to properly care for Corban. (Doc. 182, ¶ 46). Plaintiffs allege that Primdahl failed to adequately instruct and supervise personnel, failed to properly oversee pupil transportation operations, failed to ensure that bus transport personnel exhibited proficiency in the safe operation of a school bus, failed to provide bus operators with student emergency contact information, failed to properly maintain the bus in a safe operating condition through a systematic preventative maintenance program in violation of the Illinois School Code and National Highway Traffic Safety Administration, failed to enforce a preventative maintenance program, and failed to ensure bus transport personnel complied with laws, regulations, and policies. (Doc. 182, ¶ 46). These failures do not have to do with the "supervision and control of the conduct or physical movement of a student." These allegations surround the failures of Green, Karnick, and Primdahl, which led to Corban's injuries.

**i. Even If Section 24-24 Applied, Defendants' Conduct Is Willful and Wanton.**

Further, even if it is determined that Section 24-24 applies to the facts of this case, the record demonstrates that Defendants' conduct was willful and wanton, or, at the minimum, a question of fact as to whether Defendants' conduct was willful and wanton. The facts and evidence supporting a finding of willful and wanton conduct are fully set forth in section II, below.

### c. Section 2-201 Does Not Immunize District 303 and Primdahl from Plaintiffs' Negligence Action.

Primdahl and CUSD 303 are not immune from liability through Section 2-201 as Plaintiffs' allegations do not attack the discretion or determinations of policies of Primdahl and CUSD 303 but allege that they entirely failed to undertake their legal obligations in the training and supervision of personnel, maintenance of the school bus, enforcement of preventative maintenance programs, and failure to oversee transportation operations. Section 2-201 provides:

> Except as otherwise provided by Statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused. 745 ILCS 10/2-201.

"Discretion "connotes a conscious decision." *Reyes v. Bd. of Educ.*, 139 N.E.3d 123, 140 (Ill. App. Ct. 1st Dist. 2019) (stating that, as an example, a public entity claiming immunity for an alleged failure to repair a defective condition must present sufficient evidence that it made a conscious decision not to perform the repair, and that the failure to do so is fatal to the claim). Not every action taken by a public employee is immunized by the Act. *Courson v. Danville Sch. Dist.*, 775 N.E.2d 1022, 1023 (Ill. App. Ct. 4th Dist. 2002). Particularly, 2-201 does not provide immunity if the acts are ministerial in nature. *Trotter v. School Dist. 218*, 733 N.E.2d 363, 373 (Ill. App. Ct. 1st Dist. 2000). "Ministerial acts are those that a person performs on a given state of facts, in a prescribed manner, in obedience to legal authority, and without reference to the official's discretion as to the propriety of the act." *Id.*

The case *Trotter v. School District 218*, which Defendants cite to in an attempt to support their argument regarding supervisory immunity, actually supports that Section 2-201 does not apply to the undisputed facts of this case. In *Trotter*, the plaintiff brought a wrongful death action against School District 218 and Dale Janssen following the drowning of his son during freshman swimming class. *Id.* at 366. The plaintiff alleged, in part, that the injury was the result of failure

"'…to provide adequately trained instructors and/or other individuals with such degree and skill necessary to respond to emergency situations.'" *Id.* at 375. The court stated, in holding that the District was not entitled to immunity under section 2-201 as to the allegations, that "while the defendants exercised discretion in the selection of Janssen for conducting the Swim I freshman class, once District 218 began to carry out that class, its acts were ministerial and it was required to see that Janssen conducted that class in a reasonably safe and skillful manner" because the swim class and swimming pool are regulated by law. *Id.*

The reasoning from *Trotter* is directly applicable to this case. Plaintiffs are alleging that CUSD 303 and Primdahl breached their duty of care by violating various laws, regulations and policies – which are acts of a ministerial nature. For example, Plaintiffs allege that CUSD 303 and Primdahl "failed to properly train bus transport personnel with experiences that would enable them to understand and appropriately relate to children with disabilities, in violation of 23 Ill. Adm. Code 226.750." Pursuant to the Code, "[p]ersonnel responsible for special transportation **shall be given training experiences** which will enable them to understand and appropriately relate to children with disabilities." 23 Ill. Adm. Code 226.750 (emphasis added). Here, the record is clear, or there is at least a minimum of a question of fact, that Green was given **zero** training by CUSD 303 or Primdahl on how to secure a wheelchair on the school bus. (SOF, ¶ 1). This is not an exercise of discretion or an act of determining policy and is plainly a pure failure in direct in direct violation of the law. Moreover, while the hiring of bus transport personnel may be considered discretionary in nature, once the personnel is hired ensuring that such personnel exhibit proficiency in the safe operation of a school bus and their compliance with laws, regulations and policies are ministerial in nature. The record is devoid of any evidence to support that at the time of the

occurrence Defendants were both determining policy and exercising their discretion of said policy. Therefore, Section 2-201 does not apply and does not grant Defendants immunity.

**d. Section 3-108(a) Does Not Immunize District 303 and Primdahl from Plaintiffs' Negligence Action.**

CUSD 303 and Primdahl are not entitled to immunity under Section 3-108. First, Plaintiffs' allegations do not fall under the umbrella of covered conduct under the statute. Section 3-108 provides:

> Except as otherwise provided in this Act, neither a local public entity nor a public employee who undertakes to supervise an activity on or the use of any public property is liable for an injury unless the local public entity or public employee is guilty of willful and wanton conduct in its supervision proximately causing such injury. 745 ILCS 10/3-108.

Based on the plain language of the statute, the statute does not apply because Plaintiffs are not alleging that Defendants failed to supervise a particular activity. Rather, Plaintiffs allege that Primdahl failed to adequately instruct and supervise bus transport personnel as to proper pupil transportation protocol and procedures. It has been held that where a plaintiff alleged that a school district was negligent in supervising its employee, rather than in supervising an activity, Section 3-108 did not apply. *Rogers v. Cook*, 2008 U.S. Dist. LEXIS 103702, *13 (N.D. Ill. 2008).

In addition, Defendants' citations are misplaced. First, *Doe v. Chi. Bd. of Educ.* was decided at the motion to dismiss stage, not on summary judgment. *Doe v. Chi. Bd. of Educ.*, 791 N.E.2d 1283, 1291 (Ill. App. Ct. 1st Dist. 2003). The court ultimately held that Plaintiffs properly plead willful and wanton conduct by the board. *Id.* Similarly, *Flores v. Palmer Marketing* was decided on a 2-619 motion to dismiss. *Flores v. Palmer Mktg.*, 836 N.E.2d 792, 813 (Ill. App. Ct. 1st Dist. 2005). Here, Defendants answered Plaintiffs' Third Amended Complaint and in doing so admitted the sufficiency of Plaintiffs' willful and wanton allegations to survive a motion to

dismiss. *See generally Trivedi v. Wells Fargo Bank, N.A.*, 609 F. Supp. 3d 628, 631 (N.D. Ill. 2022) (A motion to dismiss pursuant to 12(b)(6) challenges the sufficiency of a complaint).

Next, *Trotter* applied **pre-amended** section 3-108, which immunized willful and wanton acts. *Trotter*, 733 N.E.2d at 377. The applicable version of Section 3-108 does not immunize willful and wanton conduct. As explained in detail below, the undisputed facts show that Primdahl's conduct was willful and wanton.

**i. Even if Section 3-108 applies, there is evidence of Primdahl's willful and wanton conduct with respect to supervision.**

Even if it is determined that Section 3-108 applies to the facts of this case, the record demonstrates that Defendants' conduct with respect to their failure to supervise and train was willful and wanton, or, at minimum, a question of fact exists as to whether Defendants' conduct was willful and wanton. Illinois courts have emphasized that although a school district operating school busses is not a common carrier, "it is performing the same basic function." *Green v. Carlinville Cmty. Unit Sch. Dist. No. 1*, 887 N.E.2d 451, 456 (Ill. App. Ct. 4th Dist. 2008). In *Green*, the plaintiff alleged she had been sexually molested by her school bus driver. *Id.* at 452. In pertinent part, the court held that school districts that operate school busses owe their students the highest degree of care "to the same extent common carriers owe their passengers the highest degree of care." *Id.* at 456 (stating that like a passenger on a common carrier, a student on a school bus relies on the school district to provide fit employees to keep them safe).

It is readily apparent that Defendants engaged in willful and wanton conduct and that there is a question of fact as to whether CUSD 303 breached their duty of care as an operator of the school bus in question. Defendant Green testified that in the approximately nine years that she worked as a bus driver for the District, she never received any training on how to secure a wheelchair into a bus. (SOF, ¶ 1). Defendant Green's understanding on how to secure a wheelchair

to the bus was based on her common sense, and not through training. (See Dkt. 195 SOF, ¶ 18). The bus driver nor the aid supervises each other. (SOF, ¶ 2). This begs the question of who was actually directly supervising the employees while they were carrying out their duties on the bus. Primdahl was Green and Karnick's direct supervisor – yet, she did not evaluate either in any way. (SOF, ¶ 12). The fact that Primdahl was both Green and Karnick's direct supervisor, yet she did not evaluate their performance, abilities, or application of policies and procedures, clearly emphasizes that there is a question of fact as to whether Defendants provided proper, if any, supervision and training. In total, these facts support a finding of willful and wanton misconduct by Defendants with respect to training and supervision. Thus, granting Defendants immunity pursuant to Section 3-108 at the summary judgment stage would be improper.

## II. Plaintiffs' Willful and Wanton Count II Is Not Barred by Discretionary Tort Immunity and Has Sufficient Evidence to Support it.

### a. Discretionary Immunity Does Not Bar Willful and Wanton Claims Against Defendant District 303 and Defendant Terry Primdahl.

CUSD 303 and Primdahl are not immune to the willful and wanton claims under the Tort Immunity Act because neither defendant was exercising discretion when violating federal and state laws, and Defendant District 303 acted willfully and wantonly by and through its agents and employees Defendant Green and Defendant Karnick. Section 2-201 of the Tort Immunity Act states the following:

> Except as otherwise provided by Statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused." 745 ILCS 10/2-201.

The Illinois Supreme Court has held that an employee may be granted immunity under Section 2-201 of the ITIA if the employee holds a position involving policy determination or involving the exercise of discretion. *Harinek v. 161 V. Clark St. Ltd. Pshp.*, 692 N.E.2d 1177, 1181

(Ill. 1998). The Illinois Supreme Court has also held that immunity will not attach unless the injury results from both the act or omission of an employee in determining policy and in exercising discretion as it relates to the determination of that policy. *Id*.

CUSD 303 claims that it is immune through discretionary immunity under the Tort Immunity Act. However, as explained throughout this Response, Defendant CUSD 303 and Primdahl both willfully and wantonly disregarded federal and state laws regarding the transportation of Corban. Defendant Primdahl consciously disregarded the health and safety of Corban. Willfully and wantonly disregarding Corban's health and safety by violating federal and state law does not qualify as exercising discretion. Therefore, the immunity from section 2-201 does not apply.

In addition, Defendant District 303 also argues that the willful and wanton claims only apply to Defendant Green and Defendant Karnick. However, Defendant District 303 acted willfully and wantonly through its agents and employees Defendant Green and Defendant Karnick. Through its agents and employees, Defendant District 303 is not immune under the Tort Immunity Act section 2-201 because Green and Karnick's actions were not discretionary actions. As discussed further below, Green and Karnick conducted themselves willfully and wantonly in several ways that did not have to do with the exercise of discretion. Through Green and Karnick, Defendant 303 consciously disregarded Corban's health and safety by not properly securing his wheelchair, not immediately calling emergency services after the chair tipped over on top of him, continuing to drive with Corban still not properly secured, dropping another child off while Corban was still not properly secured, and causing Corban to be thrown forward a second time because he was not properly secured. (See Dkt. 195 SOF, ¶ 21, 22); (SOF, ¶ 5, 7, 9).

**b. Sufficient Evidence Has Been Provided to Support a Willful and Wanton Claim Against District Defendants.**

In their motion for summary judgment, District Defendants claim that there is a lack of sufficient evidence to establish willful and wanton conduct. However, looking at the evidence in the light most favorable to the nonmoving party, in this case Plaintiffs, sufficient evidence has been established to support a willful and wanton claim against District Defendants.

The Illinois Supreme Court has held that whether conduct is willful and wanton is ultimately a question of fact for the jury. *Young v. Forgas*, 720 N.E.2d 360, 266 (Ill. App. Ct. 4th Dist. 1999), citing *Callaway v. Kinkelaar*, 659 N.E.2d 1322, 1329 (Ill. 1995). However, a court may hold as a matter of law that a public employee's actions did not amount to willful and wanton conduct when no other conclusion can be drawn. *Young*, 720 N.E.2d at 266.

Willful and wanton conduct falls between ordinary negligence and intentional acts. *Id.* "Under the facts of one case, willful and wanton misconduct may be only degrees more than ordinary negligence, while under the facts of another case, willful and wanton acts may be only degrees less than intentional wrongdoing." *Id.* (quoting *Ziarko v. Soo Line R.R. Co.*, 641 N.E.2d 402, 406 (Ill. 1994)). To establish willful and wanton conduct, a plaintiff must show that when the defendant acted, or failed to act, "he had knowledge, or should have had the knowledge under the circumstances, that his conduct posed a high probability of serious physical harm to others." *Pomrehn v. Crete-Monee High School Dist.*, 427 N.E.2d 1387, 1390 (Ill. App. Ct. 3d Dist. 1981).

Plaintiffs have provided sufficient evidence to survive a summary judgment motion as there are questions of material fact regarding District Defendants' willful and wanton conduct. CUSD 303 and Primdahl both willfully and wantonly failed to provide the required parental information to Defendant Green and Defendant Karnick. Defendant District 303, by and through

its agents, Defendant Green and Defendant Karnick, acted with blatant disregard for Corban's health and safety.

Defendants Green and Karnick both failed to properly secure Corban into the bus before driving with conscious disregard for his safety where they knew or should have known that their actions, or lack thereof, had a high probability of resulting in serious physical harm to Corban. (SOF ¶ 4-11). Defendants Green and Karnick discussed their knowledge that Corban was not properly secured and the risk it posed, noting that they would take it easy going around corners. (SOF ¶ 3). Defendant Green, despite having admitted to working a special needs route in the past, consciously continued to drive with blatant disregard for Corban's safety. (SOF ¶ 6). Defendant Green acted willfully and wantonly when she slammed on the brakes causing everyone and everything in the bus to be thrown forward including Corban and his wheelchair. (SOF ¶ 4). Knowing that there was a 387-lb wheelchair on top of Corban, Defendant Green and Defendant Karnick willfully and wantonly threw Corban's body around trying to lift him and the wheelchair when they should have called emergency services. (SOF ¶ 5). Without fully helping Corban back into the wheelchair and with Corban still on the floor under the wheelchair, Green and Karnick continued the bus route without calling emergency services for over thirteen minutes – which clearly establishes a conscious disregard for Corban's health and safety[2]. (SOF ¶ 8, 11).

Defendant Green and Defendant Karnick proceeded to drop off another child on the bus without alerting anyone of Corban's situation, without calling for emergency services, and with a conscious disregard for Corban's health and safety. (SOF ¶ 7). Defendant Green even knew that Corban was not properly in his wheelchair as she drove and told Defendant Karnick, "He can't sit

---

[2] This fact is not simply alleged, but has been adjudicated by a jury who found Defendant Green guilty of endangering the life of a child for her conduct after the initial occurrence and before calling emergency services.

like that, Pam." (SOF ¶ 8). Defendant Green said they needed to call emergency services but still had not done so, demonstrating their knowledge and disregard. (SOF ¶ 8). Corban was thrown forward a second time when Defendant Green slammed on the brakes. (SOF ¶ 9). Defendant Karnick even shouted at Defendant Green stating, "You just slammed the brakes hard!" (SOF ¶ 10). From the moment Corban first was thrown forward onto the ground with his wheelchair on top of him until the moment Defendant Green finally called emergency services, thirteen (13) minutes has passed. (SOF ¶ 11). Within those thirteen (13) minutes, Defendant Green continued to drive, Corban was still not properly secured, and no other personnel was informed of what happened. (SOF ¶ 4-11).

In support of their claim that there is not sufficient evidence to support a willful and wanton claim, District Defendants claim that there is undisputed evidence that shows that Defendant Green and Defendant Karnick secured the wheelchair with four tie-down straps before starting the afternoon bus route. This is blatantly untrue. There is no genuine issue of material as to whether the four tie-down straps were secured – they were not. Green even admitted that they were not. (SOF ¶ 6). Throughout the video, after Corban and his wheelchair were thrown forward on the ground, Defendant Green can be heard telling Defendant Karnick that the wheelchair could not have tipped over if it had been strapped down. *See e.g.* (SOF ¶ 6). Specifically, Defendant Green told Karnick, "They couldn't have Pam because those things lock on the floor." (*See* SOF ¶ 6). Defendant Green repeated and expressed, "I done drove a special needs route," and "They don't move because they lock." (*See* SOF ¶ 6).

The record is clear that there exists, at minimum, a factual dispute as to whether District Defendants acted willfully and wantonly. There is sufficient evidence for a reasonable jury to find that District Defendants acted willfully and wantonly. This question of fact should be reserved for

the jury. Therefore, District Defendants' motion for summary judgment as to the issue of willful and wanton conduct should be denied.

**III. Summary Judgment Should Not Be Entered As to Plaintiffs' IDEA Claim.**

Summary judgment should not be entered in favor of Defendants as to Plaintiffs' IDEA claim. While it is true that compensatory damages are not available under the IDEA, this Court may award other retrospective and/or prospective relief, including reimbursement of paid expenses or compensatory education. *C.B. v. Bd. of Educ.*, 624 F. Supp. 3d 898, 912 (N.D. Ill. 2022) (citing to 2d, 8th, and 9th circuit decisions). Additionally, "merely requesting monetary damages does not remove a cause of action from the ambit of the IDEA." *Kuhner v. Highland Cmty. Unit Sch. Dist. No. 5*, 2015 U.S. Dist. LEXIS 130170, *6 (S.D. Ill. Sep. 28, 2015). "Where the plaintiff requests monetary damages so that she can compensate for failures of the school district that could (or must) be provided by in-kind by the school district, the request is really one for relief under the IDEA." *Id.* (citing to *Charlie F. v. Bd. of Educ. of Skokie School Dist. 68*, 98 F.3d 989 (7th Cir. 1996). Consequently, summary judgment should not be entered as to Plaintiffs' IDEA claim.

**a. Defendants' Qualified Immunity Argument As To the IDEA Claim Fails.**

The doctrine of qualified immunity only applies to public officials performing discretionary functions. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). However, the doctrine of qualified immunity will not apply if the public official was not performing a discretionary function at the time of injury. *See Richardson v. Bonds*, 1987 U.S. Dist. LEXIS 10515 at *8 (where the court found that the defendant was not protected by qualified immunity because he was not exercising discretion). In this case, as fully set forth in sections I and II above, the District Defendants were not exercising discretion when Corban was injured and therefore cannot be protected by the doctrine of qualified immunity.

## IV. The ADA and Rehabilitation Act Claims Under Counts IV and V Are Viable and Supported by the Facts in the Record.

Under Title II of the ADA, "'no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of services, programs or activities of a public entity, or be subjected to discrimination by any such entity.'" *Carter v. City of Chi.*, 520 F. Supp. 3d 1024, 1029-1030 (N.D. Ill. 2021). Moreover, the Rehabilitation Act prohibits federally funded organizations from discriminating on the basis of disability. *Id.* at 1030. "Title II was modeled after section 504, which was meant to combat discrimination that is 'most often the product, not of invidious animus, but rather of thoughtlessness and indifference – of benign neglect.'" *Lacy v. Cook Cty.*, 897 F.3d 847, 863 (7th Cir. 2018). "To state a claim under the ADA and the Rehabilitation Act, an individual must allege that: (1) she is a qualified individual with a disability; (2) she was denied the benefits of the "services, programs or activities of a public entity"; (3) she was denied those benefits or otherwise discriminated against on account of her disability, and for the Rehabilitation Act claim, the additional requirement that (4) the defendant is an entity which receives federal funds." *Carter*, 520 F. Supp. 3d at 1030 (internal citation omitted). There is no dispute that Corban is a qualified individual with a disability and that CUSD 303 is a recipient of federal funds. (Doc. 206 at p. 18; See Dkt. 195 SOF, ¶ 1). As to the second and third elements, the undisputed facts support that each element has been established, or at a minimum, a genuine issue of material fact exists as to whether each element has been established. Further, Defendants make the conclusory statement that Plaintiffs have not shown that the subject incident has deprived Corban of access to benefits and services. (Doc. 206 at p. 22). However, as demonstrated below, the record clearly reflects that he has been denied the benefits of the District's bus transportation services because of Defendants' deliberate indifference to his federally protected rights. For those reasons, Defendants' motion as to Counts IV and V should be denied.

**a. The Facts Establish that Corban was constructively denied the benefits of CUSD 303's Bus Transportation Services.**

There are sufficient facts to establish a genuine issue of material fact that Corban has been denied the benefits of the "services, programs or activities" of CUSD 303. "Title II imposes an affirmative obligation on public entities to make their programs accessible to qualified individuals with disabilities, except where compliance would result in a fundamental alteration of services of impose an undue burden." *Brad K. v. Bd. of Educ.*, 787 F. Supp. 2d 734, 747 (N.D. Ill. 2011) (internal citation and quotations omitted). Both Title II of the ADA and the Rehabilitation Act require reasonable modifications of policies and practices to avoid discrimination. *Shaw v. Kemper*, 52 F.4th 331, 334 (7th Cir. 2022). Because of Defendants' deliberate indifference to Corban's protected rights, as explained in depth below, Corban could not travel on the school bus anymore. (SOF, ¶ 19). Before the accident occurred, Corban loved to ride the school bus. (SOF, ¶ 18). Now, Corban has PTSD, which was caused by the bus accident. (SOF, ¶¶ 20). Corban will not get on a bus. (SOF, ¶ 19). The increased anxiety and the PTSD caused by the bus accident even prevented Corban from returning to school at all in the six months after the accident. (SOF, ¶ 21). A year and three months after the bus accident, Corban still had anxiety with traveling. (SOF, ¶ 22). Thus, by way of Defendants' deliberate indifference, Corban has been denied access to the bussing service of CUSD 303.

**b. The Facts Establish That Corban was denied the benefits of CUSD 303's Bus Transportation Services Because of His Disability.**

It follows that Corban has been denied access to CUSD's bussing services because of his disability. Corban would not have to ride the bus in a wheelchair if not for his disability. Because of his need to ride a bus in a wheelchair due to his disability, and because of Defendants' deliberate indifference to his rights under the ADA and Rehabilitation Act, he has been denied access to the bussing service because of his disability.

**c. The Facts Establish Deliberate Indifference.**

A plaintiff can establish intentional discrimination in a Title II damage action by showing deliberate indifference, which means: (1) knowledge that a harm to a federally protected right is substantially likely, and (2) a failure to act upon that likelihood. *Lacy v. Cook Cty.*, 897 F.3d 847, 863 (7th Cir. 2018) (internal citation omitted). It suffices to show that there was deliberate indifference to a strong likelihood that a person's federally protected rights will be violated. *Clemons v. Dart*, 168 F. Supp. 3d 1060, 1070 (N.D. Ill. 2016). Moreover, "neither the Supreme Court nor the Seventh Circuit has decided whether Title II of the ADA and § 504 of the Rehabilitation Act permit vicarious liability, and other circuits are split." *Doe v. Bd. of Educ.*, 611 F. Supp. 3d 516, 531 (N.D. Ill. 2020) (holding that the Board was likely correct that the requirements for claims under Title IX (which does not allow for vicarious liability) also apply to claims under Title II of the ADA and § 504). Whether a defendant had a deliberately indifferent state of mind is a factual, not a legal question. *Campbell v. Kallas*, 936 F.3d 536, 552 (7th Cir. 2019) (involving the eighth amendment).

Defendants cite to *Foley v. City of Lafayette* in an attempt to support their position that Plaintiffs have not established deliberate indifference, but that case is distinguishable. In *Foley*, the plaintiff alleged that the City of Lafayette violated the ADA and Rehabilitation act by failing to provide adequate egress from the city train platform. *Foley v. City of Lafayette*, 359 F.3d 925, 926 (7th Cir. 2004). The facts of *Foley* involved the elevators at the train station to be inoperable on the day at issue, and that same day, repairs to the elevators commenced. *Id.* at 927. The elevators were deemed inoperable that day because of the extremely cold temperatures and parts were needed. *Id.* The Amtrak employees helped the plaintiff and his son off the train. *Id.* The court held that nothing in the record indicated a "frequent denial of access to disabled persons or a policy that

neglects elevator maintenance." *Id.* at 929. The court also recognized that Lafayette provided a reasonable accommodation for temporary elevator outages in the form of a ramp. *Id.* at 930.

This matter involves substantially different facts. Here, there are sufficient facts to show that District 303 itself was, or at the minimum, could be found to be, deliberately indifferent to Corban's rights under the ADA and the Rehabilitation Act. There is at least a question of fact as to whether District 303 provided Green with training on how to secure a wheelchair to the bus. (SOF, ¶ 1). Additionally, since the Seventh Circuit has not definitively decided whether the ADA or § 504 permits vicarious liability, this Court may consider that the agents of CUSD were also deliberately indifferent to Corban's federally-protected rights when they: (1) failed to secure his wheelchair to the bus; (2) Green continued to drive even after his wheelchair tipped forward; (3) they did not call emergency services for over thirteen minutes following his chair tipping over; and (4) Green applied the brakes hard, even knowing Corban's chair was not properly secured.

**i. Defendants' Failure To Train Argument Fails.**

District Defendants argue that Plaintiffs' ADA and Rehabilitation claims against Defendant District 303 rely, in substantial part, on a "failure to train" theory. Although this is not the only basis for Plaintiffs' claims against Defendant District 303 under the ADA, it is a recognizable cause of action. The Seventh Circuit has stated that "a failure to make reasonable modifications in policies, practices, or procedures can constitute discrimination under Title II" of the ADA. *Lacy v. Cook County*, 897 F.3d 847, 853 (7th Cir. 2018). Next, while Defendants cite to Paine v. City of Chicago, a 2009 district court decision, more recent decisions from this Court have stated that a failure to train can be taken into consideration with respect to a claim under the ADA. *Westmoreland v. Dart*, 2023 U.S. Dist. LEXIS 193196 at *18. (N.D. Ill. October 27, 2023) (holding that certain personnel's claimed awareness of problems with bed assignments for detained

persons with mobility issues and their claimed failure to take adequate steps to address this (including appropriate training) is relevant and admissible to show deliberate indifference).

Case law from the Northern District involving a failure to train theory with respect to constitutional claims also lends support to show that there is a question of fact as to Plaintiffs' ADA claim. In *S.J. v. Perspectives Charter Sch.*, it was recognized that a failure to train allegation is available where the school district's failure to train its employees evidences a deliberate indifference to the rights of students. *S.J. v. Perspectives Charter Sch.*, 685 F. Supp. 2d 847, 858 (N.D. Ill. 2010).

Defendants cite to *City of Canton v. Harris* in an attempt to support their argument that "Plaintiffs fail to show that the alleged lack of instruction was the result of an affirmative, conscious decision." (Doc. 206 at p. 24). However, that argument is misplaced, and the record contradicts their argument. In *City of Canton v. Harris*, the Court held that the inadequacy of policy training may serve as a basis for liability under Section 1983 "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the policy come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). Moreover, the Court held that the "failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury." *Id.* at 390.

It is readily apparent that the District's failure to train has created a question of fact as to whether they were deliberately indifferent to Corban's rights under the ADA and Rehabilitation Act and whether the failure to provide proper training caused Corban's injuries. Particularly, Timothy Schoolmaster's testimony has solidified that there was an affirmative and conscious decision by the District not to provide adequate training to school personnel. First, Green claimed that she had never been trained in transporting special needs students, that the most recent ride-

along observation form from April 5, 2016 has the lines for special education crossed out, that the ride-along observation on August 17, 2013 has special education crossed out and "NA" written over the lines, and that the ride-along observation from 2011 is also crossed out and marked "NA." (SOF, ¶ 15). In addition, Mr. Schoolmaster testified that the one-page pre-ride checklist for the transporting of special needs students was insufficient to accomplish the safe transportation goal of special needs students. (SOF, ¶ 16). This testimony clearly establishes that there is a question of fact as to whether the District engaged in a "pattern" of violations (i.e., by way of multiple instances of not properly observing or training during the ride-along observations and not providing a sufficient pre-ride checklist for the transportation of special needs students), and defeats Defendants' argument that the lack of instruction was not the result of an affirmative conscious decision – it clearly was or, at a minimum, a question of fact exists of whether it was.

Additionally, in Defendant Green's nine years of working for Defendant District 303, Defendant Green did not receive **any** training on how to secure a wheelchair. (SOF ¶ 1). Yet, as the bus driver, Defendant Green is tasked with checking floor straps and securing wheelchairs in the bus and it was her responsibility to help secure a wheelchair on the bus. (See Dkt. 195 SOF, ¶¶ 19-20). It is also the bus driver's duty to pick students up to and from their homes and school in a safe manner. (See Dkt. 195 SOF, ¶ 17). Even recognizing these duties, Defendant District 303 failed to make any reasonable modifications in policies, practices, or procedures including failing to properly train Defendant Green knowing that she would be picking up children in wheelchairs and that it was her responsibility to help secure the wheelchairs on the bus.

These facts clearly support that Defendants have engaged in longstanding failures that demonstrate deliberate indifference under the ADA. In sum, Plaintiffs have established sufficient

facts to withstand summary judgment on their ADA and Rehabilitation claims under Counts IV and V.

**V. Motion For Summary Judgment Is Not Warranted For Family Expense Act Claim In Count III.**

As set forth fully herein, Plaintiffs have established that there are genuine issues of material fact as to all of the claims raised by Defendants. Consequently, this Court should deny judgment as to Defendants on Count III.

**VI. As Defendants Removed This Case To Federal Court, This Court Should Exercise Jurisdiction Over Any Remaining Claims.**

"Once the federal claims in an action no longer remain, a federal court has discretion to decline to exercise supplemental jurisdiction over any remaining state law claims." *Rosales v. Unifund CCR*, 2008 U.S. Dist. LEXIS 98464, * 8 (N.D. Ill. 2008). It is entirely acceptable for a federal court to decide state law issues that are not implicated by the pendant claims, especially when difficult and unsettled, even after dismissing the main claim. *Timm v. Mead Corp.*, 32 F.3d 273, 277 (7th Cir. 1994). Since this Court has exercised jurisdiction over this claim since 2020, and Defendants were the ones to remove this case to federal court, this Court should retain jurisdiction even if the Federal Statutory Claims are dismissed.

## CONCLUSION

WHEREFORE, Plaintiffs respectfully request that the Court deny Community Unit School District 303 Defendants' Joint Motion for Summary Judgment and grant them any other relief it deems equitable and just.

Dated: March 4, 2025

Respectfully submitted,

CHRISTIN P. PEARSON, individually and as Guardian of the Estate of CORBAN PEARSON, and LISA A. PEARSON, individually and as co-Guardian of the Estate of CORBAN PEARSON

By: */s/ Bryan W. White*
One of Plaintiffs' Attorneys

James J. O'Hagan (ARDC # 2094754)
Kevin M. O'Hagan (ARDC # 6211446)
Bryan W. White (ARDC # 6307312)
Nitika Suchdev (ARDC # 6342824)
O'HAGAN MEYER LLC
One E. Wacker Dr., Suie 3400
Chicago, Illinois 60601
PH: 312.422.6100
FX: 312.422.6110
johagan@ohaganmeyer.com
kohagan@ohaganmeyer.com
bwhite@ohaganmeyer.com
nsuchdev@ohaganmeyer.com

Sam L. Amirante
AMIRANTE LAW OFFICES, P.C.
770 Lee Street, Suite 201
Des Plaines, Illinois 60016
PH: 847.934.7444
FX: 847.934.7474
amirantelawoffices@gmail.com

## CERTIFICATE OF SERVICE

This is to certify that on March 4, 2025, I electronically filed **Plaintiffs' Response to Community Unit School District 303 Defendants' Joint Motion for Summary Judgment** with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

/s/ *Bryan W. White*
Bryan W. White (ARDC # 6307312)
O'HAGAN MEYER LLC
One E. Wacker Dr., Suite 3400
Chicago, Illinois 60601
PH: 312.422.6100
FX: 312.422.6110
bwhite@ohaganmeyer.com