**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CHRISTIN P. PEARSON, individually and as Guardian of the Estate of CORBAN PEARSON; and LISA A. PEARSON, individually and as co-Guardian of the Estate of CORBAN PEARSON, | ) | |
| Plaintiffs, | ) | |
| v. | ) | CASE NO. 1:20-CV-05096 |
| | ) | Honorable John Robert Blakey |
| COMMUNITY UNIT SCHOOL DISTRICT 303, ANTOINETTE L. GREEN, PAM KARNICK, TERRY PRIMDAHL, and United Seating and Mobility, L.L.C., a Missouri limited liability company, d/b/a NUMOTION | ) | |
| Defendants. | ) | |
| COMMUNITY UNIT SCHOOL DISTRICT 303 and TERRY PRIMDAHL, | ) | |
| Third-Party Plaintiffs, | ) | |
| v. | ) | |
| United Seating and Mobility, L.L.C., a Missouri limited liability company, d/b/a NUMOTION, | ) | |
| Third-Party Defendant | ) | |

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTIONS FOR SUMMARY JUDGMENT**

NOW COME Plaintiffs, Christin P. Pearson, individually and as Guardian of the Estate of Corban Pearson and Lisa A. Pearson, individually and as co-Guardian of the Estate of Corban Pearson, and for their Reply in Support of their Motions for Summary Judgment as to Community

Unit School District 303, Terry Primdahl, Pamela Karnick, and Antoinette Green's Affirmative Defenses, states as follows:

## ARGUMENT

### I. There is No Evidence that Lisa or Christin Pearson were Contributorily Negligence

Defendants' Response does not defeat the fact that there are no genuine issues of material fact to support a contributory negligence affirmative defense against Christin and Lisa Pearson. As an initial matter, Defendants provide **zero** facts in support of their argument that Christin was somehow contributorily negligent to Corban. With respect to the Pearsons, Defendants only cite to Lisa's deposition, and do not mention any testimony made by Christin at all.

Next, Defendants focus on the fact that Lisa Pearson signed a document whereby she refused anti-tip wheels on Corban's wheelchair. However, what the facts show is that David Cingano, the NuMotion employee who worked with the Pearsons on the design of the wheelchair, did not recommend anti-tip wheels for Corban's wheelchair. (Doc. 195, ¶¶ 33, 34). Lisa did not recall anyone offering anti-tip wheels, and Christin was not even aware that they were an option. (Doc. 195, ¶¶ 11-12). What the Pearsons did do is follow all recommendations regarding wheelchair features and equipment based on the advice of NuMotion personnel in purchasing the subject wheelchair. (Doc. 195, ¶ 10).

Next, Defendants' contention that Corban had two unhealed femur fractures is entirely false. Corban's bilateral broken femurs that he sustained in August 2018 had fully healed prior to the date of the occurrence. (Doc. 195, ¶ 36). Thus, the Defendants' ability to safely transport Corban was not affected **at all** by Lisa's alleged failure to share information with Green or Karnick about the fractures, as there simply was no information to share.

Moreover, it is unclear why, with respect to their argument regarding contributory negligence on the part of Lisa and/or Christin Pearson, Defendants allege that Lisa Pearson claimed she had conversations with Corban about turning his wheelchair off before being transported. The only thing this demonstrates is that Lisa was attempting to make sure that Corban was safely transported, and has no bearing on any purported negligence by her. Moreover, the fact that Corban used the joystick to move his chair forward is entirely unrelated to Defendants' contributory negligence affirmative defense against Christin and Lisa.

Put simply, there are no facts in the record that support that Lisa and/or Christin Pearson were contributorily negligent in any way. Consequently, Plaintiff's Motion for Summary Judgment as to Defendants CUSD 303 and Primdahl's Affirmative Defense of Contributory Negligence (Count I of Doc. 196), Karnick's Affirmative Defense of Contributory Negligence (Count I of Doc. 198), and Green's Affirmative Defenses of Contributory Negligence (Count IV of Doc. 197) should be granted.

## II. The District Defendants Agree to Withdraw Their Affirmative Defense Under Section 2-103.

In their Response, the District Defendants have agreed to voluntarily withdraw their affirmative defense under Section 2-103 of the Tort Immunity Act. (*See* Doc. 226 at p. 9). Thus, no further argument regarding the substance of Plaintiffs' argument with respect to Section 2-103 is needed.

## III. The District Defendants' Argument Regarding Their Affirmative Defense Pursuant to Section 2-204 Fails.

At the outset, Defendants' argument fails as section 2-204 has no applicability to this case. Plaintiffs are not alleging that Primdahl is vicariously liable is for the acts of omissions of

Defendants Green or Karnick. Rather, Plaintiffs are alleging that that Primdahl is individually liable for the following:

> Failing to adequately instruct and supervise bus transport personnel as to proper pupil transportation protocol and procedures, in compliance with federal, state and local law;
>
> Failing to properly oversee pupil transportation operations, including training programs for all bus transport personnel, in violation of federal and state transportation laws, regulations and policies;
>
> Failing to ensure that bus transport personnel exhibited proficiency in the safe operation of a school bus, including its securement equipment and devices in violation of occupant protection requirements set forth in 49 CFR 571.222;
>
> Failing to oversee proper student transportation in the event of an emergency as provided by State and local emergency and rescue procedures;
>
> Failing to provide bus operators with student emergency contact information in violation of their duty to take reasonable precautions to ensure the safety of Corban and the other students in their care, custody, control and/or supervision;
>
> Failing to properly maintain the bus in a safe operating condition through a systematic preventive maintenance program in accordance with the Illinois State Board of Education and in violation of provisions of the Illinois School Code and the National Highway Traffic Safety Administration;
>
> Failing to enforce a planned preventive maintenance program to ensure student safety during bus transport in accordance with the Illinois State Board of Education and in violation of provisions of the Illinois School Code and the National Highway Traffic Safety Administration; and
>
> Failing to ensure bus transport personnel complied with federal and state laws, regulations, and policies governing transportation of Corban as a special education student;

(*See* Doc. 182, ¶ 46(i)-(p)). Nowhere in these allegations do Plaintiffs allege that Primdahl is liable for the acts of omissions of Green of Karnick. Thus, Section 2-204 does not apply to this matter, and Defendants' argument that Plaintiffs have failed to show that Primdahl is not entitled to rely on the protections of Section 2-204 fails.

Moreover, the cases that Defendants cite to are distinguishable from this matter. First, the case *Payne v. Churchich* involved the allegations that a deputy was vicariously responsible for the conduct of his agents and that the allegations alleged vicarious liability for the failure to protect an individual from self-harm. *Payne v. Churchich*, 161 F.3d 1030, 1045 (7th Cir. 1998). The Seventh Circuit held that the Illinois Tort Immunity Act precluded liability **<u>on such a basis</u>**. *Id.* (citing to Section 2-204) (emphasis added). Additionally, in that case, the plaintiffs admitted that the allegations of vicarious liability based upon an agency relationship between the county sheriff and the city could not stand. *Id.*

Next, Defendants' citation to *Clark v. City of Chicago* similarly misses the mark. In *Clark*, the Court stated that the individual defendants with respect to the counts at issue were named only on respondeat superior grounds, and thus, Section 2-204 insulated them from liability. *Clark v. Chicago*, 595 F. Supp. 482, 487 (N.D. Ill. 1984).

Lastly, Defendants' citation to *Toney v. Mazariegos* actually supports that Section 2-204 has no applicability to immunize Primdahl. In *Toney*, the court stated that section 2-204 of the Tort Immunity Act "has been construed as being intended to bar liability based on *respondeat superior*." *Toney v. Mazariegos*, 166 Ill. App. 3d 399, 404 (1st Dist. 1988). There, the court stated that the section appeared to have no applicability to that case. *Id.*

Similarly, here, the only conclusion that can be made is that Section 2-204 does not apply to this matter as to immunize Primdahl.

Defendants go on to argue that Plaintiffs must show that Primdahl engaged in willful and wanton conduct. (*See* Doc. 226 at p. 10). Ignoring the fact that Section 2-204 makes no mention of willful and wanton conduct, and the fact that Section 2-204 does not even apply to the facts of this case as it relates to Primdahl whatsoever, Defendants make this assertion without citing to any

authority to support it. Nevertheless, for the sake of argument, the record does show that that Primdahl engaged in willful and wanton conduct. Defendant Green testified that in the approximately nine years that she worked as a bus driver for the District, she never received any training on how to secure a wheelchair into a bus. (Doc 230, ¶ 1). Defendant Green's understanding on how to secure a wheelchair to the bus was based on her common sense, and not through training. (See Dkt. 195 SOF, ¶ 18). This is direct evidence that Primdahl was willful and wanton with respect to her duties to train and instruct bus transport personnel. Moreover, neither the bus driver nor the aid supervises each other. (Doc. 230, ¶ 2). This begs the question of who was actually directly supervising the employees while they were carrying out their duties on the bus. Primdahl was Green and Karnick's direct supervisor – yet, she did not evaluate either in any way. (Doc. 230, ¶ 12). The fact that Primdahl was both Green and Karnick's direct supervisor, yet she did not evaluate their performance, abilities, or application of policies and procedures, clearly emphasizes that there is a question of fact as to whether Defendants provided proper, if any, supervision and training. In total, these facts support a finding of willful and wanton misconduct by Defendants with respect to training and supervision.

Thus, this Court should grant Plaintiffs' Motion for Summary Judgment as to Defendants' Section 2-204 affirmative defense.

## IV. Defendant Green Makes No Argument that She Was a Government Official Performing a Discretionary Function and Therefore Is Not Entitled to Qualified Immunity.

In her response to Plaintiffs' Motion for Summary Judgment, Defendant Green argues that she is entitled to qualified immunity as to the IDEA. (Dkt. No. 226 at pp. 13). However, Defendant Green has not established how the doctrine of qualified immunity applies to her as she has not established that she is a "government official[] who perform[s] discretionary functions…" *Herring v. Chicago Hous. Auth.*, 1995 U.S. Dist. LEXIS 2089 at *8 (N.D. Ill. 1995).

The doctrine of qualified immunity does not apply to everyone. Before a question of whether a constitutional right has been violated can be asked, the doctrine of qualified immunity must first apply to a government official in a position performing discretionary functions. *Id*. In her response, Defendant Green does not cite to any authority that establishes that she, as a school bus driver, was a government official. Defendant Green also does not provide any evidence or argument that she was in a position to perform any discretionary functions as a government official. Without either being established, the doctrine of qualified immunity does not apply to Defendant Green.

Defendant Green's own citations support this position. Defendant Green cites to *Khuans v. School Dist. 110*, as her basis for her qualified immunity argument. The court in *Khuans* stated the exact same standard for when qualified immunity applies stating, "officials performing discretionary functions generally are shielded from liability for civil damages…" *Khuans v. School Dist. 110*, 123 F.3d 1010, 1013 (7th Cir. 1997). However, nothing the court held in *Khuans* helps Defendant Green establish that a school bus driver is a government official who performs discretionary functions.

Defendant Green attempts to use the parentheticals in her response to summarize the case in a way that suits her. (Dkt. No. 226 at pp 13). However, the court *Khuans* did not hold that any school employee was entitled to qualified immunity. The court found that the defendant was entitled to qualified immunity because "[the defendant] was a government official performing discretionary functions." *Khuans*, 123 F.3d at 1013. The court *explicitly* held that the defendant was government official and that he was performing discretionary functions during the alleged violations. *Id*. (emphasis added). This is distinguishable from the instant case where Defendant Green makes no argument whatsoever that she was a government official performing discretionary

functions during the alleged incident. Defendant Green also cites no supporting precedent that would establish that she was a government official performing discretionary functions while driving a school bus.

Therefore, there is no dispute as to any material fact that the doctrine of qualified immunity does not apply to Defendant Green and summary judgment should be entered in favor of Plaintiffs as the Defendant Green's first affirmative defense.

## V. Defendant Green Has Not Provided Any Material Facts to Support Her Affirmative Defense Under Section 2-201.

Under her fifth affirmative defense, Defendant Green asserts that she is granted immunity under Section 2-201 of the Illinois Tort Immunity Act (ITIA). (Dkt. No. 187 at pp. 25). However, in her Response to Plaintiffs' Motion for Summary Judgment on Defendant Green's Fifth Affirmative Defense, Defendant Green does not provide any evidence or any facts that show she was both determining policy and exercising discretion of said policy. (Dkt. No. 226 at pp. 12).

In her response, Defendant Green cites to *Harinek v. 161 N. Clark St. Ltd. P'ship*, as an example of a fire marshal determining policy and exercising discretion. *Harinek*, 692 N.E.2d 1177, 1181 (Ill. 1998). The court in *Harinek* found that the fire marshal was responsible for planning and conducting fire drills. *Id*. The court further found that by planning the fire drills, the fire marshal "must balance various interests which may compete for the time and resources of the department…" *Id*. at 1182. The court also found that the complaint alleged acts or omissions of the fire marshal such as where to assemble the participants and whether to provide alternative routes, which were all attempts to balance the interests and determining policy. *Id*. The court specifically found that the fire marshal was determining fire department policy. *Id*. at 1181.

The facts in *Harinek* could not be more different than the facts in the instant case, and Defendant Green's attempts to equate herself to the fire marshal are misplaced. The record is

devoid of, and Defendant Green has not identified, any evidence or facts that establish that she was determining policy. The record is also without, and Defendant Green has not identified, any evidence or facts that establish that she was exercising any discretion. Defendant Green does not even attempt to establish what policies she was determining.

Additionally, 2-201 does not provide immunity if the acts are ministerial in nature. *Trotter v. School Dist. 218*, 733 N.E.2d 363, 373 (Ill. App. Ct. 1st Dist. 2000). "Ministerial acts are those that a person performs on a given state of facts, in a prescribed manner, in obedience to legal authority, and without reference to the official's discretion as to the propriety of the act." *Id.* Operating a school bus fits this description perfectly. Here, Green was not making any discretionary judgment calls – and Plaintiffs do not allege that she was. Here, Green's duties were all ministerial in nature, following all applicable laws for operating a school bus, ensuring that special needs passengers are properly secured, performing safety checks, and operating the school bus in a safe and efficient manner, and thus, are not immunized by Section 2-201. Her failure to perform her duties does not make them discretionary.

Therefore, even looking at the evidence in the light most favorable to Defendant Green, immunity under Section 2-201 of the ITIA does not apply to Defendant Green because there is no dispute to any material fact that Defendant Green was not determining policy or exercising discretion, and summary judgment should be entered in favor of Plaintiffs as to Defendant Green's fifth affirmative defense.

## VI. Defendant Green Failed to Address Plaintiff's Motion for Summary Judgment as To Her Twentieth Affirmative Defense.

In Defendants' Response, Defendant Green does not address Plaintiffs' argument regarding summary judgment as to her affirmative defense that Section 735 ILCS 5/2-1303(c) (2021) is unconstitutional. A non-movant's failure to address claims in response to a motion for summary

judgment waives those claims. *See Palmer v. Marion Cnty.*, 327 F.3d 588, 597 (7th Cir. 2003) (holding that claims not addressed in a summary judgment opposition brief are deemed abandoned); *Laborers Int'l Union of N. America v. Caruso*, 197 F.3d 1195, 1197 (7th Cir. 1999) (stating that arguments not presented to the district court in response to summary judgment motions are waived).

Thus, this Court should grant Plaintiffs' Motion as to Green's Twentieth Affirmative Defense.

WHEREFORE, Plaintiffs, Christin P. Pearson and Lisa Pearson, individually and as the Guardians of Corban Pearson, respectfully request that this Court grant Plaintiffs' Motion for Summary Judgment as to the District Defendant's Affirmative Defenses, any other relief this Court deems equitable and just.

Dated: March 31, 2025

Respectfully submitted,

CHRISTIN P. PEARSON, individually and as Guardian of the Estate of CORBAN PEARSON, and LISA A. PEARSON, individually and as co-Guardian of the Estate of CORBAN PEARSON.

By: */s/ Bryan W. White*
One of Plaintiffs' Attorneys

James J. O'Hagan (ARDC # 2094754)
Kevin M. O'Hagan (ARDC # 6211446)
Bryan W. White (ARDC # 6307312)
Nitika Suchdev (ARDC # 6342824)
O'HAGAN MEYER LLC
One E. Wacker Dr., Suite 3400
Chicago, Illinois 60601
PH: 312.422.6100
FX: 312.422.6110
johagan@ohaganmeyer.com
kohagan@ohaganmeyer.com
bwhite@ohaganmeyer.com
nsuchdev@ohaganmeyer.com

Sam L. Amirante (ARDC # 0043249)
AMIRANTE LAW OFFICES, P.C.
770 Lee Street, Suite 201
Des Plaines, Illinois 60016
PH: 847.934.7444
FX: 847.934.7474
amirantelawoffices@gmail.com

## CERTIFICATE OF SERVICE

This is to certify that on March 31, 2025, I electronically filed **Plaintiffs' Reply in Support of Their Motions for Summary Judgment** with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

*/s/Bryan W. White*
James J. O'Hagan (ARDC # 2094754)
Kevin M. O'Hagan (ARDC # 6211446)
Bryan W. White (ARDC # 6307312)
Nitika Suchdev (ARDC # 6342824)
O'HAGAN MEYER LLC
One E. Wacker Dr., Suite 3400
Chicago, Illinois 60601
PH: 312.422.6100
FX: 312.422.6110
johagan@ohaganmeyer.com
kohagan@ohaganmeyer.com
bwhite@ohaganmeyer.com
nsuchdev@ohaganmeyer.com

Sam L. Amirante (ARDC # 0043249)
AMIRANTE LAW OFFICES, P.C.
770 Lee Street, Suite 201
Des Plaines, Illinois 60016
PH: 847.934.7444
FX: 847.934.7474
amirantelawoffices@gmail.com