**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| CHRISTIN P. PEARSON, individually and as Guardian of the Estate of CORBAN PEARSON; and LISA A. PEARSON, individually and as co-Guardian of the Estate of CORBAN PEARSON, | Case No.: 1:20-CV-05096 |
| Plaintiffs, | Honorable John Robert Blakey |
| v. | |
| COMMUNITY UNIT SCHOOL DISTRICT 303, ANTOINETTE L. GREEN, PAM KARNICK, TERRY PRIMDAHL and United Seating and Mobility, L.L.C., a Missouri limited liability company, d/b/a NUMOTION | |
| Defendants. | |

**PLAINTIFFS' RESPONSE TO DISTRICT DEFENDANTS' STATEMENT OF ADDITIONAL FACTS**

Plaintiffs, Christin P. Pearson and Lisa Pearson, individually and as the Guardians of Corban Pearson, by and through their attorneys, O'Hagan Meyer, LLC, move this Court, pursuant to Federal Rule of Civil Procedure 56 and Rule 56.1(b), submit their Response to District Defendants' Statement of Additional Facts, states as follows:

1. District 303's bus drivers, including Green, complete mandated State of Illinois training to receive their school bus endorsement, and they also must receive an annual two-hour training certification, as mandated by the State of Illinois. **Pltf. Ex. C (Primdahl Dep.) 27:15-22, 60:18-62:19; Ex. D (Green Dep.) 13:7-22, 17:3-15, 22:7-18.**

**RESPONSE:** Not in dispute.

2. District 303 provides bus drivers with training relating to special education students, which follows the State's curriculum. **Pltf. Ex. C (Primdahl Dep.) 65:2-17.** The driver

and bus monitor serve as double checks of each other, which ensures an additional safety check. ***Id.* at 67:8-17.**

**RESPONSE:** The amount and type of training is in dispute based on the testimony of Green. (*See* Doc. 230 at ¶ 1).

3. District 303 aligns its transportation policies with the guidelines published by the State of Illinois. **Pltf. Ex. C (Primdahl Dep.) 43:23-44:10, 45:1-4, 50:23-51:2.**

**RESPONSE:** Disputed as to all material allegations. (*See* Doc. 230 at ¶ 17).

4. In addition to her training, District 303 provided Karnick with policies and procedures on how to secure wheelchairs to a school bus. **Pltf. Ex. D (Karnick Dep.) 21:16-22:9, 82:2-20, 96:23-97:8; Pltf. Ex. C (Primdahl Dep.) 80:17-81:10.**

**RESPONSE:** Not in dispute as to the providing of the policies.

5. District 303 has used an 83-page training aide, which is maintained in the normal course of business, to train bus drivers and bus monitors since August 2008. **Ex. G to Dfts. Mot. (Dkt. 202-8) (Training Aide); Pltf. Ex. C (Primdahl Dep.) 51:4-52:10.** The Training Aide was in Green and Karnick's yearly folder with their bus route every year. **Pltf. Ex. C (Primdahl Dep.) 54:20-55:17.**

**RESPONSE:** Not in dispute.

6. The Training Aide includes an article titled "Wheelchair Transport Safety," which states certain "dos" and "don'ts." **Ex. G to Dfts. Mot. (Dkt. 202-8) (Training Aide) at D303 564-565; Pltf. Ex. C (Primdahl Dep.) 53:1-19.**

**RESPONSE:** Not in dispute.

7. Corban Pearson is paraplegic due to muscular dystrophy, has high-functioning autism, and, at the time of the incident on August 14, 2019, (unbeknownst to Karnick and Green)

he had an unhealed fracture to his femur or femurs. **Pltf. Ex. A (L. Pearson Dep.) 23:14-16, 28:22-29:13, 34:21-24, 35:1-9; Pltf. Ex. D (Karnick Dep.) 111:2-13; Ex. M to Dfts. Mot. (Dkt. 207) (Afternoon Bus Video) at 5:05:06 pm (Lisa Pearson mentions the two broken femurs).**

**RESPONSE:** Disputed in part. Particularly, Corban's femur fractures were fully healed on August 14, 2019. (*See* Doc. 195 at ¶ 36).

8. When Lisa Pearson was getting Corban ready for the first day of school in 2018, she inadvertently dropped him due to his weight gain, which resulted in that injury. **Pltf. Ex. A (L. Pearson Dep.) 28:22-24, 29-1-9; Ex. K to Dfts. Mot. (Dkt. 202-12) (Corban Pearson Dep.) 61:4-19.** The EMS responded to the Pearsons' home on August 20, 2018, at which time, according to the report, Lisa Pearson reported that two days prior she was transferring Corban from his bed to his wheelchair when she lost her grip resulting in the pt falling to the floor landing on his bottom and his legs twisted. **Ex. 3, attached hereto (Fox River & Countryside Fire Department Record), at P2.**

**RESPONSE:** Not in dispute.

9. Corban was 10 years old when he got his first motorized wheelchair. **Pltf. Ex. A (L. Pearson Dep.) 93:13-18.** On June 28, 2016, Lisa Pearson took delivery of the Permobil F3 wheelchair. **Pltf. Ex. A (L. Pearson Dep.) 128:1-7; Ex. H to Dft. Mot. (Dkt. 202-9) (NuMotion Delivery Checklist).** This chair was involved in the subject incident on August 14, 2019. **Pltf. Ex. A (L. Pearson Dep.) 130:5-24.** He had this first wheelchair until he received a new wheelchair after the incident. ***Id.* at 95:6-11.**

**RESPONSE:** Not in dispute.

10. On October 6, 2017, Corban weighed 125 pounds and had outgrown the seating within his power wheelchair due to weight gain from experimental drugs and steroids. **Pltf. Ex.**

**A (L. Pearson Dep.) 138:2-15; Ex. I to Dfts. Mot. (Dkt. 202-10) (Seating/Mobility Evaluation, dated Oct. 6, 2017).** When Corban's chair was evaluated for modifications on October 5, 2017, Lisa Pearson signed that she was refusing "Anti-Tippers Devices," which the NuMotion form states is recommended on all wheelchairs. **Pltf. Ex. A (Lisa Pearson Dep.) 142:14-23); Ex. H to Dfts. Mot. (Dkt. 202-10) (Customer Information Checklist; Rehab Equipment/Evaluation, dated October 5, 2017).**

**RESPONSE:** Plaintiffs dispute that Lisa Pearson testified that Corban had outgrown the seating within his wheelchair, but do not dispute that she signed the checklist.

11. At the time of the incident, Corban weighed 176 pounds. **Pltf. Ex. A (L. Pearson Dep.), 112:7-9; Ex. J to Dfts. Mot. (Dkt. 202-11) (Seating/Mobility Evaluation dated Sept. 18, 2019).**

**RESPONSE:** Not in dispute.

12. The wheelchair used at the time of the incident did not have anti-tip wheels, and the wheelchair he received after the accident had anti-tip wheels. **Pltf. Ex. A (L. Pearson Dep.) 98:3-24, 142:14-23, 149:16-19.**

**RESPONSE:** Not in dispute.

13. The date of the incident, August 14, 2019, was the first day of the school year. **Pltf. Ex. A (L. Pearson Dep.) 33:4-6.** Corban was starting eighth grade at Wredling Middle School. **Pltf. Ex. A (L. Pearson Dep.) 33:2-8.**

**RESPONSE:** Not in dispute.

14. That morning, Corban was at the end of his driveway with his mother waiting for Green to pick him up. **Pltf. Ex. A (L. Pearson Dep.) 75:6-9.**

**RESPONSE:** Not in dispute.

15. Green lowered the wheelchair ramp to allow Corban to get on the bus and was told by Lisa Pearson that Corban was very independent and "likes to do things on his own." **Pltf. Ex. E (Green Dep.) 35:20-39:10.** Lisa Pearson had prior conversations with Corban about turning off his wheelchair before being transported. **Pltf. Ex. A (L. Pearson Dep.) 164:8-21.** Lisa Pearson instructed Karnick that Corban was in charge of operating his wheelchair. **Ex. E (Karnick Dep.) 102:7-19.**

**RESPONSE:** Plaintiffs dispute only that Lisa Pearson instructed Karnick that Corban was in charge of operating his wheelchair. (*See* Doc 202 at Ex. E at 102:7-19).

16. Another student who used a wheelchair was also on the bus that morning. **Ex. K to Dfts. Mot. (Dkt. 202-12) (Corban Pearson Dep.) 135:4-20.**

**RESPONSE:** Not in dispute.

17. Karnick secured Corban's wheelchair without incident and Green checked to ensure that the wheelchair was secure before starting her route. **Ex. E (Karnick Dep.) 28:20-29:3.** They had no problem securing Corban and his wheelchair to the back of the bus that morning. **Pltf. Ex. E (Green Dep.) 46:15-47:3.** Corban stated the trip to school was uneventful and there were no issues in securing his wheelchair on the route to school that morning-he got his wheelchair in position and turned it off, the bus monitor secured his wheelchair, and the wheelchair did not rock or feel loose. **Ex. K to Dfts. Mot. (Dkt. 202-12) (Corban Pearson Dep.) 128:22-129:14, 131:2-16; *see also,* Ex. L to Dfts. Mot. (under seal) (Morning Bus Video) at 8:06-8:08:27 a.m. and generally.**

**RESPONSE:** Plaintiffs dispute that Green checked to ensure that the wheelchair was secure before starting her route because she picked him up mid-route. Plaintiffs further dispute that the wheelchair was properly secured in the morning. (*See* Doc. 202 at Ex. E, 28:20 to 29:3; *see* Doc.

202 at Ex. N at 90:11-91:3).

18. In the afternoon of August 14, 2019, after Corban positioned himself into the rear of the bus, Karnick stood in front of Corban to secure the front wheels of the wheelchair. **Pltf. Ex. E (Green Dep.) 53:16-54:2; Ex. K to Dfts. Mot. (Dkt. 202-12) (Corban Pearson Dep.) 133:11-15; Ex. M to Dfts. Mot. (Dkt. 207) (Afternoon Bus Video) at 03:44:50 p.m.** Karnick took steps to secure Corban's wheelchair by pulling the retractable straps from the bus floor and latching them to the bottom front of the wheelchair, then repeating the process by latching the straps to the back of the wheelchair, without any trouble. **Ex. M to Dfts. Mot. (Dkt. 207) (Afternoon Bus Video) at 03:44:56 p.m.; Pltf. Ex. D (Karnick Dep.) 36:19-39:2; Pltf. Ex. E (Green Dep.) 55:1-13.**

**RESPONSE:** Plaintiffs dispute that the wheelchair was properly secured, let alone that it was secured without any trouble. (*See* Doc. 202 at Ex. M at 3:40 PM – 3:50 PM).

19. Karnick asked Green to come to the back of the bus to check that all four floor straps were securely fastened to the wheelchair, which she did. **Pltf. Ex. D (Karnick Dep.) 39:11-40:22; Pltf. Ex. E (Green Dep.) 56:14-57:6, 64:19-65:20; Ex. M to Dfts. Mot. (Dkt. 207) (Afternoon Bus Video) at 03:45:45 p.m.** On Green's inspection, Green believed Corban's wheelchair was secured before she walked back to the bus to start driving the afternoon route. **Pltf. Ex. E (Green Dep.) 59:23-60:20, 98:10-13, 144:18-145:13.**

**RESPONSE:** Plaintiffs dispute that Karnick called Green to the back of the bus to check that the straps were securely fastened. (*See* Doc. 202 at Ex. M at 3:45 PM). Plaintiffs further dispute that Green believed Corban's wheelchair was secured before she walked back to the bus to start diving the afternoon route. (*See* Doc. 202 at Ex. D p. 62:2 – 70:9; *see also* Doc. 202 at Ex. E p. 118:21 – 119:4).

20. The steps to secure the wheelchair took almost 5 minutes. **Ex. M to Dfts. Mot. (Dkt. 207) (Afternoon Bus Video) at 03:44:50-03:49:06 p.m.**

**RESPONSE:** Plaintiffs dispute the assertion that the wheelchair was secured. (*See* Doc. 195 at ¶ 31).

21. After the bus started moving, Corban testified that he said to Karnick that his wheelchair "felt tippy," and Karnick came and looked at the straps and put the wheelchair back in a flat position. **Ex. K to Dfts. Mot. (Dkt. 202-12) (Corban Pearson Dep.) 150:16-152:11, 156:9-157:2; Ex. M to Dfts. Mot. (Dkt. 207) (Afternoon Bus Video) at 04:06:55 p.m.**

**RESPONSE:** Not in dispute.

22. The bus continued on its route and came to a stop prior to Green making a left tum onto Bocum Road, and Corban's wheelchair tipped forward. **Ex. M to Dfts. Mot. (Dkt. 207) (Afternoon Bus Video) at 4:15:15-4:16:03 p.m.; Pltf. Ex. D (Karnick Dep.) 53:20-54; Pltf. Ex. E (Green Dep.) 78:16-79:7.**

**RESPONSE:** Plaintiffs dispute that the bus actually came to a stop before the wheelchair tipped over. (*See* Doc. 202 at Ex. M at 4:15:15-4:16:03),

23. Unbeknownst to Karnick, Corban had used the joystick to move his chair forward before his wheelchair tipped. **Ex. M to Dfts. Mot. (Dkt. 207) (Afternoon Bus Video) at 04:06:34 p.m.; Pltf. Ex. D (Karnick Dep.) 107:7-108:12; 119:17-120:2.**

**RESPONSE:** Not in dispute.

24. Within seconds after Corban's wheelchair tipped, Karnick got up from where she was seated and yelled up to Green that the wheelchair had tipped over. **Pltf. Ex. D (Karnick Dep.) 58:2-6, 60:2-61:6; Pltf. Ex. E (Green Dep.) 78:16-79:7; Ex. M to Dfts. Mot. (Dkt. 207)**

**(Afternoon Bus Video) at 4:16:04 p.m.** Green said, "Pam, I thought you said you had both of them on!" **Ex. M to Dfts. Mot. (Dkt. 207) (Afternoon Bus Video) at 4:16:03 p.m.; Pltf. Ex. E (Green Dep.) 78:5-9.** Karnick replied, "It was in, all of them were in!" **Ex. M to Dfts. Mot. (Dkt. 207) (Afternoon Bus Video) at 4:16:14 p.m.**

**RESPONSE:** Not in dispute.

25. Corban did not fall out of the wheelchair, but the back of the wheelchair had tipped up. **Pltf. Ex. E (Green Dep.) 81:12.** After the wheelchair had tipped, all four straps were still connected from the wheelchair to the floor and had extended and locked themselves (similar to how a seat belt locks). **Pltf. Ex. D (Karnick Dep.) 55:8-56:16.**

**RESPONSE:** Plaintiffs dispute that the chair was properly secured. (*See* Doc. 195 at ¶ 31).

26. Green then pulled the bus over to the side of the road and went to the rear of the bus where she spent several minutes assisting Karnick to try and pull Corban and his wheelchair into an upright position. **Pltf. Ex. E (Green Dep.) 79:8-85:13; Ex. M to Dfts. Mot. (Dkt. 207) (Afternoon Bus Video) at 4:16:56-4:22:04 p.m.**

**RESPONSE:** Not in dispute.

27. Green and Karnick were able to get the four wheels of the wheelchair down on the bus floor, so Green then walked back to the front of the bus to drop off a crying student whose driveway was only a half-block away, and she then turned the bus around and parked it in a safe area where she could call for emergency assistance. **Pltf. Ex. E (Green Dep.) 85:14-86:10, 90:6-15, 94:14-97:10, 108:2-111:7; Ex. M to Dfts. Mot. (Dkt. 207) (Afternoon Bus Video) at4:28:47 p.m.**

**RESPONSE:** Disputed as to all material assertions, as Green continued driving until Corban's wheelchair tipped a second time. (*See* Doc. 202 at Ex. M at 4:15 PM to 4:28 PM).

28. Within about seven minutes, paramedics arrived and were able to lift Corban and sit him upright in his wheelchair. **Pltf. Ex. E (Green Dep.) 112:22-113:5; Ex. M to Dfts. Mot. (Dkt. 207) (Afternoon Bus Video) at 4:35:29 p.m.** Karnick stayed with Corban until EMS arrived to assist. **Pltf. Ex. D (Karnick Dep.) 68:19-69:2.** She did not believe he was injured. ***Id.* at 109:19-22, 110:9-20.**

**RESPONSE:** Plaintiffs dispute that paramedics arrived within 7 minutes. (*See* Doc. 202 at Ex. M at 4:35 PM).

29. During her time working as a bus monitor for District 303 and prior to the occurrence involving Corban, Karnick never experienced any other occasion where a wheelchaired student became unsecured. **Pltf. Ex. D (Karnick Dep.) 84:24-90:13-19.**

**RESPONSE:** Not in dispute.

30. Karnick stated that, based on her training, the shoulder strap was to be fastened. and if she had known the shoulder strap was not secure prior to the subject incident, she would have gotten up and secured it. **Pltf. Ex. D (Karnick Dep.) 50:22-51:2; 83:20-85:10.** She did not recall that she had any difficulty with the shoulder strap on the date of the incident. **Pltf. Ex. D (Karnick Dep.) 88:16-18.**

**RESPONSE:** Plaintiffs dispute that Karnick did not know the shoulder strap was secured as she attempted to secure it and released it without doing so. (*See* Doc. 202 at Ex. M at 3:47 PM – 3:49 PM).

31. District 303's buses are inspected by the State of Illinois at a frequency that is determined by the mileage of the bus and documented by a sticker on the windshield. **Pltf. Ex. C (Primdahl Dep.) 81:12-82:83:9.** The driver also inspects the bus and its safety equipment daily. **Pltf. Ex. C (Primdahl Dep.) 59:14-60:2, 84:5-17.**

**RESPONSE:** Not in dispute.

32. In Primdahl's experience, a tie-down system has never malfunctioned before, but they have been replaced for maintenance. **Pltf. Ex. C (Primdahl Dep.) 58:18-60:2.**

**RESPONSE:** Not in dispute.

Dated: March 31, 2025

Respectfully submitted,

CHRISTIN P. PEARSON, individually and as Guardian of the Estate of CORBAN PEARSON, and LISA A. PEARSON, individually and as co-Guardian of the Estate of CORBAN PEARSON.

By: */s/ Bryan W. White*
One of Plaintiffs' Attorneys

James J. O'Hagan (ARDC # 2094754)
Kevin M. O'Hagan (ARDC # 6211446)
Bryan W. White (ARDC # 6307312)
Nitika Suchdev (ARDC # 6342824)
O'HAGAN MEYER LLC
One E. Wacker Dr., Suite 3400
Chicago, Illinois 60601
PH: 312.422.6100
FX: 312.422.6110
johagan@ohaganmeyer.com
kohagan@ohaganmeyer.com
bwhite@ohaganmeyer.com
nsuchdev@ohaganmeyer.com

Sam L. Amirante (ARDC # 0043249)
AMIRANTE LAW OFFICES, P.C.
770 Lee Street, Suite 201
Des Plaines, Illinois 60016
PH: 847.934.7444
FX: 847.934.7474
amirantelawoffices@gmail.com

## CERTIFICATE OF SERVICE

This is to certify that on March 31, 2025, I electronically filed **Plaintiffs' Response to District Defendants' Statement of Additional Facts** with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

*/s/Bryan W. White*
James J. O'Hagan (ARDC # 2094754)
Kevin M. O'Hagan (ARDC # 6211446)
Bryan W. White (ARDC # 6307312)
Nitika Suchdev (ARDC # 6342824)
O'HAGAN MEYER LLC
One E. Wacker Dr., Suite 3400
Chicago, Illinois 60601
PH: 312.422.6100
FX: 312.422.6110
johagan@ohaganmeyer.com
kohagan@ohaganmeyer.com
bwhite@ohaganmeyer.com
nsuchdev@ohaganmeyer.com

Sam L. Amirante (ARDC # 0043249)
AMIRANTE LAW OFFICES, P.C.
770 Lee Street, Suite 201
Des Plaines, Illinois 60016
PH: 847.934.7444
FX: 847.934.7474
amirantelawoffices@gmail.com