**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

CHRISTIN P. PEARSON, et al.,

Plaintiffs,

v.

COMMUNITY UNIT SCHOOL DISTRICT 303, et al.,

Defendants.

COMMUNITY UNIT SCHOOL DISTRICT 303, et al.,

Third-Party Plaintiffs,

v.

UNITED SEATING AND MOBILITY, LLC a Missouri Limited Liability Company, d/b/a NUMOTION,

Third-Party Defendant.

UNITED SEATING AND MOBILITY, LLC a Missouri Limited Liability Company, d/b/a NUMOTION,

Defendant / Third-Party Defendant / Cross-Plaintiff,

COMMUNITY UNIT SCHOOL DISTRICT 303, et al.,

Defendant / Third-Party Plaintiffs / Cross-Defendant.

Case No.: 1:20-cv-05096

Honorable John Robert Blakey

**NUMOTION'S REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGEMENT PURSUANT TO RULE 56(a)**

NOW COMES, Defendant/Third-Party Defendant/Cross-Plaintiff, UNITED SEATING AND MOBILITY, LLC, a Missouri Limited Liability Company, d/b/a NUMOTION ("Numotion"), by and through its counsel, NIELSEN, ZEHE & ANTAS, P.C., and for its Reply Memorandum of Law in support of Numotion's Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56(a), sets forth the following:

## I. **INTRODUCTION**:

Plaintiffs' Response brief merely reinforces the strength of each of the grounds advanced in Numotion's Summary Judgment Motion. Plaintiffs have framed the claims against Numotion as a product liability suit alleging "negligent design" and a parallel claim for "negligence", but the requisite elements of a negligent design claim needed to "get to the jury" are missing.

Furthermore, after conceding that their own Rule 26(a)(2)(a) expert admitted that Numotion was not the cause-in-fact or proximate cause of the alleged incident, Plaintiffs now want to adopt Defendant School District's experts, well after the close of discovery in September 2024. However, Plaintiffs are at an inopportune time to abandon their chosen expert. Importantly, Plaintiffs' attempt to claim undisclosed experts wholly fail to meet the requirements of Rule 26.

Plaintiffs' Response lacks supporting citation to the record, as well as citations to supporting law. Thus, Plaintiffs' unsupported arguments fail to create an issue of fact where none exists. Moreover, Plaintiffs have failed to address Numotion's Statement of Facts and, as such, these facts should be deemed admitted.[1] Additionally, Plaintiffs' Response fails to address substantive arguments raised in Numotion's Motion for Summary Judgment, which should

[1] See *Garber v. Amazon.com, Inc.*, 380 F. Supp. 3d 766 *770, 2019 U.S. Dist. LEXIS 54869 **3 (N.D. Ill. 2019) (citing Fed. R. Civ. P. 56(e)(2)) ("[T]he Court may…consider the fact undisputed for purposes of the motion.").

likewise be deemed waived.[2] For these reasons and as fully set forth herein, Numotion's Motion for Summary Judgement should be granted.

## II. LEGAL ARGUMENT:

### A. Plaintiffs Fail to Meet the Requirements for a Negligent Design Case:

Plaintiffs' Response, like the negligent design claim itself, misses the forest for the trees as it is improperly aimed against a non-manufacturer of the Subject Wheelchair. The Response further fails to address the law set forth by Numotion and cites only one decision, *Jablonksi v. Ford Motor Co.,* 955 N.E.2d 1138 (ILSC 2011). However, in *Jablonski*, it was held that "the key question in a negligent-design case is whether the *manufacturer* exercised reasonable care in designing the product." *Id.* at 1154 (Emphasis Added). Additionally, even should the negligent design properly lie against a non-manufacturer such as Numotion – which it does not – Plaintiffs fail to support their claim with the requisite support. In a tacit concession that Corban's electric wheelchair meets "all relevant industry standards", Plaintiffs contend that "conformance to industry standards is relevant, but not dispositive on the issue of negligence." Doc. #228, pg. 3.

Indeed, the uncontroverted record is that Corban's wheelchair was developed, designed and manufactured by Permobil (not Numotion) in conformance with all industry standards. Support wheels (a/k/a anti-tip supports) are not designed or intended to play a role in vehicular wheelchair transport of an occupant. SOF #3.[3] The design standards relating to safety of wheelchairs permitted to be used as a car seat do not even reference support wheels. SOF #56. Pursuant to Section 19 of the industry standards of Rehabilitation Society of North America

---

[2] For example, Plaintiff fails to address Numotion's duty argument, which should be deemed waived. (*See* Doc #190, pg. 15)

[3] This Reply Brief refers to Numotion's Statement of Facts (Doc. #188) as "SOF" and refers to Numotion's Memorandum of Law (Doc. #190) as "MOL". Numotion also references exhibits to the MOL with the same designation used in the MOL.

("RESNA"), to qualify as a wheelchair safe for use during transport in a motor vehicle, the manufacturer does not need to include support wheels. SOF #56, #58. Support wheels are not required because support wheels are not critical to performance in the context of vehicular transport (SOF #59) and there is no benefit added to a properly restrained wheelchair. SOF #61. Moreover, RESNA testing has experienced support wheels coming off during crashes and heavy breaking events and creating a risk of becoming a projectile on the bus. SOF #62. Thus, the only known incidental role of support wheels in a crash is that support wheels can create a potential danger by braking in a crash. SOF #62.

The record demonstrates that optional support wheels were developed by Permobil for a potential role in the operation (i.e., use) of an electric wheelchair by the user. However, the Permobil User's Manual for the subject Corpus F3 at page 26 provided that support wheels are "optional" if the user weighs less than 200 lbs. and the speed package of the wheelchair is reduced to 5 mph or less. SOF #45, #69, #77; *see also* Ex. 14. At all times prior to and at the time of the alleged occurrence, Corban and his Wheelchair met the criteria for optional exclusion of support wheels. (*See* SOF #3 and Doc. #190, footnote 4 at pg. 11). The F3 Corpus User Manual provides that front support wheels provide extra stability when operating the wheelchair over obstacles, at certain speeds, and on inclines. SOF #55; *see also* Group Ex. 13, which explains the use of optional support wheels for some possible operating conditions. Thus, there is no evidence that Corban required support wheels even when operating his wheelchair.

The Permobil User's Manual provides: "Dear Permobil Owner… Before you begin using your wheelchair, it is important that you read and understand the content of these operating instructions and in particular the Safety Instructions." SOF #66, #67; *see also* Group Ex. 15. The Pearson's ordered the wheelchair through Rush University and went to Rush several times to be

fitted, followed by a representative coming to their house to show them how to use the subject wheelchair, and to ensure that Plaintiffs were knowledgeable and comfortable with its operation. SOF #54. Dr. Shah, a rehabilitation physician at Rush and Mr. Cingano discussed with the Pearsons the fit, function and options for the subject wheelchair. See SOF #74-76.

The Permobil User's Manual provides great detail concerning the intended function of support wheels and when support wheels are required versus optional, as in Corban's case. See SOF #35, 43, 45, 55, 66-71. Mrs. Pearson agreed that she received the Permobil User's Manual. SOF #54. Mrs. Pearson also signed and initialed a form which allowed her to decline the option of support wheels. SOF #72.

Plaintiff claims, without citation, that Permobil did not make appropriate recommendations concerning support wheels. Doc. #228, pg. 3. Mr. Cingano testified that he had no disagreements with the Pearsons' decision to forego support wheels. Doc. #188, SOF #74-76.

There are obviously technical reasons behind Permobil's conclusion that support wheels are optional for users who weigh less than 200 pounds and have a reduced speed package limited to less than 5 mph. Plaintiff's never sought this information from the manufacturer. That said, Plaintiff does not have an expert who will explain why Permobil, the wheelchair manufacturer, states that support wheels are safely optional for users who weigh less than 200lbs and have a drive package limited to less than 5mph. In fact, no party to this lawsuit has challenged this technical conclusion from Permobil's User Manual. Similarly, Plaintiffs have made no actual criticism of the Permobil wheelchair design. *See Thornton*, 796 F.3d at 772 (quoting *Salerno v. Innovative Surveillance Tech. Inc.*, 402 Ill. App. 3d 490 (Ill. App. Ct. 2010) ("The threshold question is not whether the product could have made safer, but whether it is dangerous because it fails to perform in the manner reasonable to be expected in light of its nature and intended function."). As set forth

above, the intended function of support wheels has nothing to do with safety transporting a wheelchair occupant in a vehicle.

Nonetheless, Plaintiffs again turn to *Jablonski,* but ignore the proper context for the requirement that, "[t]he duty owed is to produce a reasonably safe product". *See* Resp. pg., 3. Again, *Jablonski* actually instructs that, "[a] manufacturer has a nondelegable duty to design a reasonably safe product. (citation omitted.) Thus, the key question in a negligent-design case is whether the manufacturer exercised reasonable care in designing the product." *Jablonski*, 955 N.E.2d at 1153, **83. Plaintiffs have no criticism of the design and have failed to sue the manufacturer in any event.

All told, Plaintiffs have no expert who can demonstrate the "standard of care" or a breach thereof related to the technical aspects of the Permobil wheelchair. In other words, notwithstanding the actual intended purpose of support wheels, Plaintiff cannot refute Permobil's conclusion as the designer and manufacturer of the Subject Wheelchair that support wheels are optional for a patient such as Corban by way of expert testimony.

This is also fatal to Plaintiffs' claim as expert testimony is required to establish that a product is defective or unreasonable dangerous. *Thornton v. M7 Aerospace LP*, 796 F. 3d 757, 771, 2015 U.S. App. LEXIS 13759, **35. The Seventh Circuit instructs that Illinois courts recognize that "[p]roducts liability actions ... often involve specialized knowledge or expertise outside the layman's knowledge" and so may require expert testimony. *Kirk v. Clark Equip. Co.,* 991 F.3d 865, 878 (7th Cir. 2021)(quoting *Baltus v. Weaver Div. of Kidde & Co.,* 199 Ill. App. 3d 821, 557 N.E.2d 580, 588-89, 145 Ill. Dec. 810 (Ill. App. Ct. 1990)); *see also Show v. Ford Motor Co.,* 659 F.3d 584, 585 (7th Cir. 2011) ("Several intermediate appellate decisions in Illinois say that expert testimony is vital in design-defect suits when aspects of a product's design or operation

are outside the scope of lay knowledge."). Accordingly, the *Kirk* court held that while "there might be some products that are so simple that no expert is needed to tell people how to use them," cases involving specialized or complex products "can[not] be resolved exclusively on the basis of common experience" and require "expert testimony for this critical element of [a plaintiff's] case (i.e. what design(s) would have been acceptable)." *Id*. at 878 (alterations in original) (citing *Clark v. River Metals Recycling, LLC*, 929 F.3d 434, 440 (2019) (affirming summary judgment when plaintiff lacked expert testimony on whether a car crusher had an unreasonably defective design that caused plaintiff's slip-and-fall injury)); *see also Show v. Ford Motor Company*, 659 F.3d 584, 588 (7th Cir. 2011) (affirming summary judgment when plaintiff lacked expert testimony regarding whether car had a design defect that rendered it unstable and caused it to roll over); *Henry v. Panasonic Factory Automation Co.,* 396 Ill. App. 3d 321 (Ill. App. Ct. 2009) (affirming summary judgment when plaintiff lacked expert testimony on whether an industrial machine was unreasonably dangerous); *Fulton v. Theradyne Corp.,* 2007 U.S. Dist. LEXIS 21947, 2007 WL 772953, at *4 (N.D. Ill. Mar. 12, 2007) (granting summary judgment on design defect claim when the plaintiff failed to present admissible expert evidence regarding the design of a medical device).

The *Kirk* court likewise affirmed summary judgment, reasoning that, "our review begins and ends with design defect." *Kirk*, 991 F. 3d at 877. In doing so, the *Kirk* court held that plaintiff needed expert testimony to prove that the product's design rendered it unreasonably dangerous. *Id*. at 878-79. Like *Kirk* and the line of precedent cited therein, there is no basis here to omit the requirement that Plaintiffs have a design expert to opine on the specifics of the flawed design and Plaintiffs do not argue otherwise. Plaintiffs have disclosed an expert, but Mr. Hicks did not challenge Permobil's User Manual. Numotion's expert, Miriam Manary, explained that support

wheels play no role in the transport of a wheelchair when being used as a car seat on a school bus. (SOF #56-59, 61-62).

Therefore, because Plaintiffs' have improperly pleaded this cause of action against a non-manufacturer, and because even if it was properly against Numotion, Plaintiffs have failed to support their claims with the requisite expert support and necessary proof, summary judgment it warranted.[4]

**B. Plaintiffs have Failed to Disclose a New Rule 26(a)(2)(A) Expert:**

Plaintiffs' Response brief admits that their sole engineering expert, Mr. Hicks, failed to establish cause-in-fact and proximal cause. That is to say that Mr. Hicks testified that he determined that support wheels would not have provided the incidental role of preventing Corban's occurrence. Doc. #190, pg. 9-10 (Emphasis added). Support wheels are connected on the wheelchair such that they are positioned well-above the ground or floor surface. *See* Group Ex. 13. Mr. Hicks explained that the momentum of the bus braking event would have necessarily tipped the wheelchair forward enough until support wheels, if present, would actually engage the floor of the bus. SOF #39. According to the testimony of Mr. Hicks, **"it's more likely than not that all things staying the same where the wheelchair tipped over anyway, I don't think the anti-tip wheels would have made a difference.."** SOF #39 (Emphasis added). Mr. Hicks further explained that **"The fundamental issue is physics. So when the braking occurred, it was enough momentum of Corban and his wheelchair upwards of going on 500 pounds combined. That's a lot of momentum at whatever speed they were going.** SOF #38 (Emphasis added).

---

[4] Following entry of summary judgment, Numotion will move for dismissal of the contribution claim made by the School District. See *Enblom v. Milwaukee Golf Dev*., 227 Ill. App. 3d 623, 592 N.E. 2d 190, **194 (1992) (When the potential for tort liability against the Defendant is extinguished, there can no longer be a basis for contribution against the Defendant.)

Mr. Hicks explained that the wheelchair tipped forward before any support wheels would have contacted the bus floor. SOF #38-39. At the time, the shoulder restraint system for Corban was not attached by the bus attendants to hold Corban in the wheelchair. SOF #21, 30-31.

In a desperate measure to avoid summary judgment, Plaintiffs now ask the Court to permit them to call in Plaintiffs' case-in-chief the School District's expert, Mr. Toomey, to contradict Plaintiffs' chosen expert on causation. In this regard, Plaintiff is forced to admit to the Court that, **"While it is true that Plaintiffs' expert did not reach this conclusion [i.e., did not establish causation], the question at this stage of the litigation is whether a question of fact exists."** (Emphasis added) (Doc. #228. pg. 6). Plaintiffs fail to appreciate what is being asked of the Court. To be clear, Plaintiffs, who are the proponent calling Rule 26 (a)(2)(A) Mr. Hicks, now asks the Court's permission to call in Plaintiffs' case-in-chief, Defendant School District's expert to directly contradict Plaintiffs' chosen retained expert. (Doc. #228, pg. 2) At a minimum, such an untoward maneuver would confuse the jury irreparably and should not be countenanced.

For good measure, Plaintiffs also ask permission to adopt another expert of the Defendant School District, Mr. Goebel. However, Plaintiff never disclosed either expert of the Defendant School District pursuant to Rule 26(a)(2)(A). Plaintiff cites only to a Rule 26(a)(1)(A) disclosure issued on January 11, 2024. (Doc. #228, pg., 2 and Plaintiff's Additional SOF, Para 30). The referenced disclosures is not a Rule 26(a)(2)(A) disclosure and makes ***no*** mention of Mr. Toomey or Mr. Goebel. *See id* (Emphasis added).

All witnesses who are to give expert testimony under the Federal Rules of Evidence must be disclosed under Rule 26 (a)(2)(A). *Musser v. Gentiva Health Servs*. 356 F.3d 751, 756 (7th Cir. 2004). In *Musser*, the plaintiff asserted that it would have "been a pointless formality to disclose in writing a list of names of persons already known" through prior discovery because the witnesses

were physicians whose records had been produced. *Id*. The Seventh Circuit held otherwise finding that formal disclosure of experts is not pointless. *Id*. These two individuals – Mr. Hicks and Mr. Goebel – have never been disclosed as Rule 26(a)(2)(A) witnesses by Plaintiffs and certainly not before discovery was closed. *See* Doc. #160, pg. 2; *see also* Doc. #190, pg. 2 footnote #3.

The Seventh Circuit held similarly in *Karum Holdings LLC v. Lowe's Cos*. that "[t]he plain meaning of Rule 26(a)(2) demands a formal designation for expert disclosures." 895 F.3d 944 (7th Cir. 2018). Plaintiffs never expressly disclosed Mr. Toomey or Mr. Goebel, even in the referenced Rule 26(a)(1)(A) supplement. *Musser* and *Korum* would find such a disclosure inadequate in any event.

Fed. R. Civ. P. 37(c)(1) provides that exclusion of nondisclosed evidence is automatic and mandatory unless non-disclosure was justified or harmless. *See Musser*, 356 F.3d at 758. *16. Plaintiffs' failure to disclose Mr. Toomey and Mr. Goebel is neither justified nor harmless. Plaintiffs' Response brief cuts and pastes portions of the Rule 26 report of Mr. Goebel's report, which Plaintiff possessed since June 14, 2024, months before expert discovery closed on September 15, 2005. Doc. #146.[5] Similarly, Plaintiffs possessed the report of Mr. Toomey since June 14, 2024, again months before discovery closed. Plaintiffs waited until the eleventh hour of filing the Response in a desperate attempt to stave off Numotion's well founded Motion for Summary Judgement. If Plaintiffs really wanted these experts, in addition to their ten other Rule 26(a)(2)(A) experts, Plaintiffs should have made a supplemental Rule 26(a)(2)(A) disclosure in conjunction with receiving the Toomey and Goebel reports in June 2024. Plaintiff's had actual knowledge in April 2024 when they published Mr. Hicks' Rule 26 report that he refused to support

[5] Plaintiff cannot rely upon unverified hearsay reports at this juncture in any event. *See Estate of Williams v. Ind. State Police*, 2014 U.S. Dist. LEXIS 79299, *37-38.

Plaintiffs' causation claim. Plaintiffs have waited almost one year before attempting to repair the problem fatal to their case.

Another significant aspect of prejudice is that Numotion expended large sums preparing this Motion For Summary Judgment. Equally important is the prejudice occasioned by the tactic Plaintiffs are asking this Court to endorse. Plaintiffs are the proponent of Rule 26(a)(2)(A) expert, Mr. Hicks, who will be called to satisfy Plaintiffs' burden of proof. Either on direct examination or on cross-examination, Mr. Hicks will most certainly be asked to give his causation opinions.

Plaintiffs' Response brief, however, asks the Court to permit the calling of Mr. Toomey still in Plaintiffs' case-in-chief to contradict and rebut Mr. Hicks's causation opinions. (*See* Doc. #228, pg. 2, 6). The evidentiary issue is substantial and not trivial in that it goes to the core of Plaintiffs' burden of proof. This should not be allowed. At a minimum, this would substantially confuse the jury and prejudice Numotion.

Finally, on the issue of prejudice inured to Numotion, had Numotion known that Plaintiffs intended to use Mr. Toomey, a *Daubert* challenge would have been made as to Mr. Toomey's claim., The record is uncontroverted that Corban's wheelchair tipped forward well before support wheels would have engaged the floor of the bus. Doc. #188, SOF #30-33, 37-39.

**C. <u>Judicial Estoppel Prevents Plaintiff From Offering Contradictory Opinions to the Jury</u>:**

Judicial estoppel is a doctrine distinct from the *res judicata* doctrines of claim and issue preclusion. *New Hampshire v. Maine,* 532 U.S. 742, 745 (2001). "The purpose of the doctrine is to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *Id.* Courts have recognized that the circumstances under which judicial estoppel may appropriately be invoked are not reducible to any general formulation. *Id.* Factors generally considered include prejudice, whether the party

gained an unfair advantage and whether the new position taken is clearly inconsistent with the earlier position. *Id.*

In the matter before the Court, there is no question that Plaintiff's has advanced directly inconsistent positions. Mr. Hicks, in his report and testimony, asserted that his analysis and conclusion is that the inclusion of support wheels would not have prevented Corban's accident. MOL Pg. 8-9. Plaintiffs now seek to abandon that position in favor of calling the Defendant School District's expert in their case-in-chief to assert that support wheels would have prevented the accident. Resp. pg. 2, 6. At the close of discovery, Numotion properly concluded that summary judgment would be granted on causation alone because Mr. Hicks refuted causation. Thus, to allow Plaintiffs' maneuver would create both prejudice and an unfair advantage. Judicial estoppel is a doctrine to prevent what Plaintiff is attempting to accomplish. One would be hard pressed to find a better example "of changing positions according to the exigencies of the moment."

**D. Plaintiff's Position on Causation Still Falls Short:**

Plaintiffs' dilatory and unsupported request to be awarded use of the experts of the School District nonetheless falls short concerning the requisites of causation. Plaintiffs contend that "[t]hese witnesses directly refute the position taken by Numotion that … the effect anti-tip wheels could have had on the alleged occurrence." Doc. #190, pg. 2. Such a claim is not enough to get to a jury.

*Thornton,* 796 F.3d at 769 (No basis to infer that GPS charts "probably contributed" to air crash).

**E. Plaintiffs Fail to Address Ms. Green's Criminal Conduct:**

Finally, Plaintiffs failed to offer any argument to countervail Numotion's position that it did not owe a duty to protect against the third-party criminal acts of Ms. Green for which she was criminally prosecuted and found guilty. See Doc. #190, pg. 15. Accordingly, as a matter of

law, both the negligence and negligent design claims must fail as Plaintiff cannot establish that Numotion owed Corban a duty to protect against Ms. Green's criminal conduct.

**CONCLUSION:**

For the reasons set forth in Numotion's Motion for Summary Judgment, the MOL and this Reply brief, summary judgement should be granted in favor of Numotion and against Plaintiffs. As set forth above, Numotion will hereafter be entitled to dismissal of the contribution claim.

Dated: March 31, 2025

Respectfully submitted,

*/s/ Paul Bozych* .
One of NUMOTION's Attorneys

Dominick W. Savaiano (ARDC No. 6181611)
Paul Bozych (ARDC No. 6199780)
Kyle H. Fleck (ARDC No. 6332222)
NIELSEN, ZEHE & ANTAS, P.C.
55. W. Monroe Street, Ste. 1800
Chicago, Illinois 60603
(312) 322-9900
dsavaiano@nzalaw.com
pbozych@nzalaw.com
kfleck@nzalaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this 31st day of March, 2025, I electronically filed the foregoing Reply with the Clerk of Court using the CM/ECF system which will send notification of such filing to all registered participants.

*/s/Paul Bozych*______________________