**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CHRISTIN P. PEARSON, on his own and on Behalf of his minor child, CORBAN PEARSON; And LISA PEARSON, on her own and on behalf Of her minor child, CORBAN PEARSON, | ) | |
| Plaintiffs | ) | |
| v. | ) | CASE NO. 1:20-CV-05096 |
| COMMUNITY UNIT SCHOOL DISTRICT 303, ANTOINETTE L. GREEN, PAM KARNICK, TERRY PRIMDAHL, and UNITED SEATING AND MOBILITY, L.L.C., a Missouri limited liability company, d/b/s NUMOTION | ) | Honorable John Robert Blakey |
| Defendants. | ) | |
| COMMUNITY UNIT SCHOOL DISTRICT 303 And TERRY PRIMDAHL, | ) | |
| Third Party Plaintiffs | ) | |
| v. | ) | |
| UNITED SEATING AND MOBILITY, LLC., A Missouri limited liability company, d/b/a NUMOTION, | ) | |
| Third Party Defendant | ) | |

**DEFENDANT/THIRD-PARTY DEFENDANT, NUMOTION, INC.'S RESPONSE TO PLAINTIFFS' STATEMENT OF ADDITIONAL UNDISPUTED MATERIAL FACTS**

Defendant and Third-Party Defendant Numotion, Inc. (collectively "Defendant" or "Numotion") hereby sets forth the following Response to Plaintiffs' Statement of Undisputed Materials Facts:

1. **FACT**: In the approximately nine years that Antionette Green worked as a bus driver for the school district, she never received any training on how to secure a wheelchair into a bus.

**CITATION**: Deposition Transcript of Antoniette Green (Exhibit A) at 23:20-24.

**RESPONSE: Admitted.**

2. **FACT**: Neither the bus driver (Green) nor the aide (Karnick) supervises one another.

**CITATION**: Deposition Transcript of Terry Primdahl (Exhibit B) at 101:22 to 102:4.

**RESPONSE: Admitted.**

3. **FACT:** As depicted in the video of the occurrence, at 19:30, Pam Karnick told Antionette Green to be careful going around corners.

**CITATION**: Deposition Transcript of Antoniette Green (Exhibit A) at 69:7 to 71:2. Video at timestamp 3:50:35.

**RESPONSE: Admitted.**

4. **FACT**: While traveling on the school bus, Green slammed on the brakes, and Corban's chair tipped over and fell forward on top of him.

**CITATION:** Deposition Transcript of Pam Karnick (Exhibit C) at 53:1-19. Video at timestamp 4:16:02.

**RESPONSE: Numotion objects to the vague and ambiguous use of the phrase "tipped over," but otherwise admits that the wheelchair tipped forward.**

5. **FACT**: While the wheelchair was on top of Corbin, Green and Karnick pulled at Corbin's body and the chair attempting to get him in an upright position without calling any emergency services.

**CITATION**: Video at timestamp 4:16:11 through 4:22:21[1].

**RESPONSE: Admitted.**

6. **FACT**: Green can be heard admitting that all of the wheels on Corban's wheelchair couldn't have been strapped stating, "They couldn't have Pam because those things lock on the floor", "I done drove a special needs route", and "they don't move because they lock."

**CITATION**: Video at timestamp 4:22:09. Video at timestamp 4:27:20 through 4:27:40.

**RESPONSE: Admitted.**

7. **FACT:** Green began driving the bus to drop another child home before calling 911 and without Corbin properly sitting and secured in his wheelchair.

**CITATION**: Video at timestamp 4:22:43.

**RESPONSE: Admitted.**

8. **FACT**: While still driving and without calling for emergency services, Green can be heard admitting that Corbin "can't sit like that" and that emergency services should be called.

**CITATION**: Video at timestamp 4:25:53 through 4:25:56.

**RESPONSE: Admitted.**

9. **FACT:** Green slammed on the brakes a second time, and Corban's chair tipped forward a second time while traveling on the school bus.

**CITATION:** Deposition Transcript of Pam Karnick (Exhibit C) at 70:8-14. Video at timestamp 4:28:07.

**RESPONSE: Admitted.**

10. **FACT:** After Corbin's wheelchair fell forward on him a second time, Karnick can be heard exclaiming, "You just slammed the brakes hard!"

**CITATION**: Video at timestamp 4:28:55.

**RESPONSE: Admitted.**

11. **FACT:** It wasn't until more than thirteen (13) minutes after Corban's chair tipped over the first time, that 911 was called.

**CITATION**: Video at timestamp 4:29:45.

**RESPONSE: Numotion objects to the vague and ambiguous use of the phrase "tipped over," but otherwise admits.**

12. **FACT**: As Green and Karnick's direct supervisor, Primdahl did not evaluate either of them in any way.

**CITATION**: Deposition Transcript of Terry Primdahl (Exhibit B) at 28:17-24 to 29:1-10.

**RESPONSE: Admitted.**

13. **FACT:** Primdahl testified that the staff didn't follow protocol when Green continued to drive as Corban was not fully in his wheelchair.

**CITATION**: Deposition Transcript of Terry Primdahl (Exhibit B) at 110:22 to 111:1.

**RESPONSE: Admitted.**

14. **FACT:** Green was placed on "unpaid suspension due to her failure to appropriately provide for the safe transport of a student on her bus and that the student was severely injured due to her failure to attach the wheelchair to the floor of the bus and failure to use the bus seatbelt."

**CITATION**: Deposition Transcript of Terry Primdahl (Exhibit B) at 120:1-17.

**RESPONSE: Admitted.**

15. **FACT:** Plaintiffs' expert, Timothy Schoolmaster, testified that the School District failed to properly train its employees because: Green claimed that she had never been trained in transporting special needs student; the most recent ride-along observation form from 4/5/16 has the lines for special education crossed out; the one before on 8/17/13 has special education crossed out

and NA written over the lines; and the one from 2011 is also crossed out and marked NA.
**CITATION:** Deposition Transcript of Timothy Schoolmaster (Exhibit D) at 35:16-24 to 36:1-9.

**RESPONSE: Admitted.**

16. **FACT:** Timothy Schoolmaster testified that the one-page pre-ride checklist for the transporting of special needs students was insufficient to accomplish the safe transportation goal of special needs students.

**CITATION:** Deposition Transcript of Timothy Schoolmaster (Exhibit D) at 41:21-44:5.

**RESPONSE: Admitted.**

17. **FACT:** Timothy Schoolmaster testified that there is no evidence that the District followed all industry standards of training.

**CITATION:** Deposition Transcript of Timothy Schoolmaster (Exhibit D) at 40:22 to 41:1-8.

**RESPONSE: Admitted.**

18. **FACT:** Before the accident, Corban loved to ride the bus and was being transported by school bus for many years.

**CITATION:** Deposition Transcript of Lisa Pearson (Exhibit E) at 72:20 to 73:20.

**RESPONSE: Numotion objects on the basis that the proposed fact is not material in any respect to Numotion's Motion for Summary Judgment.**

19. **FACT:** Since the subject accident, Corban will not travel on the school bus, and any time you talk about the accident or anything related to possibly go on a school bus, he will "freak out."

**CITATION**: Deposition Transcript of Lisa Pearson (Exhibit E) at 48:24 to 51:17.

**RESPONSE: Numotion objects on the basis that the proposed fact is not material in any respect to Numotion's Motion for Summary Judgment.**

20. **FACT:** The bus accident caused Corban's post-traumatic stress disorder (PTSD).

**CITATION:** Deposition Transcript of Parag Merai (Exhibit F) at 82:7-10.

**RESPONSE: Numotion objects on the basis that the proposed fact is not material in any respect to Numotion's Motion for Summary Judgment.**

21. **FACT:** Corban's increased anxiety and the PTSD caused by the bus accident prevented Corban from returning to school at all in the six months after the accident.

**CITATION:** Deposition Transcript of Parag Merai (Exhibit F) at 82:3-10.

**RESPONSE: Numotion objects on the basis that the proposed fact is not material in any respect to Numotion's Motion for Summary Judgment.**

22. **FACT:** A year and three months after the bus accident, Corban still had anxiety with traveling.

**CITATION:** Deposition Transcript of Parag Merai (Exhibit F) at 52:2-11.

**RESPONSE: Numotion objects on the basis that the proposed fact is not material in any respect to Numotion's Motion for Summary Judgment.**

23. **FACT:** Gerald Goebel testified that in the wheelchair industry, the applicable standard of care requires that every available option be discussed with the client and caregiver.

**CITATION:** Deposition of Gerald Goebel (Exhibit G) at 77:8-16.

**RESPONSE: Numotion objects on the basis that the proposed fact is not material in any respect to Numotion's Motion for Summary Judgment.**

24. **FACT:** Daniel Toomey testified that the testing that was performed to determine that anti-tip wheels would have prevented the occurrence.

**CITATION:** Deposition of Daniel Toomey (Exhibit H) at 112-120.

**<u>RESPONSE</u>: Numotion objects on the basis that the proposed fact is not material in any respect to Numotion's Motion for Summary Judgment. Numotion also objects based upon foundation and *Daubert*.**

25. **<u>FACT:</u>** Daniel Toomey opined that based on his understanding of physics and the deceleration of the bus, the anti-tip wheels would have prevented the wheelchair from tipping over at the time of the alleged occurrence.

**<u>CITATION:</u>** Deposition of Daniel Toomey (Exhibit H) at 147:11-21.

**<u>RESPONSE</u>: Numotion objects on the basis that the proposed fact is not material in any respect to Numotion's Motion for Summary Judgment. Mr. Toomey is not Plaintiff's expert. Numotion also objects based upon foundation and *Daubert*, and concerning the vague and ambiguous use of "tipping over."**

26. **<u>FACT:</u>** Daniel Toomey drafted a report that contained the following conclusion: "the rearward acceleration of the bus that caused Corban Pearson's wheelchair to tip forward was minor. Had the subject wheelchair been equipped with anti-tip support wheels, they would have likely prevented the subject wheelchair from tipping forward."

**<u>CITATION</u>**: Daniel Toomey Report (Exhibit H) at p. 15.

**<u>RESPONSE</u>: Numotion objects on the basis that the proposed fact is not material in any respect to Numotion's Motion for Summary Judgment. Numotion also objects based upon foundation and *Daubert*, and hearsay. An unverified Rule 26 report does not constitute an evidentiary fact. See *Estate of Williams v. Ind. State Police*, 2014 U.S. Dist. LEXIS 79299, *37-38 (S.D. Ind.)**

27. **<u>FACT:</u>** Gerald Goebel drafted a report that contained the following opinion: "1. Corban Pearson presented for a seating/mobility evaluation on April 7, 2016. The form HFS

3701H Seating/Mobility Evaluation was completed and signed by David Cingano, ATP for Numotion. There is no evidence that a qualified medical professional, such as a PT, OT or other licensed/certified medical professional ("LCMP"), with expertise in wheelchair evaluations and no financial ties to the supplier, participated in this evaluation. The applicable standard of care set forth by the Illinois Department of Healthcare and Family Services ("IDHFS") requires documentation of a face-to-face, hands-on evaluation of the patient (in association with a mobility device specialist, e.g. ATP) by a licensed physiatrist or physical/occupational therapist.

**CITATION**: Gerald Goebel Report (Exhibit G) at p. 2.

**RESPONSE: Numotion objects on the basis that the proposed fact is not material in any respect to Numotion's Motion for Summary Judgment. Numotion also objects based upon foundation and hearsay. An unverified Rule 26 report does not constitute an evidentiary fact. See *Estate of Williams v. Ind. State Police*, 2014 U.S. Dist. LEXIS 79299, *37-38 (S.D. Ind.)**

28. **FACT:** Gerald Goebel drafted a report that contained the following opinion: "The documentation submitted by Numotion to order the Permobil F3 Corpus power wheelchair base fails to show that Numotion ATPs had any discussion with Corban or his family about the need for anti-tippers/support wheels. In fact, the anti-tippers section of form HFS 3701H was left blank. The IDHFS instructions for completing this form require that ***each item on the form must be addressed. T***he notation "N.A." should be used whenever appropriate. In addition, the Permobil F3 Corpus order form, effective from September 2015 through the date of the initial evaluation, lists an anti-tipper option prominently on page 2 and lists anti-tippers as an option when choosing a speed package. Numotion failed to consider anti-tippers for Corban Pearson's wheelchair, which would have been prompted multiple times during the completion of both the form HFS3701H and the Permobil order form."

CITATION: Gerald Goebel Report (Exhibit G) at p. 2.

**RESPONSE: Numotion objects on the basis that the proposed fact is not material in any respect to Numotion's Motion for Summary Judgment. Numotion also objects based upon foundation and hearsay. An unverified Rule 26 report does not constitute an evidentiary fact. See *Estate of Williams v. Ind. State Police*, 2014 U.S. Dist. LEXIS 79299, *37-38 (S.D. Ind.)**

29. **FACT:** Gerald Goebel drafted a report that contained the following opinion: "On October 6, 2017, a physical therapist (LCMP) and a Numotion ATP performed a collaborative evaluation of Corban Pearson's Permobil F3 Corpus power wheelchair to address modifications resulting from his physical growth. The Numotion ATP failed to note anything in the anti-tippers section of the form HFS 3701H, indicating that support wheels were not considered as modifications. The form HFS3701H and the Permobil F3 Corpus order form should have prompted Numotion ATPs to consider anti-tippers. Inexplicably, the Numotion ATP obtained a signed form from Lisa Pearson dated one day prior to the evaluation, October 5, 2017, indicating refusal of Anti-Tippers and Seat Belt/Pelvic Belt. This refusal occurred ***prior to the evaluation related to modifications*** and is immaterial to any recommendations made by a medical professional in the evaluation that took place the next day."

CITATION: Gerald Goebel Report (Exhibit G) at p. 2-3.

**RESPONSE: Numotion objects on the basis that the proposed fact is not material in any respect to Numotion's Motion for Summary Judgment. Numotion also objects based upon foundation and hearsay. An unverified Rule 26 report does not constitute an evidentiary fact. See *Estate of Williams v. Ind. State Police*, 2014 U.S. Dist. LEXIS 79299, *37-38 (S.D. Ind.)**

30. **FACT:** Plaintiffs issued their Supplemental Rule 26 Disclosures and put all parties on notice that it reserved the right to use any witness identified by any Defendant, deposed during this lawsuit, or identified in anyway during discovery during their case in chief.

**CITATION**: See Plaintiff's Supplemental Disclosures with Certificate of Service (Exhibit I) at p. 24.

**RESPONSE: Numotion objects on the basis that Plaintiff's proposed fact merely calls for a legal conclusion. Without waiver of this objects, Numotion denies that Plaintiff filed a timely or proper Supplemental Rule 26(a)(2)(A) as fully set forth in Numotion's Reply Brief in support of Summary Judgment.**

Respectfully Submitted,

NIELSEN, ZEHE & ANTAS, P.C.

By: */s/Paul Bozych*

Dominick W. Savaiano (ARDC No. 6181611)
Paul Bozych (ARDC No. 6199780)
Kyle H. Fleck (ARDC No. 6332222)
55 W. Monroe Street, Suite 1800
Chicago, Illinois 60603
(312) 322-9900
dsavaiano@nzalaw.com
pbozych@nzalaw.com
kfleck@nzalaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this 31st day of March, 2025, I electronically filed the foregoing Response with the Clerk of Court using the CM/ECF system which will send notification of such filing to all registered participants.

*/s/Paul Bozych*______________________