**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CHRISTIN P. PEARSON, individually and as Guardian of the Estate of CORBAN PEARSON; and LISA A. PEARSON, individually and as co-Guardian of the Estate of CORBAN PEARSON,<br><br>Plaintiffs,<br><br>v.<br><br>COMMUNITY UNIT SCHOOL DISTRICT 303, ANTOINETTE L. GREEN, PAM KARNICK, TERRY PRIMDAHL, and UNITED SEATING AND MOBILITY, L.L.C., a Missouri limited liability company, d/b/a NUMOTION,<br><br>Defendants.<br><br>COMMUNITY UNIT SCHOOL DISTRICT 303 and TERRY PRIMDAHL,<br><br>Third-Party Plaintiffs,<br><br>v.<br><br>UNITED SEATING AND MOBILITY, L.L.C., a Missouri limited liability company, d/b/a NUMOTION,<br><br>Third-Party Defendant | ) | Case No. 1:20-CV-05096<br><br>Honorable John Robert Blakey |

**DISTRICT DEFENDANTS' JOINT RESPONSE TO PLAINTIFFS' STATEMENT OF ADDITIONAL UNDISPUTED MATERIAL FACTS PURSUANT TO L.R. 56.1(b)(3)**

NOW COME Defendants, COMMUNITY UNIT SCHOOL DISTRICT 303, ANTOINETTE L. GREEN, and PAM KARNICK (hereinafter "District Defendants") by and through their respective attorneys, and in their Joint Response Plaintiffs' Joint Statement of

Additional Undisputed Material Facts pursuant to Judge Blakey's Standing Order and Local Rule 56.1(b)(3),

1. **FACT**: In the approximately nine years that Antionette Green worked as a bus driver for the school district, she never received any training on how to secure a wheelchair into a bus.

**CITATION**: Deposition Transcript of Antoniette Green (Exhibit A) at 23:20-24.

**RESPONSE**: Disputed. See Exhibit 6 to Terry Primdahl's deposition – Illinois School Bus Driver Training Curriculum (Bates D303_631-778).

2. **FACT**: Neither the bus driver (Green) nor the aide (Karnick) supervises one another.

**CITATION**: Deposition Transcript of Terry Primdahl (Exhibit B) at 101:22 to 102:4.

**RESPONSE:** Not disputed as to testimony of Terry Primdahl. However , See Exhibit 6 to Terry Primdahl's deposition – Illinois School Bus Driver Training Curriculum (Bates D303_ 760).

3. **FACT:** As depicted in the video of the occurrence, at 19:30, Pam Karnick told Antionette Green to be careful going around corners.

**CITATION**: Deposition Transcript of Antoniette Green (Exhibit A) at 69:7 to 71:2. Video at timestamp 3:50:35.

**RESPONSE:** Not disputed only as to the cited portions of the transcript and the video, which speak for themselves.

4. **FACT**: While traveling on the school bus, Green slammed on the brakes, and Corban's chair tipped over and fell forward on top of him.

**CITATION:** Deposition Transcript of Pam Karnick (Exhibit C) at 53:1-19. Video at timestamp 4:16:02.

**RESPONSE**: Disputed. Antoinette Green testified that she eased on the brakes at the moment Corban's chair flipped over. *See* Deposition Transcript of Antoniette Green, Ex. A to Plaintiffs' Additional Statement of Facts at 76:5–12; 116:5–23. Green confirmed that she authored the portion of the incident report indicating that she "eased" on the brakes. *Id.* at 118:7–10.

5. **FACT**: While the wheelchair was on top of Corbin, Green and Karnick pulled at Corbin's body and the chair attempting to get him in an upright position without calling any emergency services.

**CITATION**: Video at timestamp 4:16:11 through 4:22:21.

**RESPONSE**: Not disputed only as to the cited portion of the video, which speaks for itself.

6. **FACT**: Green can be heard admitting that all of the wheels on Corban's wheelchair couldn't have been strapped stating, "They couldn't have Pam because those things lock on the floor," "I done drove a special needs route", and "they don't move because they lock."

**CITATION**: Video at timestamp 4:22:09. Video at timestamp 4:27:20 through 4:27:40.

**RESPONSE**: Not disputed only as to the cited portions of the video, which speak for themselves.

7. **FACT:** Green began driving the bus to drop another child home before calling 911 and without Corbin properly sitting and secured in his wheelchair.

**CITATION**: Video at timestamp 4:22:43.

**RESPONSE**: Not disputed only as to the cited portion of the video, which speaks for itself.

8. **FACT**: While still driving and without calling for emergency services, Green can be heard admitting that Corbin "can't sit like that" and that emergency services should be called.

**CITATION**: Video at timestamp 4:25:53 through 4:25:56.

**RESPONSE:** Not disputed only as to the cited portion of the video, which speaks for itself.

9. **FACT:** Green slammed on the brakes a second time, and Corban's chair tipped forward a second time while traveling on the school bus.

**CITATION:** Deposition Transcript of Pam Karnick (Exhibit C) at 70:8-14. Video at timestamp 4:28:07.

**RESPONSE:** Disputed. Antoinette Green testified that she eased on the brakes at the moment Corban's chair flipped over. *See* Deposition Transcript of Antoinette Green, Ex. A to Plaintiffs' Additional Statement of Facts at 76:5–12; 116:5–23. Green confirmed that she authored the portion of the incident report indicating that she "eased" on the brakes. *Id.* at 118:7–10.

10. **FACT:** After Corbin's wheelchair fell forward on him a second time, Karnick can be heard exclaiming, "You just slammed the brakes hard!"

**CITATION**: Video at timestamp 4:28:55.

**RESEPONSE**: Not disputed only as to the cited portion of the video, which speaks for itself.

11. **FACT:** It wasn't until more than thirteen (13) minutes after Corban's chair tipped over the first time, that 911 was called.

**CITATION**: Video at timestamp 4:29:45.

**RESPONSE**: Not disputed only as to the cited portion of the video, which speaks for itself.

12. **FACT**: As Green and Karnick's direct supervisor, Primdahl did not evaluate either of them in any way.

**CITATION**: Deposition Transcript of Terry Primdahl (Exhibit B) at 28:17-24 to 29:1-10.

**RESPONSE**: Not disputed.

13. **FACT:** Primdahl testified that the staff didn't follow protocol when Green continued to drive as Corban was not fully in his wheelchair.

**CITATION**: Deposition Transcript of Terry Primdahl (Exhibit B) at 110:22 to 111:1.

**RESPONSE**: Not disputed.

14. **FACT:** Green was placed on "unpaid suspension due to her failure to appropriately provide for the safe transport of a student on her bus and that the student was severely injured due to her failure to attach the wheelchair to the floor of the bus and failure to use the bus seatbelt."

**CITATION**: Deposition Transcript of Terry Primdahl (Exhibit B) at 120:1-17.

**RESPONSE:** Disputed. Terry Primdahl was merely asked to confirm the contents of a letter sent to Antoinette Green. She testified, however, that she did not know why Antoinette Green was put on unpaid suspension. See Deposition Transcript of Terry Primdahl at 120:15-17.

15. **FACT:** Plaintiffs' expert, Timothy Schoolmaster, testified that the School District failed to properly train its employees because: Green claimed that she had never been trained in transporting special needs student; the most recent ride-along observation form from 4/5/16 has the lines for special education crossed out; the one before on 8/17/13 has special education crossed out and NA written over the lines; and the one from 2011 is also crossed out and marked NA.

**CITATION:** Deposition Transcript of Timothy Schoolmaster (Exhibit D) at 35:16-24 to 36:1-9.

**RESPONSE:** Disputed. Although the cited testimony of Schoolmaster speaks for itself, the evidence also demonstrates that District 303 provided ample training to its employees. District 303's bus drivers, including Green, complete mandated State of Illinois training to receive their school bus endorsement, and they also must receive an annual two-hour training certification, as mandated by the State of Illinois. *See* Plaintiffs' Statement of Additional Facts, Ex. B (Primdahl Dep.) at 27:15-22, 60:18-62:19; *Id.* at Ex. A (Green Dep.) 13:7-22, 17:3-15, 22:7-18. District 303 provides bus drivers with training relating to special education students, which follows the State's curriculum. *Id.* at Ex. B (Primdahl Dep.) at 65:2-17. The driver and bus monitor serve as double checks of each other, which ensures an additional safety check. *Id.* at 67:8-17. District 303 has

used an 83-page training aide, which is maintained in the normal course of business, to train bus drivers and bus monitors since August 2008. *See* Dfts. Mot. (Dkt. 202-8), Ex. G (Training Aide); Plaintiffs' Statement of Additional Facts, Ex. B (Primdahl Dep.) at 51:4-52:10. The Training Aide was in Green and Karnick's yearly folder with their bus route every year. *Id.*, Ex. B at 54:20-55:17. The Training Aide includes an article titled "Wheelchair Transport Safety," which states certain "dos" and "don'ts." Dfts. Mot. (Dkt. No. 202-8), Ex. G (Training Aide) at D303 564-565; Plaintiffs' Statement of Additional Facts, Ex. B (Primdahl Dep.) at 53:1-19.

16. **FACT:** Timothy Schoolmaster testified that the one-page pre-ride checklist for the transporting of special needs students was insufficient to accomplish the safe transportation goal of special needs students.

**CITATION:** Deposition Transcript of Timothy Schoolmaster (Exhibit D) at 41:21-44:5.

**RESPONSE:** Not disputed only as to the cited opinion rendered by Schoolmaster in his deposition, which speaks for itself.

17. **FACT:** Timothy Schoolmaster testified that there is no evidence that the District followed all industry standards of training.

**CITATION:** Deposition Transcript of Timothy Schoolmaster (Exhibit D) at 40:22 to 41:1-8.

**RESPONSE:** Not disputed only as to the opinion rendered by Schoolmaster in his deposition, which speaks for itself.

18. **FACT:** Before the accident, Corban loved to ride the bus and was being transported by school bus for many years.

**CITATION:** Deposition Transcript of Lisa Pearson (Exhibit E) at 72:20 to 73:20.

**RESPONSE:** Not disputed only as to the cited testimony of Lisa Pearson in her deposition, which speaks for itself.

19. **FACT:** Since the subject accident, Corban will not travel on the school bus, and any time you talk about the accident or anything related to possibly go on a school bus, he will "freak out."

**CITATION**: Deposition Transcript of Lisa Pearson (Exhibit E) at 48:24 to 51:17.

**RESPONSE:** Not disputed only as to the cited testimony of Lisa Pearson in her deposition, which speaks for itself.

20. **FACT:** The bus accident caused Corban's post-traumatic stress disorder (PTSD).

**CITATION:** Deposition Transcript of Parag Merai (Exhibit F) at 82:7-10.

**RESPONSE:** Not disputed as to the cited testimony of Parag Merai, which speaks for itself. However, the opinion that Corban experienced PTSD as a result of the bus accident disputed. *See* Report of Louis J. Kraus, **Exhibit A** at p. 20.

21. **FACT:** Corban's increased anxiety and the PTSD caused by the bus accident prevented Corban from returning to school at all in the six months after the accident.

**CITATION:** Deposition Transcript of Parag Merai (Exhibit F) at 82:3-10.

**RESPONSE:** Not disputed as to the opinion rendered by Dr. Merai in his deposition. which speaks for itself. However, the opinion that Corban avoids school because of increased anxiety and PTSD caused by the bus accident is disputed. Dr. Kraus opined that Corban will stay home from school to try and avoid going to the bathroom at school. *See* Report of Louis J. Kraus, **Exhibit A** at p. 17.

22. **FACT:** A year and three months after the bus accident, Corban still had anxiety with traveling.

**CITATION:** Deposition Transcript of Parag Merai (Exhibit F) at 52:2-11.

**RESPONSE:** Not disputed as to the opinion rendered by Dr. Merai in his deposition. However, the opinion that Corban had anxiety with traveling after the accident is disputed. Dr. Kraus reported that Corban described taking a road trip with his parents to Nashville with his mom, dad, and grandmother Sally. *See* Report of Louis J. Kraus, **Exhibit A** at p. 9. Corban also testified to this trip. **Ex. K to Dfts. Mot. (Dkt. 202-12) (Corban Pearson Dep.)** at 70:2–71:1.

23. **FACT:** Gerald Goebel testified that in the wheelchair industry, the applicable standard of care requires that every available option be discussed with the client and caregiver.

**CITATION:** Deposition of Gerald Goebel (Exhibit G) at 77:8-16.

**RESPONSE:** Not disputed only as to the cited opinion rendered by Gerald Goebel in his deposition, which speaks for itself.

24. **FACT:** Daniel Toomey testified that the testing that was performed to determine that anti-tip wheels would have prevented the occurrence.

**CITATION:** Deposition of Daniel Toomey (Exhibit H) at 112-120.

**RESPONSE:** Not disputed only as to the cited testimony offered by Daniel Toomey in his deposition, which speaks for itself.

25. **FACT:** Daniel Toomey opined that based on his understanding of physics and the deceleration of the bus, the anti-tip wheels would have prevented the wheelchair from tipping over at the time of the alleged occurrence.

**CITATION:** Deposition of Daniel Toomey (Exhibit H) at 147:11-21.

**RESPONSE:** Not disputed only as to the cited opinion offered by Daniel Toomey in his deposition, which speaks for itself.

26. **FACT:** Daniel Toomey drafted a report that contained the following conclusion: "the rearward acceleration of the bus that caused Corban Pearson's wheelchair to tip forward was

minor. Had the subject wheelchair been equipped with anti-tip support wheels, they would have likely prevented the subject wheelchair from tipping forward."

**CITATION**: Daniel Toomey Report (Exhibit H) at p. 15.

**RESPONSE:** Not disputed as to the cited conclusion offered by Daniel Toomey in his report, which speaks for itself.

27. **FACT:** Gerald Goebel drafted a report that contained the following opinion: "1. Corban Pearson presented for a seating/mobility evaluation on April 7, 2016. The form HFS 3701H Seating/Mobility Evaluation was completed and signed by David Cingano, ATP for Numotion. There is no evidence that a qualified medical professional, such as a PT, OT or other licensed/certified medical professional ("LCMP"), with expertise in wheelchair evaluations and no financial ties to the supplier, participated in this evaluation. The applicable standard of care set forth by the Illinois Department of Healthcare and Family Services ("IDHFS") requires documentation of a face-to-face, hands-on evaluation of the patient (in association with a mobility device specialist, e.g. ATP) by a licensed physiatrist or physical/occupational therapist.

**CITATION**: Gerald Goebel Report (Exhibit G) at p. 2.

**RESPONSE:** Not disputed as to the cited opinion rendered by Gerald Goebel in his report, which speaks for itself.

28. **FACT:** Gerald Goebel drafted a report that contained the following opinion: "The documentation submitted by Numotion to order the Permobil F3 Corpus power wheelchair base fails to show that Numotion ATPs had any discussion with Corban or his family about the need for anti-tippers/support wheels. In fact, the anti-tippers section of form HFS 3701H was left blank. The IDHFS instructions for completing this form require that ***each item on the form must be addressed. T***he notation "N.A." should be used whenever appropriate. In addition, the Permobil

F3 Corpus order form, effective from September 2015 through the date of the initial evaluation, lists an anti-tipper option prominently on page 2 and lists anti-tippers as an option when choosinga speed package. Numotion failed to consider anti-tippers for Corban Pearson's wheelchair, which would have been prompted multiple times during the completion of both the form HFS3701H and the Permobil order form."

**CITATION**: Gerald Goebel Report (Exhibit G) at p. 2.

**RESPONSE:** Not disputed only as to the cited opinion rendered by Gerald Goebel in his report, which speaks for itself.

29. **FACT:** Gerald Goebel drafted a report that contained the following opinion: "On October 6, 2017, a physical therapist (LCMP) and a Numotion ATP performed a collaborative evaluation of Corban Pearson's Permobil F3 Corpus power wheelchair to address modifications resulting from his physical growth. The Numotion ATP failed to note anything in the anti-tippers section of the form HFS 3701H, indicating that support wheels were not considered as modifications. The form HFS3701H and the Permobil F3 Corpus order form should have prompted Numotion ATPs to consider anti-tippers. Inexplicably, the Numotion ATP obtained a signed form from Lisa Pearson dated one day prior to the evaluation, October 5, 2017, indicating refusal of Anti-Tippers and Seat Belt/Pelvic Belt. This refusal occurred ***prior to the evaluation related to modifications*** and is immaterial to any recommendations made by a medical professional in the evaluation that took place the next day."

**CITATION**: Gerald Goebel Report (Exhibit G) at p. 2-3.

**RESPONSE:** Not disputed only as to the cited opinion rendered by Gerald Goebel in his report, which speaks for itself.

30. **FACT:** Plaintiffs issued their Supplemental Rule 26 Disclosures and put all parties on notice that it reserved the right to use any witness identified by any Defendant, deposed during this lawsuit, or identified in anyway during discovery during their case in chief.

**CITATION**: See Plaintiff's Supplemental Disclosures with Certificate of Service (Exhibit I) at p. 24.

**RESPONSE:** Not disputed.

Respectfully submitted,

**Community Unit School District 300**
**Board of Education and Terry Primdahl**

By: */s/ Richard Capra*

Charles A. LeMoine
Richard Capra
TRESSLER LLP
233 South Wacker Drive, 61st Floor
Chicago, Illinois 60606-6399
Telephone: (312) 627-4000
clemoine@tresslerllp.com
rcapra@tresslerllp.com
***Attorneys for Community Unit School District 300 Board of Education and Terry Primdahl***

**Pamela Karnick**

By: */s/ Margaret Firnstein Gebhardt*

Margaret Firnstein Gebhardt (#6269742)
Amundsen Davis LLC
150 N. Michigan Ave., Suite 3300
Chicago, IL 60601
312.894.3200
mfirnstein@amundsendavislaw.com
***Attorneys for Pamela Karnick***

**Antoinette Green**

By: */s/ Vincent M. Rizzo*

Vincent M. Rizzo
Hinshaw & Culbertson LLP
150 N. Franklin Street, Suite 2500
Chicago, IL 60606
312.704.3234
VRizzo@hinshawlaw.com
***Attorneys for Antoinette Green***

## CERTIFICATE OF SERVICE

I hereby certify that on March 31, 2025, I electronically filed the foregoing **DISTRICT DEFENDANTS' JOINT RESPONSE TO PLAINTIFFS' STATEMENT OF ADDITIONAL UNDISPUTED MATERIAL FACTS PURSUANT TO L.R. 56.1(b)(3)** with the Clerk of the Court using the ECF system, which sent electronic notification of the filing on the same day and was served upon all counsel of record via the Court's CM/ECF system

*/s/ Jerome T. Murphy*