**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CHRISTIN P. PEARSON, *et al.*, | ) | |
| | ) | Case No.: 1:20-cv-05096 |
| Plaintiffs, | ) | |
| | ) | Honorable John Robert Blakey |
| v. | ) | |
| | ) | |
| COMMUNITY UNIT SCHOOL | ) | |
| DISTRICT 303, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## NUMOTION'S MOTION FOR FINDING OF GOOD-FAITH SETTLEMENT

NOW COMES, Defendant United Seating and Mobility, LLC d/b/a Numotion ("Numotion"), by and through its undersigned counsel, NIELSEN, ZEHE & ANTAS, P.C., to respectfully move this Court pursuant to the Illinois Joint Tortfeasor Contribution Act, 740 ILCS 100/2(c) and (d), for entry of an order finding that the settlement between Plaintiffs and Numotion was made in good faith. In support of this motion, Numotion states as follows:

### INTRODUCTION

This action arises from injuries allegedly sustained by Corban Pearson during an August 14, 2019 school bus transportation incident while he was a passenger and seated in his Permobil power wheelchair, which had previously been delivered by Numotion in June 2016, when the wheelchair allegedly tipped during a braking event while being transported on the bus. Plaintiffs allege that Numotion bears responsibility based on allegations concerning the absence of anti-tipper devices at the time of the incident and Numotion's role in delivering and servicing the subject wheelchair prior to the incident.

Following the completion of fact and expert discovery, and after the parties exchanged and responded to motions *in limine* addressing the admissibility and scope of anticipated trial evidence

and testimony, Plaintiffs and Numotion reached a negotiated settlement resolving all claims asserted against Numotion. The settlement amount is $200,000. The agreement was reached through arm's-length negotiations among represented parties and reflects a compromise based upon Numotion's alleged role in the occurrence and the costs and risks associated with proceeding to trial.

The settlement satisfies the requirements of the Illinois Joint Tortfeasor Contribution Act (the "Act") and is not the product of fraud, unfair dealing, collusion, or conduct inconsistent with equitable allocation principles. Accordingly, the Court should enter a finding that the settlement was made in good faith.

## LEGAL STANDARD

Illinois substantive law governs the effect of settlements on contribution rights under the Act in diversity actions applying Illinois law. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938); *see also Johnson v. United Airlines*, 203 Ill. 2d 121, 128 (2003) (recognizing that under the Act, a good-faith settlement discharges contribution liability among joint tortfeasors).

The Act seeks to promote two important public policies: (1) the encouragement of settlements; and (2) the equitable apportionment of damages among tortfeasors. *Johnson*, 203 Ill. 2d at 135–36 (citing *Dubina v. Mesirow Realty Development, Inc.*, 197 Ill. 2d 185, 193-94 (2001)). Whether a settlement was made in good faith as contemplated by the Act is a matter left to the discretion of the trial court based upon the court's consideration of the totality of the circumstances. *Antonicelli v. Rodriguez*, 2018 IL 121943, ¶ 23; *see also Johnson*, 203 Ill. 2d at 135; *Dubina*, 197 Ill. 2d at 191.

Illinois courts recognize that the only limitation the Act imposes on settlements is that they be made in "good faith". *Id.* at ¶ 14; *see also Johnson*, 203 Ill. 2d at 128. Thus, "a separate

evidentiary hearing is not required and that a trial court need not decide the merits of the tort case or rule on the relative liabilities of the parties before making a good-faith determination." *Antonicelli*, 2018 IL 121943, ¶ 14 (quoting *Johnson*, 203 Ill. 2d at 139). As such, "[a] court is capable of ruling on 'good faith' without a precise determination of the overall damages suffered by the plaintiff and the settling tortfeasor's proportionate liability." *Id*.

A settling party satisfies its initial burden by demonstrating the existence of a legally valid settlement supported by consideration. *Johnson*, 203 Ill. 2d at 133. Once that showing is made, the burden shifts to the party challenging the settlement to prove lack of good faith by a preponderance of the evidence. *Id.* In doing so, the non-settling defendants may offer proof that the settling parties engaged in wrongful conduct, collusion, or fraud to establish an absence of good faith. *Antonicelli*, 2018 IL 121943, ¶ 24; *see also Babb v. City of Champaign (In re Babb)*, 162 Ill. 2d 153, 162 (1994) (holding that a settlement fails the good-faith requirement where it reflects collusion, unfair dealing or wrongful conduct by the settling parties.).

Finally, the Act provides that a tortfeasor who settles with a claimant pursuant to a settlement made in good faith is discharged from all liability for contribution to any other tortfeasor arising out of the same injury. *See* 740 ILCS 100/2(d).

## ARGUMENT

### I. The Settlement Between Plaintiffs and Numotion was Made in Good Faith.

The settlement between Plaintiffs and Numotion satisfies the Act's good-faith requirement under the governing totality of the circumstances analysis.

Plaintiffs allege that Corban sustained injuries during a school-bus braking event while seated in a Permobil wheelchair that had previously been delivered by Numotion. Plaintiffs contend that the wheelchair tipped during transport and assert that Numotion bears responsibility

3

based on allegations concerning the absence of anti-tipper devices and its role in delivering and servicing the subject wheelchair. Numotion disputes those allegations and has consistently maintained that the incident resulted from the wheelchair not being properly secured for transport within the school bus rather than any act or omission attributable to Numotion. Numotion further maintains that it acted within the scope of its role as a distributor of medical equipment and that it is not the manufacturer or designer of the subject wheelchair.

The evidentiary record further confirms that Numotion possessed substantial defenses to Plaintiffs' liability theory. Plaintiffs' disclosed liability expert, Timothy Hicks, expressed the opinion that the presence of anti-tippers would not have prevented the incident following the braking event at issue. Based on that opinion and the record developed in discovery, it is Numotion's contention that Plaintiffs could not survive a motion for directed verdict on their theory that the absence of anti-tippers caused the incident. Furthermore, in light of Doc. 292, Numotion was prepared to file a motion *in limine* barring Plaintiffs' adoption of the School District's experts at trial who were not disclosed by Plaintiffs under Rule 26(a)(2). The settlement therefore represents a reasonable compromise of disputed claims in light of the liability and causation defenses available to Numotion rather than an effort to avoid contribution exposure.

In addition, Numotion's liability expert, Miriam Manary, is a nationally recognized authority in the field of wheelchair transportation safety and securement practices in motor vehicles. In her Rule 26(a)(2) disclosures and testimony, Ms. Manary explained that the wheelchair met all industry standards, that anti-tippers play no role in wheelchair transportation within motor vehicles, and that they are not intended to function as a substitute for proper wheelchair securement restraints such as those with which the school bus at issue was equipped. Consistent with the opinions of Plaintiffs' own liability expert, Ms. Manary further testified that anti-tippers would not

4

have prevented the incident following the braking event at issue. Based on these opinions and the evidentiary record, it is Numotion's position that Plaintiffs (and co-Defendants) could not establish that anti-tippers were required at the time of the incident or that the absence of anti-tippers caused the incident, further demonstrating that the settlement represents a reasonable compromise of disputed liability.

Illinois courts consistently recognize that settlements reached in compromise of contested liability and causation issues satisfy the Act's good-faith requirement even where liability remains disputed or uncertain. For example, in *Johnson*, the Illinois Supreme Court affirmed a trial court's finding that settlements of $1,000 per plaintiff, plus costs, between the City of Quincy and multiple wrongful-death plaintiffs arising from a fatal runway-intersection aircraft collision were made in good faith under the Act. *Johnson*, 203 Ill. 2d at 125–26. The court made this finding despite objections that the settlement did not reflect the relative culpability of the settling defendant. *Id*. at 139. Regardless, the court held that the settling parties made the required preliminary showing of good faith, an evidentiary hearing was not required, and that the objecting defendant failed to establish a lack of good faith under the totality of the circumstances, rejecting the argument that a court must determine relative culpability before entering a good-faith finding. *Id.* at 136, 140.

In doing so, the court further rejected the claim that a settlement amount that is nominal as compared to the alleged damages is an indication of bad faith. *Id*. at 136-37. Specifically, the court held that it was "unpersuaded that the amount of the settlement here is an indication of bad faith. It is true that plaintiffs' complaints sought damages in the millions of dollars and that the settlements with Quincy were for the nominal figure of $ 1,000 per plaintiff. However, the disparity between the settlement amount and the *ad damnum* in the complaint is not an accurate measure of the good faith of a settlement." *Id*. at 137.

5

Here, the $200,000 settlement amount reflects a negotiated compromise reached after expert discovery clarified the contested causation issues bearing on Numotion's alleged role in the occurrence. Under the totality of the circumstances analysis required by *Johnson*, the settlement plainly satisfies Illinois' good-faith requirement. Entry of a good-faith finding in these circumstances advances the Act's purpose of encouraging settlements while preserving equitable allocation principles among the remaining parties.

## EFFECT OF GOOD-FAITH FINDING

Upon entry of a finding that the settlement between Plaintiffs and Numotion was made in good faith, Numotion is discharged from all liability for contribution to any other tortfeasor arising out of the occurrence alleged in this action, and any contribution claims asserted or that could be asserted against Numotion relating to that occurrence must therefore be dismissed with prejudice. 740 ILCS 100/2(d); *see also Johnson*, 203 Ill. 2d at 128.

## CONCLUSION

For these reasons, Defendant United Seating and Mobility, LLC d/b/a Numotion respectfully requests that this Court enter an order finding that its settlement with Plaintiffs was made in good faith pursuant to 740 ILCS 100/2(c) and (d) and discharging Numotion from all liability for contribution arising out of the occurrence alleged in this action.

Respectfully submitted,

NIELSEN, ZEHE & ANTAS, P.C.

*/s/ Kyle H. Fleck* _____
One of the Attorneys for United Seating and
Mobility, LLC d/b/a Numotion

*Attorneys for United Seating and Mobility,*
*LLC d/b/a Numotion*
Dominick W. Savaiano
Paul Bozych

6

Kyle H. Fleck
NIELSEN, ZEHE & ANTAS, P.C.
55 West Monroe Street, Suite 1800
Chicago, Illinois 60603
Tele:   (312) 322-9900
Fax:    (312) 322-9977
dsavaiano@nzalaw.com
pbozych@nzalaw.com
kfleck@nzalaw.com